UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ALAN L. FRANK LAW ASSOCIATES, P.C.,

                Plaintiff,           No. 17-CV-1338 (SJF) (ARL)
v.

OOO RM INVEST, et al.,

                Defendants.

--------------------------------------------------------X

OOO RM INVEST, et al.,

                Counter-Plaintiffs
v.

ALAN L. FRANK LAW ASSOCIATES, P.C.,
et al.,

                Counter-Defendants.

--------------------------------------------------------X

## SETTLING PARTIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR DISCHARGE AND AWARD OF ATTORNEYS' FEES AND COSTS

Defendants/Counter-Plaintiffs/Cross-Plaintiffs OOO RM INVEST ("**RM**"), VARWOOD

HOLDINGS, LTD. ("**Varwood**"), and TCAHAI HAIRULLAEVICH KATCAEV, a/k/a

Tsakhay Katsaev ("**Katcaev**") (collectively, the "**Settling Parties**"), hereby file their

Memorandum of Law in Opposition to Plaintiff ALAN L. FRANK LAW ASSOCIATES, P.C.'s

(the "**Frank Firm**" or "**FF**") Renewed Motion for Discharge and Award of Attorneys' Fees and

Costs (the "**Motion**"), and state:

## Preliminary Statement

As Magistrate Judge O'Sullivan repeatedly noted in recommending denial of the Frank Firm's previous motion for discharge and attorney's fees, "[t]his is not the typical interpleader case."  In this case, the Frank Firm pursued the underlying litigation on the Settling Parties' behalves without knowing the identity of, or entering into a written contingency fee agreement with their duly authorized agents; counseled the Settling Parties to enter into an "aggregate" settlement agreement that does not provide for how the settlement funds are to be divided among them; has nonetheless taken for itself 20% of the gross settlement proceeds, despite its clients receiving nothing; and is now asking this Court not only to clean up the mess it created, but also to absolve it of any responsibility for the resulting consequences suffered by its former clients, the Settling Parties.

As discussed below, discharge is available only where a disinterested stakeholder, who has acted in good faith, has a "real and reasonable fear" of multiple liability arising from adverse claims to a single fund. Because the Settling Parties are clearly entitled to the Settlement Funds; because there are no adverse claims to those funds; because the Frank Firm is neither disinterested, reasonably fearful of multiple liability, nor has it acted in good faith; and because the Motion is unsupported by any evidence establishing the Frank Firm's entitlement to relief, the Court should deny the Motion.

## Undisputed Facts

A.          **The Parties**

1.          RM is a limited liability company organized under the laws of, and with its principal place of business in the Russian Federation.  (FF's Complaint for Interpleader [D.E. 1] ("**Complaint**" or "**Cplt.**"), ¶ 2; Answer of Defendant/Cross-Defendant SASHA SCHMDT

("**Schmdt**") and Defendant SERGEY PIROZHNIKOV ("**Pirozhnikov**") (Schmdt and Pirozhnikov collectively, the "**Participant Parties**" or "**PPs**") [D.E. 24] ("**PPs' Answer**"), ¶ 2.)

2.      RM has three "participants" (an equity position similar to membership in a U.S. company): Katcaev, Schmdt, and Pirozhnikov.  (See id.)[1]

3.      Katcaev is an individual who is a citizen and resident of the Russian Federation. (Cplt., ¶ 3; PPs' Answer, ¶ 3.)

4.      Katcaev is the Executive Director, Attorney-In-Fact, and 25% participant of RM. (Declaration of Tsakhay Katsaev, attached hereto as Exhibit "A" ("**Katcaev Dec.**"), ¶ 2.)

5.      Katcaev is also Attorney-In-Fact of Varwood.  (Id., ¶ 3.)

6.      Schmdt is an individual who is a U.S. citizen residing in New York.  (Cplt., ¶ 5; PPs' Answer, ¶ 5.)

7.      Pirozhnikov is an individual who is a citizen and resident of the Russian Federation.  (Cplt., ¶ 4; PPs' Answer, ¶ 4.)

8.      Dmitri Grudtsin ("**Grudtsin**") is RM's Director General, a position he has held since September 2012.  (Katcaev Dec., ¶ 4.)[2]

9.      Varwood is a corporation organized under the laws of Belize, and whose principal place of business is in Switzerland.  (Katcaev Dec., ¶ 5.)

10.      The Frank Firm is a professional corporation organized under the laws of Pennsylvania, and whose principle place of business is in Pennsylvania.  (Cplt., ¶ 1; PPs' Answer, ¶ 1.)

---

[1] *See* Notice of Filing Evidence of Foreign Law [D.E. 18] (the "**Ernst & Young Legal Opinion**"), *passim*.

[2] As discussed in note 15 *infra*, The Participant Parties were successful in changing the identity of RM's Director as reflected in the Russian Unified State Register of Legal Entities (the "**EGRUL**") for all of 8 days, before the Russian court of competent jurisdiction entered an injunction, which was affirmed on appeal, maintaining the *status quo* whereby Grudtsin remains RM's Director.

11.     Counter-Defendant ALAN L. FRANK ("**Frank**") is an individual who is an attorney of the Frank Firm.  (See Cplt.)

12.     Counter-Defendant EUGENE A. KHAVINSON ("**Khavinson**") is an individual residing in New York.  (Khavinson's Motion to Dismiss Complaint [D.E. 183] at 5 ("Khavinson, a New York resident").)

**B.**     **The Arbitration and Lawsuit**

13.     On or about November 13, 2013, Schmdt, purporting to act on behalf of RM, executed a letter agreement (the "**Retention Agreement**," attached as Exhibit "1" to the Affidavit of Samuel M. Sheldon, which is attached hereto as Exhibit "B" ("**Sheldon Aff.**")) retaining the Frank Firm and Khavinson—in exchange for $120,000.00 up front and a 20% contingency fee—to represent RM in connection with a lawsuit to be brought against Net Element International, Inc. ("**Net Element**").

14.     In early 2014, Varwood and Katcaev, through the Frank Firm and Frank as their counsel, filed an arbitration claim against Net Element with the American Arbitration Association in Miami, Florida (the "**Arbitration**").  (Katcaev Dec., ¶ 6.)

15.     On March 10, 2014, RM, through the Frank Firm and Frank as its counsel, filed in the United States District Court for the Southern District of Florida (the "**Florida District Court**") its Complaint in *OOO-RM Invest v. Net Element, Inc., et al.*, Case No. 14-cv-20903-CMA (the "**Underlying Lawsuit**" or "**U.L.**").  (Complaint [U.L D.E. 1].)

16.     On February 10, 2015, the Florida District Court entered an order [U.L. D.E. 74] granting a stipulation by the parties consolidating the Arbitration into the Underlying Lawsuit.

17.     On February 17, 2015, Katcaev and Varwood, through the Frank Firm and Frank as their counsel, filed their Counterclaim [U.L D.E. 78] and Intervenor Complaint [U.L. D.E. 79], respectively, in the Underlying Lawsuit.

## C.     The Settlement

18.     On or about October 1, 2015, following a mediation in Miami, Florida, the parties to the Underlying Lawsuit executed a confidential Stipulation of Mediation Settlement (the "**Settlement Agreement**").  A true and correct copy of the Settlement Agreement is attached to the Katcaev Dec. as Exhibit "1."  (Katcaev Dec., ¶¶ 7-8, Ex. 1.)

19.     The Settlement Agreement provides in relevant part for payment of $2,900,000.00 (the "**Settlement Funds**") to the Frank Firm for the benefit of the "Plaintiffs."  (Settlement Agreement at 2, ¶ 1.)  The Settlement Agreement does not, however, provide for how the Settlement Funds are to be divided among the "Plaintiffs."  Prior to counseling the Settling Parties to accept the Settlement Agreement, neither the Frank Firm, Frank, nor Khavinson sought or obtained an agreement between RM, Varwood, and Katcaev regarding how the Settlement Funds were to be divided.  (Katcaev Dec., ¶ 10.)[3]

20.     The Settlement Agreement also provides in relevant part for Net Element's transfer agent to transfer 1,000,000 shares of Net Element stock as additional consideration for the settlement.  (Id. at 1-2, ¶ 1.)

21.     The Frank Firm, through Frank and Khavinson, counseled the Settling Parties that said stock could not be transferred to any of the Settling Parties, because none were U.S. persons or companies; and that said stock should instead be transferred to Schmdt, who is a U.S. citizen. (See Transcript of August 31, 2016 Deposition of Alan Frank as Rule 30(b)(6) Representative of

---

[3] As discussed *infra*, this sort of "aggregate" settlement violates Rule 4-1.8(g) of the Rules Regulating the Florida Bar.

Alan L. Frank Law Associates, P.C. ("**Frank Dep. Tr.**"), cited excerpts of which are attached hereto as Exhibit "C," at 46:19-47:4.)

22.    Acting on this legal advice, the Settling Parties agreed to the terms of the Settlement Agreement providing for the transfer of 800,000 shares of Net Element Stock to Schmdt, and 100,000 shares each to Khavinson and Frank.  (Katcaev Dec., ¶ 9.)

23.    On October 13, 2015, the court entered its Final Order of Dismissal with Prejudice [U.L. D.E. 150] in the Underlying Lawsuit.

24.    The Frank Firm has received all of the Settlement Funds; and Schmdt, Khavinson, and Frank have received the 1,000,000 shares of Net Element stock pursuant to the Settlement Agreement.  (Frank Dep. Tr. at 78:17-79:7.)

**D.     The Frank Firm's Refusal to Disburse the Settlement Funds**

25.    On October 21, 2015, Frank e-mailed Khavinson:

Greetings

We now have the net insurance proceeds in our Florida Trust account.

Please remind the principals that we need tax ID numbers from each of them in order to release the money to them.

We will also need a writing signed by all of them indicating who should receive each share of the proceeds.  . . . .

Please translate this into Russian and then forward to our clients asap.

(Sheldon Aff., ¶ 4, Ex. 2 at ALF 000112.)

26.    The "principals," as used by Frank, means Katcaev, Schmdt, and Pirozhnikov. (See Frank Dep. Tr. 80:6-16, 83:2-3, Def's Ex. 7.)  As discussed *infra*, however, neither Schmdt nor Pirozhnikov have any legal authority either to act on RM's behalf or to direct the distribution of the Settlement Funds.

27.     Nonetheless, desiring a resolution, Katcaev has attempted, but has been unable, to reach an agreement with the Participant Parties regarding how the Settlement Funds are to be distributed.  (Katcaev Dec., ¶ 13.)

28.     On October 30, 2015, Frank e-mailed Katcaev: "We cannot release any funds without tax ID numbers and a letter signed by all of the principals specifying who gets what amount of money."  (Sheldon Aff., ¶ 5, Ex. 3.)

**E.     The So-Called "Mediation"**

29.     Frank encouraged Katcaev and the Participant Parties to attempt to resolve their disagreement regarding the distribution of the Settlement Funds through mediation, with Khavinson acting as the mediator.  (Katcaev Dec., ¶ 14.)

30.     To that end, on November 9, 2015, Khavinson e-mailed for Frank's review a draft proposed Mediation Agreement, whereby Khavinson was to be paid $20,000.00 for his services as mediator.  (Sheldon Aff., ¶ 6, Comp Ex. 4.)  Frank responded to Khavinson that the proposed agreement was "Perfect."  (Id.)

31.     Without recognizing any entitlement or authority on the part of the Participant Parties to either share in or direct the distribution of the Settlement Funds, Katcaev desired a resolution and trusted his then counsel – Frank and Khavinson – and so he agreed to participate in the proposed mediation.   (Katcaev Dec., ¶ 14.)   When Khavinson held the mediation conference, at which the Participant Parties were present, he failed to call Katcaev, as he said he would, so Katcaev (being in Russia) could participate telephonically.  (See id.)

32.     On November 30, 2015, Khavinson e-mailed to advise that the mediation was unsuccessful, and suggested that distribution of the Settlement Funds instead be resolved through binding arbitration.  (Sheldon Aff., ¶ 7, Ex. 5)

**F.**     **The Frank Firm's Continued Refusal to Disburse the Settlement Funds**

33.     On December 14, 2015, the undersigned, on behalf of the Settling Parties, e-mailed the following instructions to Frank:

> (1) Please continue holding the settlement proceeds in your trust account until further instructed.  Insofar as you are considering depositing those proceeds with the Court, please refrain from doing so.  The federal court charges significant fees for holding funds in the Court registry.
>
> (2) RM, Varwood, and Mr. Katcaev are in the process of determining how the $2.3M in net proceeds should be divided.  This firm will advise shortly regarding their determination.
>
> (3) This firm will provide documentation evidencing the authority of its corporate representative clients to act on behalf of the corporate parties (i.e., RM and Varwood).  Absent receipt by you of conflicting documentation (i.e., documentation that Mr. Schmidt has authority over RM or Varwood), the documentation to be provided by this firm should be conclusive as to who has legal authority to direct the distribution of the settlement proceeds, and should obviate the need for further judicial involvement.

(Sheldon Aff., ¶ 8, Ex. 6 at 2.)

34.     That same day, Frank responded by e-mail to the undersigned: "I am going to need something **_signed by everyone_**, which must include the three individuals that signed the Settlement Agreement [Katcaev, Schmdt, and Pirozhnikov]."  (Id. at 1 (emphasis in original).)[4]  Frank, however, gave no explanation as to why he required the Participant Parties' approval absent some evidence that they were authorized agents of RM.  (See id.)

35.     On December 16, 2015 Schmdt sent an e-mail to Frank, which Frank forwarded to the undersigned, attaching an apostilled extract (with English translation) regarding RM from the Russian Unified State Register of Legal Entities (the "**EGRUL**").[5]  (Sheldon Aff., ¶ 9, Ex. 7.)  The EGRUL extract identifies Pirozhnikov, Schmdt (a/k/a Aleksandr Schmidt), and Katcaev

---

[4] All emphasis herein is added unless otherwise noted.

[5] The EGRUL "contains information on the formation and significant business events for all legal entities organized and existing under the laws of the Russian Federation."  _Ernst & Young Legal Opinion_ at 2.

as RM's participants, with 25, 50, and 25 percent interests, respectively.  (Id. at lines 25-41.) That same document identifies Grudtsin as the "Manager of the legal entity," "General Director," and the one individual "entitled to act without a power of attorney on behalf of the legal entity." (Id. at lines 42-47.)

36.     That same day, the undersigned responded to Frank's e-mail: (1) pointing out that the EGRUL extract does not identify Schmdt as an authorized agent of RM, but rather identifies Grudtsin as the one person "entitled to act without a power of attorney on behalf of the legal entity"; (2) advising of the undersigned's understanding that Katcaev has a power of attorney to act on behalf of the entity, and (3) providing an English translation of the relevant Russian law governing limited liability companies, which, like U.S. law, authorizes a company's management and not its owners to act on the company's behalf.  (Sheldon Aff., ¶ 10, Ex. 8.)

37.     Minutes later, without any explanation, Frank responded: "Understood.  We will have to initiate the interpleader."  (Sheldon Aff., ¶ 11, Ex. 9.)

38.     On December 17, 2015, Frank e-mailed the undersigned to advise that "there *is* interest in entering into binding arbitration," that the Participant Parties were "retaining counsel to facilitate this process," and that, barring an objection from the undersigned, Frank would "*NOT* [be] initiating an Interpleader at this time."  (Sheldon Aff., ¶ 12, Ex. 10 (emphasis in original).)

39.     On December 24, 2015, after learning for the first time that Khavinson had charged $20,000.00 for his mediation services, which money was to be deducted from the Settlement Funds being held by Frank, the undersigned sent a letter to Khavinson with a copy to Frank: (1) objecting to the excessive fee taken by Khavinson, (2) objecting to that fee being paid

from the Settlement Funds without Varwood's consent, and (3) demanding the immediate return of the $20,000.00.  (Sheldon Aff., ¶ 13, Ex. 11.)

40.     That same day Frank e-mailed the undersigned expressing surprise regarding the undersigned's letter[6] and, effectively conceding the impropriety of the $20,000.00 mediation fee to be paid to Khavinson, informed the undersigned that "the mediation fee remains in our trust account at this time."  (Id.)  Frank further stated: "I have thus far not heard from any lawyer representing the remaining parties, and we will be filing an interpleader action unless we very soon hear from counsel and also receive confirmation that there is a binding arbitration agreement in place between and among all of the claimants."  (Id.)

## G.     **The Motion to Compel**

41.     On January 18, 2016, Katcaev sent a letter to Frank: (1) terminating Frank and the Frank Firm as counsel for the Settling Parties; (2) instructing the Frank Firm to wire the Settlement Funds (net of the Frank Firm's claimed fee[7] to the undersigned law firm; and (3) providing the Frank firm with authenticated apostilled copies of powers of attorney from RM (with English translation) and Varwood, establishing Katcaev's legal authority to act on behalf of those entities.  (Sheldon Aff., ¶ 14, Ex. 12.)

---

[6] Although Frank claims in his e-mail that he had advised the undersigned of the Mediation Agreement and its terms, and that he had offered to disclose the same to the undersigned, the undersigned denies those claims.  These disputed facts, however, are not material for the purposes of the instant Motion.

[7] It was not until one month later, on February 25, 2016, that Frank disclosed to the undersigned for the first time the Retention Agreement that is the basis of the Frank Firm's claim to a contingency fee of 20% of the Settlement Funds.  (See Sheldon Aff., ¶ 3.)  Because that Agreement was not executed by Varwood, Katcaev, or an authorized agent of RM, it is not enforceable, and therefore does not entitle the Frank Firm to pay itself 20% of the Settlement Funds as it has done.  (See Amended Counterclaim [D.E. 169], ¶¶ 48-53.)  The Frank Firm argues in its Motion (at 5-6 n. 2) that the undersigned's four references to "net proceeds" or "net settlement proceeds" in various court filings is somehow a concession of the Frank Firm's entitlement to these funds.  This argument, however, is utterly spurious and is unsupported any recognized legal principal.

42.     That same day, the Settling Parties filed with the Florida District Court their Verified Motion to Compel Former Counsel to Disburse Settlement Proceeds [U.L. D.E. 152].[8]

43.     On January 19, 2016, the Participant Parties filed with the Florida District Court their Motion to Intervene [U.L. 153], seeking to intervene in the Underlying Litigation in opposition to the Settling Parties' Motion to Compel.  The Participant Parties, however, did not then (or since) assert any direct claim to the Settlement Funds in their individual capacities, but rather "claim[ed] an interest in [the Settlement Funds] as the 75% owners of a company [RM] that is entitled to the loan's share of those funds."  (PPs' Motion to Intervene at 5.)  The Participant Parties conceded at that time that the Settlement Funds belonged to the Settling Parties.  (See id. at 2, ¶ 2 ("a pool of funds (the 'Settlement Funds') was deposited into the trust account of [the Frank Firm], counsel to RM, *for the benefit of (1) RM, (2) Varwood, and (3) Mr. Katsaev (collectively, the 'Settlement Recipients')*.").)

44.     The Participant Parties stated in their Motion to Intervene that "the proper distribution of the Settlement Funds must be determined by a court (*or through agreement*)." (Id. at 4, ¶ 4.)  And so, on or about January 29, 2016, Grudtsin, on behalf of RM, and Katcaev, on behalf of himself and Varwood, entered into that certain Settlement Proceeds Division Agreement (the "**Division Agreement**"), by which the Settling Parties agreed among themselves regarding the division of the Settlement Funds.  (Katcaev Dec., ¶¶ 15-16, Ex. 2.)

45.     The Division Agreement provide in relevant part that "a. The first $212,000.00 of the Recovery shall be paid to Varwood as reimbursement for the costs advanced by Varwood, on behalf of the Setting [Parties], in the [Underlying] Lawsuit and related proceedings; and b. The

---

[8] On January 25, 2016, the Florida District Court denied without prejudice (Order [U.L. D.E. 160]) the Settling Parties' Motion to Compel for failure to include the required certification of pre-motion conferral with opposing counsel. The next day, the Settling Parties filed their Renewed Motion to Compel [U.L. D.E. 162].

remaining Recovery . . . shall be paid in even shares (*i.e.*, divided 50%/50%) to RM and Varwood." (Division Agreement at 3, ¶ 2.)

46.     Despite not having any evidence of the Participant Parties' authority to act on RM's behalf, the Frank Firm refused to wire any portion of the Settlement Funds to the undersigned firm as instructed in Katcaev's January 18, 2016 letter; and instead, on February 8, 2016, filed its Response to the Motion to Compel and Cross-Motion to Interplead [U.L. D.E. 166], in which it also conceded the Settling Parties' entitlement to the Settlement Funds: "There is no real dispute that *the Plaintiffs* should receive the net settlement proceeds . . . .  The problem is the [Settling Parties] and the [Participant Parties] all claim to control Plaintiff RM Invest . . . ." (FF's Cross-Motion to Interplead at 1.)

47.     On February 22, 2016, the Florida District Court entered an Order [U.L. D.E. 189] denying the Settling Parties' Renewed Motion to Compel and the Frank Firm's Cross-Motion to Intervene for want of subject matter jurisdiction.

## H.     <u>The Instant Action</u>

48.     Within hours of the Florida District Court's Order [U.L. D.E. 189] denying the Settling Parties' Motion to Compel, the Frank Firm filed its Complaint [D.E. 1] in the Instant Action.

49.     On May 9, 2016, the Participant Parties filed their Answer and Crossclaim [D.E. 24] in which, again, they do not make any direct claim to the Settlement Funds in their individual capacities, but rather allege that "the settlement payments belong 100% to RM Invest."  (PPs' Crossclaim, ¶ 7.)[9]

---

[9] This is, of course, entirely contrary to the Participant Parties' prior statement that "a pool of funds (the 'Settlement Funds') was deposited into the trust account of [the Frank Firm], counsel to RM, *for the benefit of (1) RM, (2) Varwood, and (3) Mr. Katsaev (collectively, the 'Settlement Recipients')*."  (PPs' Motion to Intervene [U.L. D.E. 153] at 2, ¶ 2.)

12

50.     On June 23, 2016, the Court entered an Order [D.E. 41] transferring this action to the Florida District Court.

51.     On or about July 1, 2016, the Frank Firm deposited into the Florida District Court Registry $2,312,319.60 of the $2,900,000.00 of Settlement Funds, keeping the $587,680.40 difference for itself and Khavinson.  (See Clerk's Receipt [D.E. 67].)

52.     On July 8, 2016, the Settling Parties filed their Verified Motion [D.E. 72] to Dismiss the Complaint.

53.     On September 2, 2016, the Settling Parties filed their Renewed Motion to Dismiss [D.E. 106] the Participant Parties' Crossclaim.

54.     On October 25, 2016, the Frank Firm filed its prior Motion for Discharge and Award of Attorneys' Fees and Costs [D.E. 131].

55.     On December 1, 2016, Magistrate Judge O'Sullivan issued his Report Recommendation [D.E. 147] recommending that the Settling Parties' Motion to Dismiss the Complaint be denied, but that their Motion to Dismiss the Participant Parties' Crossclaim be granted due to the Participant Parties' lack of standing.

56.     Also on December 1, 2016, Magistrate Judge O'Sullivan issued his Report Recommendation [D.E. 148] recommending that the Frank Firm's Motion for Discharge and Award of Attorneys' Fees and Costs be denied.

57.     On December 16, 2016, the Florida District Court, having received no objection from the Frank Firm, entered an Order [D.E. 154] accepting and adopting the Report Recommendation [D.E. 148] and denying the Frank Firm's Motion for Discharge and Award of Attorneys' Fees.

58.     On December 19, 2016, the Florida District Court, having received no objection from the Participant Parties, entered an Order [D.E. 155] accepting and adopting the Report Recommendation [D.E. 147], and dismissing the Participant Parties' Crossclaim.  By that same order, the Florida District Court overruled the Settling Parties' Objections [D.E. 150] and denied their Motion to Dismiss the Complaint.

59.     On January 19, 2017, the Settling Parties filed their Answer, Affirmative Defenses, Amended Counterclaim, and Crossclaim [D.E. 169], by which they assert their claim to the interpleaded funds in addition to a Counterclaim against the Frank Firm, Frank, and Khavinson, and a Crossclaim against Schmdt.

60.     On February 28, 2017, the Florida District Court entered an Order [D.E. 193] transferring this case to this Court.

61.     As the Frank Firm indicates in its Motion (at 8), on March 23, 2017, counsel for the Frank Firm and Frank served the undersigned with a draft Rule 11 Motion.  That Motion, however, has not yet been filed with the Court, and so it is entirely inappropriate for the Frank Firm to be bringing this to the Court's attention, and thereby insinuating some unspecified misdeed on the undersigned's part.  To be clear, the draft motion served upon the undersigned is frivolous, interposed in bad faith, and will thus subject Frank, the Frank Firm, and their counsel to sanctions in the event it is ever filed.

## Argument

## I.      The Court May Determine Entitlement Before Discharge

As the Frank Firm notes in its Motion (at 9), interpleader is typically a two-stage process whereby, in the first stage, a court determines whether the requirements for interpleader are present and whether the stakeholder is entitled to discharge; and then, in the second stage, the

court determines entitlement to the interpleaded property.  This process, however, is not rigid, and, where appropriate, a court can resolve the second stage first, or resolve both stages at once. *See New York Life Ins. Co. v. Conn. Dev. Authority*, 700 F.2d 91, 95 (2d Cir. 1983) ("this bifurcation is not mandatory, however, and the entire action may be disposed of at one time"); *Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switz.) SA*, No. 14-CV-9287 (VEC), 2017 WL 894876 (S.D.N.Y. Mar. 3, 2017) ("When an interpleader plaintiff disputes the extent of its liability, the Court may determine the rights of the parties before addressing discharge."). Because, as discussed *infra*, the Settling Parties' entitlement to the interpleaded portion of the Settlement Funds is clear, and because the Frank Firm disputes the extent of its liability, the Court may (and, respectfully, should) enter an order, based upon the briefing of the instant Motion, determining the Settling Parties' entitlement to the interpleaded funds.  Moreover, because neither the Frank Firm, the Participant Parties, Varwood, nor Katcaev contest RM's entitlement to at least \$1,050,159.80[10] of the interpleaded funds, there is no reason those funds should not be disbursed to RM at this time.  *See Washington Elec. Co-op., Inc. v. Paterson, Wake & Pratt, P.C.*, 985 F.2d 677, 680 (2d Cir. 1993) (holding interpleader inappropriate for uncontested portion of funds).

## II.   The Requirements for Interpleader Are Not Present Here

"Before discharging a stakeholder under § 2361, the court must first determine whether the requirements of 28 U.S.C. § 1335 [] have been met."  *Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund*, 982 F. 2d 783, 787 (2d Cir. 1992) (affirming denial of stakeholder's motions for discharge and attorney's fees).  "'Assuming the jurisdictional

---

[10] The Frank Firm deposited \$2,312,319.60 in the Florida District Court Registry.  (See Clerk's Receipt [D.E. 67].) The Settling Parties have agreed that \$212,000.00 of those funds should be paid to Varwood as reimbursement for costs advanced by Varwood in the Underlying Litigation, and that the remainder shall be divided evenly between Varwood and RM.  (Division Agreement at 3, ¶ 2.)  (\$2,312,319.60 - \$212,000.00) / 2 = \$1,050,159.80.

requirements of [Section 1335] are satisfied, the appropriateness of an interpleader action rests on whether the plaintiff has a *real and reasonable fear* of double liability or vexatious, conflicting claims against the single fund . . . .'" *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 318 (S.D.N.Y. 2014) (quoting *Metro Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013)).

Because the Settling Parties are clearly entitled to the Settlement Funds, and the Participant Parties clearly are not, the Frank Firm lacks the "real and reasonable fear" of double liability required for interpleader. And because the requirements for the *initiation* of an interpleader action are not present, the Frank Firm cannot obtain the final relief sought in the Motion.

**A.      The Settling Parties Are Clearly Entitled to the Settlement Funds**

The Frank Firm and the Participant Parties have conceded that the Settling Parties are entitled to the Settlement Funds. (See FF's Cross-Motion to Interplead [U.L. D.E. 166] at 1 ("There is no real dispute that *the Plaintiffs* should receive the net settlement proceeds"); PPs' Motion to Intervene [U.L. D.E. 153] at 2 ("a pool of funds was deposited into the trust account of [the Frank Firm] . . . *for the benefit of (1) RM, (2) Varwood, and (3) Mr. Katsaev (collectively, the "Settlement Recipients")*").)

The Settlement Agreement (at 2) defines the "Settling Plaintiffs" as RM, Varwood, and Katcaev collectively (*i.e.,* the Settling Parties). Neither of the Participant Parties are among the "Setting Plaintiffs." (See id.) The Settlement Agreement (at 2, ¶ 1) provides for the payment of $2,900,000.00 to "Alan L. Frank Law Associates, P.C. FBO [for the benefit of] *Plaintiffs*." In the Underlying Litigation, RM was the Plaintiff, Varwood was the Intervenor-Plaintiff, and Katcaev was the Counter-Plaintiff. (See Complaint [U.L. D.E. 1]; Intervenor Complaint [U.L.

D.E. 79]; Counterclaim [U.L. D.E. 78].)   In contrast, neither of the Participant Parties were plaintiffs or even parties to the Underlying Litigation, nor have either ever asserted any claim against the underlying defendants.  (See Frank Dep. Tr. at 39:16-24.)   Hence, the Settling Parties are clearly the "Plaintiffs" for whose benefit the Settlement Funds were paid, and the Participant Parties clearly are not.   Based upon the foregoing facts alone, which are not susceptible to dispute, the Settlement Funds belong to the Settling Parties as a matter of law.

### B.      The Frank Firm Lacks a Real and Reasonable Fear of Double Liability

The true nature of this dispute is as the Frank Firm described it in February 2016, when it first sought to interplead the Settlement Funds: "The problem is the [Settling Parties] and the [Participant Parties] all claim to control RM Invest, and each group gives conflicting instructions on how to distribute the settlement."  (Cross-Motion to Interplead [U.L. D.E. 153] at 1.)   The purpose of an interpleader action, however, is not for the Court to do the Frank Firm's job of determining the identity of its client's authorized agents, but rather to resolve competing claims to a single fund.  In this case, the competing claims are not made as to the Settlement Funds—at least not directly—but rather are made as to *who speaks for RM*.   Even if this were an appropriate subject for an interpleader action (which it is not), the Frank Firm still could not justify its alleged uncertainty.

Although the Frank Firm correctly notes that a typical interpleader plaintiff "is not required to evaluate the merits of conflicting claims at its peril" (Motion at 11), it is emphatically not the law that a stakeholder may interplead funds whenever there are competing claims to a single fund.  Rather, those claims must be such as to create a "real and reasonable fear of double liability or vexatious, conflicting claims."  *Gilmore*, 45 F. Supp. 3d at 318.

As discussed *supra*, whereas the Settling Parties were parties in the underlying action, clients of the Frank Firm, and the "Plaintiffs" for whose benefit the Settlement Funds were expressly paid, the Participant Parties were none of those and thus have no colorable claim to the Settlement Funds.  Consequently, the Frank Firm lacks a "real and reasonable fear of double liability," and thus interpleader is inappropriate.  *See Washington Elec. Co-op., Inc.*, 985 F.2d at 680 ("Stowe has not even a colorable claim to the $1.2 million . . . .  Thus, interpleader for the $1.2 million was inappropriate."); *Fonseca v. Regan*, 734 F.2d 944, 949-50 (2d Cir. 1984) (dismissing interpleader where stakeholder "failed to demonstrate any colorable claim adverse to that of Fonseca," whose right to the interpleaded property had been "abundantly demonstrate[d]"); *Great Wall de Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474 (S.D.N.Y 2015) (dismissing interpleader where there was no "real and reasonable" fear of multiple liability); *cf. Bauer v. Uniroyal Tire Co*., 630 F.2d 1287, 1292 (8th Cir. 1980) (describing interpleader claimants as having "a colorable interest in the fund").

*Mendez*, 982 F. 2d 783, is also instructive.  There, the stakeholder, TIAA-CREF, was confronted with competing claims to an annuity death benefit by the decedent's estate and surviving spouse, Mendez.  *Id.* at 785-86.  Mendez sued TIAA-CREF to recover her portion of the death benefit, and TIAA-CREF filed a counterclaim in interpleader against Mendez and the estate.  *Id.* at 786.

Under applicable law, Mendez was entitled to fifty percent of the death benefit unless: (1) she had been legally separated from the decedent, or (2) there was a court order finding that Mendez had abandoned the decedent.  *Id.* at 785-86.  The estate, however, failed to present any evidence—either to TIAA-CREF or the district court—of either legal separation or a court order finding abandonment.  *Id.* at 786, 788.

18

The district court denied TIAA-CREF's motions seeking discharge and attorney's fees, and entered judgment in favor of Mendez. *Id.* at 786. "The court concluded that federal and regulatory law clearly entitled Mendez to the proceeds and that TIAA-CREF, a 'sophisticated party' in the law of ERISA, should have realized that a court order of abandonment was required to terminate Mendez' rights to the proceeds." *Id.* The Court of Appeals for the Second Circuit affirmed the judgment of the district court. *Id.* at 790.

Just as Mendez's clear entitlement to the interpleaded funds, and the clear absence of merit in the estate's claim, precluded TIAA-CREF's discharge, so too here, the Settling Parties' clear entitlement to the Settlement Funds precludes the Frank Firm's discharge. Just as TIAA-CREF was unjustified withholding the death benefit from Mendez in the absence of a court order finding abandonment, the Frank Firm was unjustified here in withholding the Settlement Funds from the Settling Parties and initiating this interpleader action absent evidence that the Participant Parties had either: (1) some direct entitlement to the Settlement Funds, or (2) authority, on behalf of RM, to direct disbursement of the Settlement Funds. The record here, however, is utterly devoid of any such evidence.

### 1.    The Participant Parties Do Not Claim Entitlement to the Funds

62.    Although the Frank Firm claims in its Motion that the Participant Parities have made a competing claim to the Settlement Funds, it has failed to come forward with *any* evidence of such claim. This is, moreover, the opposite of the Frank Firm's prior position that "[t]here is no real dispute that *the Plaintiffs* should receive the net settlement proceeds." (FF's Cross-Motion to Interplead [U.L. D.E. 166] at 1.) Indeed, nowhere in the Participant Parties' filings, in either the underlying or instant actions, have either of the Participant Parties ever made a direct claim to the Settlement Funds in their individual capacities. Rather, the Participant

Parties have attempted—as RM's "majority shareholders" (PPs' Motion to Intervene [U.L. D.E. 153] at 1) or "Majority Owners" (PPs' Response to Motion to Dismiss Crossclaim [D.E. 112] at 1)—to *derivatively* assert *RM's* rights.   (See Motion to Intervene at 5 ("[the Participant Parties] claim an interest in [the Settlement Funds] *as the 75% owners* of a company [RM] that is entitled to the lion's share of those funds."); PPs' Crossclaim [D.E. 24], ¶ 7 ("the settlement payments therefore belong 100% to RM Invest").)

In an attempt to justify its purported uncertainty regarding the rightful distribution of the Settlement Funds, the Frank Firm claims in its Motion that "the consideration to be received from the original purchaser in the original acquisition (which was the subject of the Underlying case,) was to be *equally* split among the three (3) principals of RM Invest [Schmdt, Pirozhnikov, and Katcaev]."   (Motion at 2 n. 1 (emphasis in original).)   Putting aside that the Participant Parties have not made any direct claim to the Settlement Funds in either the underlying or instant action, and the Frank Firm's prior concession that "[t]here is no real dispute that *the Plaintiffs* should receive the net settlement proceeds," even assuming *arguendo* that the Participant Parties had some interest in the subject matter of the Underlying Litigation, it was the Settling Parties, and not the Participant Parties, who actually brought the claims against the underlying defendants that resulted in the Settlement Agreement and the payment of the Settlement Funds. Moreover, the deposition testimony the Frank Firm cites (Motion at 2-4 n. 1) as somehow supporting some unspecified interest of the Participant Parties in the Settlement Funds is entirely equivocal.

If the Participant Parties actually had some direct interest—separate and apart from their indirect interest derived from their participation in RM—in the subject matter of the Arbitration or Underlying Litigation, they would have been parties to one or both of those proceedings,

20

which they were not.  At his deposition, Frank confirmed the derivative nature of the Participant Parties' interests:

> Q.      Well, if these were the claims of the three principals, why weren't Pirozhnikov and Schmdt plaintiffs in the complaint?
>
> A.      Their claims were of a – their participation was of a derivative nature.  They were co-owners and, in fact, majority owners together of RM Invest.

(Frank Dep. Tr. at 57: 13-19.)

Because the Participant Parties have not claimed, and clearly do not have any direct entitlement to any portion of the Settlement Funds, and because the Frank Firm has confirmed the "derivative nature" of the Participant Parties' interest, the Frank Firm's continued claim that there is some "risk of multiple and inconsistent liabilities on a single obligation" (Motion at 14) is completely unfounded.

## 2.      The Participant Parties Lack Standing

As the Florida District Court concluded, because the Participant Parties have not asserted any direct individual claim to the Settlement Funds, but have instead attempted to assert a claim on RM's behalf, they lack standing as a matter of law.  (See Report Recommendation [D.E. 147] at 18 ("Because the Participant Parties have not met their burden of showing that they have standing to bring the Crossclaim, the Court should DISMISS the Crossclaim."); Order [D.E. 155] (accepting and adopting Report and dismissing Crossclaim.).)[11,12]  Because the Participant Parties

---

[11] The Participant Parties did not object to the Magistrate's Report, and thus waived any right to a subsequent *de novo* review of same.  *See* Report Recommendation [D.E. 147] at 19 ("Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice." (citing 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016) (emphasis in original)); *accord Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015) ("Where parties receive clear notice of the consequences, failure to timely object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citation omitted)).

clearly lack standing to assert RM's interests, the Frank Firm's claim that there is some "risk of multiple and inconsistent liabilities on a single obligation" (Motion at 14) is, again, unfounded.

### 3.   The Participant Parties Were Not the Frank Firm's Clients

The record is also devoid of any evidence of an attorney-client relationship between the Frank Firm and the Participant Parties as might give rise to some risk of liability.  *See Brennan v. Ruffner*, 640 So. 2d 143, 145-46 (Fla. 4th DCA 1994) ("[W]here an attorney represents a closely held corporation, the attorney is not in privity with and therefore owes no separate duty of diligence and care to an individual shareholder absent special circumstances or an agreement to also represent the shareholder individually.")[13]  As Frank testified:

> Q.   And as of the time of the settlement agreement, your clients were RM, Varwood and Katcaev, correct?
>
> A.   Yes.
>
> Q.   Schmidt and Pirozhnikov were not your clients, correct?
>
> A.   They were stakeholders. I understood that their role was as a two-thirds ownership interest, a controlling block of RM Invest.  I . . . .
>
> I did not understand that they were my clients, but I did understand that they exercised a control over RM Invest.
>
> Q.   Well, let me ask this differently.
>
> You said you didn't understand that they were your clients.  Did you understand that they were not your clients, technically speaking?

---

[12] *See also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (affirming dismissal on grounds that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Hawes v. Gleicher*, 745 F.3d 1337, 1341 (11th Cir. 2014) ("It requires no subtle analysis to conclude that a corporation's shareholder possesses no right to intervene in a lawsuit such as the one [plaintiff] brought [against said corporation]."); *Gen. Technology Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 119 (4th Cir. 2004) (holding member of a limited liability company lacked standing to assert the company's claims); *John L. Motley Assoc. v Rumbaugh*, 97 B.R. 182, 184-86 (E.D. Pa. 1989) (holding in interpleader action that "individual shareholders do not have standing to assert [corporate] claims on their own behalf").

[13] Because the instant dispute relates to Frank's obligations to the Defendants in connection with a lawsuit brought in Florida, and a Settlement Agreement expressly governed by Florida law, Frank's obligations to the Defendants in this suit are governed by Florida law.

A.      I don't think I made that determination. I just knew that they were in control of RM Invest.  . . . .

(Frank Dep. Tr. at 60:10-61:4.)

It is axiomatic that where a lawyer represents a business entity (in this case, RM), the lawyer's duty is to the entity *and not its owners*.  *See Rudolf v. Gray Harris & Robinson, P.A.*, 901 So. 2d 148, 150 (Fla. 5th DCA 2005) ("[W]hen a lawyer represents an organization, the entity is the client, not the constituents of the organization."); ABA Model Code of Professional Responsibility, Ethical Canon 5-18 ("A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity.  In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization.").

### 4.      The Participant Parties Lack Authority to Act on RM's behalf

As discussed *supra*, the purported uncertainty that was the Frank Firm's initial pretense for seeking interpleader of the Settlement Funds was not over entitlement to the funds, but rather as to the identity of RM's authorized agents.  (FF's Cross-Motion to Interplead at 1 ("There is no real dispute that the Plaintiffs should receive the net settlement proceeds . . . .  The problem is the 'Settling Plaintiffs' and the 'Proposed Intervenors' all claim to control Plaintiff RM Invest . . . .").)  The Frank Firm, however, made no effort to determine the identity of its client's authorized agents.  (See Frank Dep. Tr. at 79:19-21 ("I did not make any determination at the time [of the settlement agreement], or even today, as to which among the three [Schmdt, Pirozhnikov, and Katcaev] had specific authority.").)

It is well-settled, as a matter of both U.S. and Russian law, that business entities, such as RM, act through their duly-authorized *management*, and not through their shareholders,

members, or participants.[14]  Whereas Katcaev produced to the Frank Firm an authenticated and apostilled power of attorney that was executed by RM's Director, Grudtsin, and that authorized Katcaev to act on RM's behalf (see Sheldon Aff., ¶ 14, Ex. 12); and whereas the Frank Firm already had in its possession an extract from the EGRUL that identifies Director Grudtsin (and not Schmdt or Pirozhnikov) as the one "person entitled to act without a power of attorney on behalf of the legal entity" (Sheldon Aff., ¶ 9, Ex. 7); the Participant Parties failed to produce any documentation that either established their authority to act on behalf of RM, or contradicted Katcaev's documentation.[15]

The Frank Firm was not uncertain about the identity of RM's authorized agents, it was *indifferent* (at best).  (A lawyer and fiduciary, however, is obligated to not be indifferent toward the rights of its client, hence the Settling Parties' Counterclaim [D.E. 169] for malpractice and breach of fiduciary duty.)   Having already taken 20% of the Settlement Funds for himself and Khavinson (see Frank Dep. Tr. 80:6-16, Def's Ex. 7), Frank made no effort and showed no interest in determining the identity of his client's authorized agent, and was instead content for his clients to be forced to fight with the Participant Parties in order to recover their bargained-for settlement.  (See Frank Dep. Tr. at 79:19-21; Sheldon Aff., ¶ 11, Ex. 9)

The parallels between the instant case and *Mendez* are truly striking:

> Since nothing in the record indicates that the estate ever claimed that Diaz and
> Mendez had been separated, only a showing of legal abandonment, coupled with a

---

[14] As a matter of Russian law, only the Director General and those operating under a power of attorney signed by the Director General has authority to enter contracts and make decisions on behalf of a limited liability company.  *See Ernst & Young Legal Opinion* [D.E. 18], at 6-7.

[15] By refusing to promptly disburse the Settlement Funds to the Settling Parties and instead initiating this action, the Frank Firm set off a legal battle in Russia whereby the Participant Parties attempted to seize control of RM's management from Katcaev and Grudtsin in order to lay claim to the Settlement Funds.  The Participant Parties were successful in changing the identity of RM's Director as reflected in the EGRUL for all of 8 days, before the Russian court of competent jurisdiction entered an injunction, which was affirmed on appeal, maintaining the *status quo* whereby Katcaev and Grudtsin control RM's management.  (See Reply in Support of Motion to Determine Representation, Exhibit A [D.E. 75-1] at 4; Request for Judicial Notice [D.E. 57] at 3, ¶ f; Second Request for Judicial Notice [D.E. 116] at 2.)

court order to that effect, would have presented a colorable claim in the instant case.  Without a court order of abandonment, Mendez was plainly entitled to the proceeds under ERISA and the Treasury Regulation.

982 F.2d at 788.

Here, because the Settling Parties were Frank's clients in the Underlying Litigation and the "Plaintiffs" for whose benefit the Settlement Funds were paid (and the Participant Parties were not), only a showing that one of the Participant Parties had authority to act on RM's behalf would have presented a colorable claim.  Without any evidence that either established the Participant Parties' authority, or that contradicted the documentation provided to Frank that established Katcaev's authority, the Settling Parties were plainly entitled to the Settlement Funds.

> Despite the estate's obvious inability to produce a court order of abandonment, TIAA-CREF continued to encourage the parties to settle the so-called dispute . . . .  In a letter to the estate . . . TIAA-CREF flatly admitted that it did "not have a court pronouncement that such an abandonment took place."   In the next paragraph, TIAA-CREF nonetheless urged the estate to contact Mendez' attorney "to try and resolve the matter."

*Id.* at 788.

Despite the Participant Parties' obvious inability to produce any evidence of their authority to act on RM's behalf, the Frank Firm continued to insist upon either an interpleader action or arbitration between the Settling Parties and Participant Parties.  (See Sheldon Aff., ¶¶ 11-12, Exs. 9-10.)

> Clearly, there was no matter to resolve.  As the district court held, TIAA-CREF is a "sophisticated party … with substantial experience in the area of ERISA law." We agree.  In our view, TIAA-CREF should have made more substantial efforts to verify whether a court order had been entered. . . .

*Mendez*, 982 F. 2d at 788.

So too here, there clearly was and is no matter to resolve.  If TIAA-CREF, an insurance company, was a "sophisticated party" whom the Court expected to make a more substantial

effort to determine the rightful payee of the subject death benefit, it follows *a fortiori* that Frank – the Settling Parties' own lawyer, who has been practicing for over thirty-five years (Frank Dep. Tr. at 80:2-5) – is also a sophisticated party, who is also expected to make *some* effort to determine the identity of his client's authorized agent(s).

> In view of Mendez' plain entitlement to the proceeds, TIAA-CREF's delay in commencing an interpleader action clearly was unreasonable and impliedly was commenced in bad faith.  TIAA-CREF has given us no reason for concluding that the district court's decision denying TIAA-CREF's motion for discharge was an abuse of discretion.  We hold that there was none. . . .

*Mendez*, 982 F. 2d at 788.

In view of: (1) the Settling Parties' plan entitlement to the Settlement Funds; (2) the Frank Firm's failure to make any effort to identify RM's authorized agent; and (3) the Frank Firm's refusal, even after being provided with uncontroverted evidence of Katcaev's authority on behalf of RM, to comply with its clients' instructions regarding the distribution of the Settlement Funds; the instant action was impliedly filed in bad faith.  Add in: (1) the Frank Firm's counsel to the Settling Parties that eighty percent of the stock transferred by Net Element in consideration of the Settlement be transferred to Schmdt (Frank Dep. Tr. at 46:19-47:4); (2) Frank and Khavinson's attempt to bilk an additional $20,000.00 from the Settling Parties under the pretense of mediation (see Sheldon Aff., ¶ 6, Comp Ex. 4); and (3) Khavinson's "mediation" conference, which included the Participant Parties but not the Settling Parties (Khavinson's clients) (see Katcaev Dec., ¶ 14); and the circumstances become highly suggestive of some sort of collusion between Frank, Khavinson, and the Participant Parties.[16]

---

[16] Although not elements of interpleader, the Frank Firm alleges in its Complaint that it "has not brought this Complaint in Interpleader at the request of any of the Defendants.  There is no fraud or collusion between [the Frank Firm] and any of the Defendants."  (Complaint [D.E. 1], ¶ 16.)  To borrow from Hamlet, the Frank Firm "doth protest too much, methinks."

As discussed *infra*, the Frank Firm has given this Court no reason for concluding that the Florida District Court's decision to deny the Frank Firm's prior motion for discharge was clear error.

> . . . [W]e conclude that an award of [attorney's] fees to a stakeholder in the instant action would be improper.  TIAA-CREF, a knowledgeable insurer, failed to exercise sufficient diligence in investigating the merits of the estate's claim, thereby causing substantial unnecessary litigation.

*Mendez*, 982 F. 2d at 789.

Here, the Frank Firm failed to make any effort to identify the authorized agent of its own client, which is something that a lawyer who represents an entity is expected to do, especially when it has already been paid or taken for itself $700,000.00 in fees.  As a consequence of this failure by the Frank Firm, the Settling Parties have been forced into substantial unnecessary litigation.  An award of fees to the Frank Firm under these circumstances would thus clearly be improper.

## C.      The Jurisdictional Requirements of Section 1335 Have Not Been Met

In addition to lacking a "real and reasonable fear" of double liability, the Frank Firm also does not satisfy the jurisdictional prerequisites for interpleader because there are not two or more claimants with adverse, independent claims.  As discussed *supra*, the Participant Parties are not themselves claimants, but have instead attempted (unsuccessfully, having been held to lack standing) to assert RM's claims.  Therefore, as a matter of law: (1) the Settling Parties, who are the "Plaintiffs" for whose benefit the Settlement Funds were expressly paid, are the only "claimants"; and (2) the Settling Parties are not adverse to one another, but instead have agreed among themselves regarding the division of the Settlement Funds (see Division Agreement).

The Participant Parties' claims are also not "independent" from those of RM as required by 28 U.S.C § 1335(b).  That subsection provides that an interpleader action "may be entertained

27

although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are *adverse to and independent of one another*."  Here, as discussed *supra*, the Participant Parties' claim is not direct, but is instead indirect and derivative of their ownership in RM.  (The Florida District Court, however, already held that the Participant Parties lack standing to assert such a claim.)  (Report Recommendation [D.E. 147]; Order [D.E. 155].)  Accordingly, the Participant Parties' claim is not "adverse to *and independent of*" RM's claim, and thus this prerequisite to interpleader jurisdiction is also absent.  *See Nevada ex rel Colorado River v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1125-26 (D. Nev. 2003) ("This Court does not have interpleader jurisdiction over the present case because CRCN has failed to establish that there are two or more claimants to the fund with sufficiently adverse, *independent* claims.").  Absent the statutory prerequisite of two or more claimants[17] with adverse,[18] independent claims, interpleader is improper, and thus the Court should deny the Frank Firm's Motion.

Further, though not expressly finding a lack of jurisdiction, a number of courts have relied upon the same rationale – that interpleader requires one or more adverse claimants – in dismissing interpleader claims.  *See Interaudi Bank*, 117 F. Supp. 3d at 474 (dismissing interpleader where there was no "real and reasonable" fear of multiple liability); *Lafayette Corp.*

---

[17] *See Glenclova Investment Co. v. Trans-Resources, Inc.*, 874 F. Supp. 2d 292, 300-304 (S.D.N.Y. 2012) (dismissing interpleader action for lack of subject matter jurisdiction where there were no adverse claimants); *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 250-52 (3d Cir. 1991) (affirming dismissal for lack of subject matter jurisdiction where there were no adverse claimants); *Owl Shipping LLC v. Dalian Suntime Int'l Transp. Co.*, No. G-14-270, 2014 WL 6610788 (S.D. Tex. Nov. 20, 2014) (dismissing interpleader action for lack of subject matter jurisdiction where there were no adverse claimants); *Alfa Fin. Corp. v. Key*, 927 F. Supp. 423, 428-31 (M.D. Ala. 1996) (same); *American Family Mut. Ins. Co. v. Roche*, 830 F. Supp. 1241, 1245-51 (E.D. Wis. 1993) (same).

[18] *See Grand Manor Health Related Facility, Inc. v. Hamilton Equities, Inc.*, 941 F. Supp. 2d 406, 415-16 (S.D.N.Y. 2013) (dismissing interpleader as moot where there was no longer a controversy regarding the ownership of the subject funds); *Prince v. Underhill*, 670 So. 2d 92, 95 (Fla. 5th DCA 1996) (holding motion for interpleader moot where adverse claimants filed stipulation of settlement with court); *Nash & Assocs., LLC v. Gwynn*, No. WDQ-14-0376, 2014 WL 3428933 (D. Md. Jul. 10, 2014) ("Because there are no longer competing claims to the disputed funds, the parties' agreement as to the proper disposition of the funds has mooted the interpleader claim"); *Savage v. First Nat. Bank & Trust Co. of Tulsa*, 413 F. Supp. 447, 452 (N.D. Okla. 1976) ("A person who has no claim to the subject matter of the litigation should not be made a party, and where defendant disclaims any interest in the funds deposited in court, he has no further legal standing in the interpleader suit." (quoting 48 C.J.S. Interpleader § 24 (1947))).

*v. Bank of Boston Int'l South*, 723 F. Supp. 1461 (S.D. Fla. 1989) (dismissing interpleader complaint where claimant had no interest in fund); *Center Partners Mgmt. Ltd. v. Cache, Inc.*, 657 F. Supp. 48 (S.D. Fla. 1986) (same).

## III.    The Frank Firm is Not Entitled to Discharge

The Florida District Court has already held that the Frank Firm (1) is not a disinterested stakeholder, and (2) may be independently liable to the Settling Parties, and is therefore not entitled to discharge.  (Report Recommendation [D.E. 148] at 7-8; Order [D.E. 154].)  Because the Frank Firm did not object to the Magistrate's Report, it thus waived any right to a subsequent *de novo* review of same.  *See* Report Recommendation [D.E. 148] at 9-10 ("Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice." (underlining in original)) (citing 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016)); *accord Smith v. Campbell*, 782 F.3d 93 (2d Cir. 2015) ("Where parties receive clear notice of the consequences, failure to timely object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision" (citation omitted)).

In seeking a second bite at the discharge apple, the Frank Firm argues that "the substantive interpleader law in this Circuit and District is *completely inapposite, and holds consistently to the contrary*" of the law upon which the prior motion was decided.  (Motion at 15-16.)  *First*, the Frank Firm fails to explain how the change of forum from the Southern District of Florida to the Eastern District of New York results in a change of applicable law (it

doesn't).  *Second*, although the Frank Firm's position seems to be that the law of *Florida* is inapposite, application of New York law does not result in a different outcome.

In order to obtain a discharge, both states require that an interpleader plaintiff be disinterested and not be independently liable to any claimant.  The subtle difference between the law of the two states (as interpreted by the federal courts) is that the absence of independent liability is required to *initiate* an interpleader action in Florida, whereas it is a requirement for *discharge* in New York.[19]  Consequently, because New York law does not differ in any relevant respect from that of Florida, under which the District Court denied the Frank Firm's prior motion for discharge; and because that court did not clearly err in holding that (1) the Frank Firm is not a disinterested stakeholder, and (2) the Frank Firm may be independently liable to the Settling Parties, this Court should deny the instant Motion.

---

[19] *See Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 Fed. Appx. 244 (11th Cir. 2009) ("When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is *disinterested*. Historically, in order to bring an interpleader action, a plaintiff threatened with multiple liability on a single fund was required to show that he had incurred no *independent liability* to any claimant, such that he was indifferent as between the claimants." (citation omitted)); *Lafayette Corp. v. Bank of Boston Intern. South*, 723 F. Supp. 1461, 1464 (S.D. Fla. 1989) "Florida law requires the stakeholder in interpleader to be in a position of indifference, having incurred no *independent liability* to either of the claimants."); *N. Am. Co. for Life & Health Ins. v. Dye*, No. 3:11-cv-1234-J-34MCR, 2012 WL 4760907 (M.D. Fla. Aug. 24, 2012) ("District courts addressing the first phase of an interpleader action may also determine if the stakeholder is *disinterested*-that is, makes no claim to the res-and, if so, discharge it from liability and dismiss it from the action."); *Orseck v. Servicios Legales De Mesoam. S. De R.L.*, 699 F. Supp. 2d 1344 (S.D. Fla. 2010) (same); *Sea Mgmt. Service, Ltd. v. Club Sea, Inc.*, 512 So. 2d 1025 (Fla. 3d DCA 1987) ("interpleader is not appropriate unless . . . the plaintiff must be in a position of indifference, having incurred no *independent liability* to either of the claimants . . . .); *accord Gilmore*, 45 F. Supp. 3d at 320 ("[O]nce an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, the court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be *independently liable* to a claimant." (quoting *Mitchell*, 966 F. Supp. 2d at 103)); *N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 720 (E.D.N.Y. 2012) (same); *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355 (S.D.N.Y. 2008) ("The plaintiff must be *disinterested* as to the competing claims and must deposit the fund or property with the court in order to be discharged from the action." (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756 LMM, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001))); *Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, No. 06 Civ. 5466(LBS), 2007 WL 102128, at *8 (S.D.N.Y. Jan. 11, 2007) ("When a court decides that an interpleader action is appropriate, it may discharge a *disinterested* stakeholder from further liability. Courts will not discharge an interpleader stakeholder who is not disinterested-that is where the stakeholder has some claim to the property at issue in the interpleader." (citation omitted)); *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 829 (S.D.N.Y. 1977) ("I decline, however, to discharge plaintiff at this time.  While interpleader is properly invoked it may be that the stakeholder is *independently liable*, and I therefore hold that it should remain in the proceeding to answer to any claim . . . .").

### A.     The Frank Firm is Not A Disinterested Stakeholder

The Florida District Court did not clearly err in holding that the Frank Firm is not a disinterested stakeholder.  As Magistrate Judge O'Sullivan explained: "This is not the typical interpleader case involving an innocent, disinterested stakeholder.  The plaintiff represented some of the defendants in the underlying litigation which resulted in competing claims to the settlement proceeds."  (Report Recommendation [D.E. 148] at 7.)

The Frank Firm argues that, because it asserts no claim to the funds it has deposited in the Court Registry, it is therefore a disinterested stakeholder.  (Motion at 14.)  One of the facts that clearly distinguishes the instant case from those relied upon in the Frank Firm's Motion, however, is that the Frank Firm has deposited only a portion of the subject stake.  Pursuant to the Settlement Agreement, the Frank Firm was paid $2,900,000.00 for the benefit of the Settling Parties.  (See Settlement Agreement at 2.)  The Frank Firm, however, has deposited only $2,312,319.60 in the Court Registry (see D.E. 67), and has thus retained $587,680.40 of the Settlement Funds for itself.  The Frank Firm is therefore clearly *not* disinterested in the subject stake, but has instead attempted to characterize itself as such by depositing into the Court Registry only the portion of the Settlement Funds to which it makes no claim.  By the Frank Firm's logic, any interested stakeholder can become a disinterested one if it deposits only the portion of the stake to which it asserts no interest, keeping the rest of the stake for itself (as the Frank Firm has done).

Because the Frank Firm does, in fact, claim an interest in the Settlement Funds – namely, the $587,680.40 it has taken from those funds – it is clearly not a disinterested stakeholder, and is thus not entitled to discharge.  *See Fed. Ins. Co. v. Tyco Int'l*, 422 F. Supp. 2d 357, 392 (S.D.N.Y. 2006) (plaintiff not disinterested stakeholder where it contested liability for disputed

sums); *Boston Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040, 1042 n. 5 (5th Cir. 1979) (insurance company that deposited claim payment but denied the existence of an insurable interest was not disinterested stakeholder); *In re Challenge Air Intern., Inc.*, 123 B.R. 661, 667 (S.D. Fla. 1991) (interpleader plaintiff not disinterested when it retained the funds for its own benefit and protection.); *Jimani Corp. v. S.L.T. Warehouse Co.*, 409 So. 2d 496, 503 (Fla. 1st DCA 1982) (interpleader plaintiff not disinterested where it claimed a lien against interpleaded goods).  Because, as in *Tyco*, the Frank Firm contests liability to the Settling Parties for the $587,680.40 it has retained from the Settlement Funds, it is clearly not a disinterested stakeholder and thus not entitled to discharge.

Indeed, the Frank Firm's failure to deposit all of the Settlement Funds, and not merely the portion to which it claims no interest, is a *jurisdictional defect*.  As the court in *Networks v. Pivot Point Ent. LLC*, 71 F. Supp. 2d 296 (S.D.N.Y 2011), explained:

> As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants. Section 1335 gives the district courts jurisdiction over such actions when a stakeholder has in his possession money or property 'of the value of $500 or more,' if 'two or more ... claimants ... are claiming or may claim to be entitled to such money or property' and if the stakeholder 'has deposited such money ... into the registry of the court.' This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim

*Id.* at 300 (emphasis in original) (citing *Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961)); *see also Nat'l Union Fire Ins. Co. v. Ambassador Grp., Inc.*, 691 F. Supp. 618, 621 (E.D.N.Y. 1988) ("under statutory interpleader an interpleading plaintiff must deposit with the Court the highest amount claimed by defendants." (citation omitted)); *Pine Run Props., Inc. v. Pine Run Ltd.*, No. 90 Civ. 6289 (PKL), 1991 WL 280719, at *7 (S.D.N.Y. Dec. 26, 1991) (no jurisdiction "if the plaintiff-stakeholder does not deposit all the property within its

possession that is claimed by the defendant-claimants" (citation omitted)).  Because the Settling

Parties dispute the enforceability of the Retention Agreement and thus the Frank Firm's

entitlement to retain 20% of the Settlement Funds (See Counterclaim [D.E. 169], ¶¶ 48-53), the

Frank Firm must deposit the remainder of the Settlement Funds in order for interpleader

jurisdiction to obtain.

### B.    The Frank Firm May Be Independently Liable to the Settling Parties

The District Court for the Southern District of Florida also did not clearly err in holding

that the Frank Firm may be independently liable to the Settling Parties.   (Report

Recommendation [D.E. 148] at 7; Order [D.E. 154].)  As Magistrate Judge O'Sullivan explained:

> [I]t is possible that the plaintiff may be liable to at least some of the defendants
> (the Settling Parties).  This is not an instance where an innocent stakeholder
> unwittingly comes into possession of disputed funds.  As counsel of record for
> some of the parties in the underlying action, the plaintiff necessarily negotiated
> the terms of the Settlement Agreement.  For these reasons, the Court should not
> discharge the plaintiff from liability or dismiss the plaintiff with prejudice from
> this interpleader action.

(Report Recommendation [D.E. 148] at 7-8.)

The Frank Firm's Motion does not even attempt to rebut the district court's conclusion

that the Frank Firm may be independently liable to the Settling Parties.  Instead, the Frank Firm

cites four cases – *Viscuso*, 569 F. Supp. 2d 355, *Royal School Labs., Inc. v. Town of Watertown*,

358 F.2d 813 (2d Cir. 1966), *KLCC Investments, LLC*, 2007 WL 102128, and *Clemente*, 2001

WL 11070 – where a court in this Circuit permitted a limited discharge notwithstanding the

possibility of independent liability, as establishing that the law of this Circuit and District

"clearly and unequivocally contradict[s]" the law upon which the Florida District Court denied

the Frank Firm's prior discharge motion.  (Motion at 16-21.)

*First*, as discussed *supra*, the laws of Florida and New York do not differ in any relevant

respect and, more specifically, both expressly provide that potential independent liability

33

precludes discharge. *See Gilmore*, 45 F. Supp. 3d at 320 ("the court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be *independently liable* to a claimant."); *Mitchell*, 966 F. Supp. 2d at 103 (same); *Apostolidis*, 841 F. Supp. 2d at 720 (same); *Bank of Am. v. Morgan Stanley & Co.*, No. 10 Civ. 6322 (RJH), 2011 WL 2581765 (S.D.N.Y June 24, 2011) (same); *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 829 (S.D.N.Y. 1977) ("I decline, however, to discharge plaintiff at this time. While interpleader is properly invoked it may be that the stakeholder is *independently liable*, and I therefore hold that it should remain in the proceeding to answer to any claim . . . ."); *Transamerica Fin. Life Ins. Co. v. Simmonds*, No. 30927/07, 2008 N.Y. Slip Op 51907(U), at *5 (N.Y. Sup. Ct. Kings County Sept. 22, 2008) ("It is well settled that courts have consistently declined to discharge interpleading stakeholders where such parties are *potentially independently liable* to the interpleaded defendants").

*Second*, the four cases cited by the Frank Firm are inapposite here. In *Royal School Labs., Inc.*, 358 F.2d 813, the Court of Appeals applied *Connecticut* law, and thus that case has no bearing on the law of this forum. To whatever extent the other three cases cited by the Frank Firm – *Viscuso* (2008), *KLCC Investments, LLC* (2007), and *Clemente* (2001) – conflict with the authorities cited in the preceding paragraph – *Gilmore* (2014), *Mitchell* (2013), *Apostolidis* (2012), and *Bank of Am.* (2011) – they are superseded.

*Third*, the cases cited by the Frank Firm are distinguishable on various grounds. Whereas the courts in those cases—none of which involve an attorney-client or other fiduciary relationship as existed between the Frank Firm and the Settling Parties—found interpleader to be appropriate,[20] interpleader is not appropriate here for the reasons discussed *supra*. Critically,

---

[20] *See Royal School Labs., Inc.*, 358 F.2d at 815 ("To decide that issue in favor of the materialman in a suit to which the assignee is not a party leaves the Town exposed to the very possibility of double liability which interpleader is

whereas the courts in the cases cited by the Frank Firm found the interpleading stakeholders to be disinterested,[21] as discussed *supra*, the Frank Firm is not disinterested because it has claimed and withheld a portion of the subject stake.  Because the Frank Firm is not a disinterested stakeholder, and may be independently liable to the Settling Plaintiffs, it is precluded from discharge as a matter of law.

### C.    Discharge is Precluded by the Frank Firm's Bad Faith

"Even where, as here, the stakeholder has met the requirements of § 1335, discharge under § 2361 may be delayed or denied if there are serious charges that the stakeholder commenced the action in bad faith."  *Mendez*, 982 F.2d at 787 (citation omitted).  As discussed *infra*, the Frank Firm has acted in bad faith in the filing of this interpleader action and since, and thus discharge should be denied on this additional ground.

## IV.    **The Frank Firm's Motion Is Unsupported By Evidence**

The Frank Firm's Motion has not been brought as a motion for summary judgment, nor is it supported by *any* evidence other than an affidavit relating to the amount of the Frank Firm's claimed fees.  Such a motion is insufficient as a matter of law for the Frank Firm to obtain the requested discharge.  As explained in *Podhurst, Orseck, P.A. v. Servicios Legales de Mesoam. S. de R.L.*, 699 F. Supp. 2d 1344 (S.D. Fla. 2010)*,* on which Frank extensively relied in its prior motion: "[F]irst phase questions may be formulated on motion by the parties, or decided by the court as if presented on a *formal motion for summary judgment*, either on the papers or after

---

designed to prevent . . . ."); *Viscuso*, 569 F. Supp. 2d at 363 ("We therefore find that interpleader is proper despite William Penn's carelessness . . . ."); *KLCC Investments, LLC*, 2007 WL 102128, at * 6 ("Citigroup had a legitimate fear that it would be subject to multiple conflicting suits seeking to recover the funds; this is the situation for which interpleader was designed."); *Clemente*, 2001 WL 11070, at *6 ("[T]he Court finds that Merrill Lynch was in fact faced with 'adverse' claims and properly brought this interpleader action.").

[21] *See Viscuso*, 569 F. Supp. 2d 355 (insurance company disinterested in life insurance proceeds); *KLCC Investments, LLC*, 2007 WL 102128, at *1 ("Citigroup claims no interest in the assets."); *Clemente*, 2001 WL 11070, at *7 ("It [the interpleading stakeholder] claims absolutely no interest in the funds, it has deposited *the entire sum* of the escrow account . . . .").

taking *evidence.*" *Id.*, 699 F. Supp. 2d at 1349 n. 5 (citation omitted); *see also Hartford Life Ins. Co. v. Simonee*, No. 14-cv-7520 (SJF) (ARL), 2016 WL 6956726 (E.D.N.Y. Nov. 9, 2016) (granting discharge where plaintiff presented *evidence* of a real and reasonable double liability or conflicting claims, and there was no indication that plaintiff was independently liable to any claimant).  Because the Frank Firm has failed to introduce any evidence supporting the propriety of either interpleader or discharge, its Motion must be denied.

## V.  <u>The Frank Firm is Not Entitled to Recover Its Attorneys' Fees or Costs</u>

The decision to award fees and costs to an interpleading stakeholder is "left to the sound discretion of the district court."  *Mitchell*, 986 F. Supp. 2d at 104 (citation omitted).  "[C]ounsel fees to stakeholders, when awarded, should be kept small, both out of fairness to the eventual recipient of the fund and in recognition of the minimal work necessary to institute a suit in interpleader."  *Chemical Bank v. Richmul Assocs.*, 666 F. Supp. 616 (S.D.N.Y. 1987) (quoting *John Hancock Mutual Life Ins. Co. v. Doran*, 138 F. Supp. 47, 50 (S.D.N.Y. 1956)).

"In general, a reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is '(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability.'"  *Mitchell*, 966 F. Supp. 2d at 104 (quoting *Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989)).  "'A disinterested and innocent stakeholder, who has been required to expend time and money to participate in a dispute *not of his own making* and the outcome of which has no impact on him, is entitled to costs and attorneys' fees.'"  *Id.* (quoting *Sparta Florida Music Group v. Chrysalis Records*, 566 F. Supp. 321, 322 (S.D.N.Y. 1983)).

However, as Magistrate Judge O'Sullivan explained in his Report Recommendation [D.E. 148]:

> this is not an ordinary case.  . . . . the plaintiff is not the typical innocent stakeholder who unwittingly gains possession of disputed funds.  Here, the plaintiff served as legal counsel to some of the parties to the Settlement Agreement and was an active participant in negotiating the terms of the settlement including the provision in the Settlement Agreement that funds be deposited into the plaintiff's trust account.  Additionally, the plaintiff's request for attorneys' fees in the amount of $134,683.50 and costs of $3,000.36 is not "quite minor" and would significantly reduce the remaining Settlement Proceeds.
>
> An award of attorney's fees and costs is further unwarranted in the instant case where the plaintiff has already paid itself $587,680.40 in attorney's fees and costs before depositing the remaining Settlement Proceeds with the Court.  As interpleader is an equitable action, it is controlled by equitable principle.  Awarding the plaintiff additional attorney's fees and costs particularly when the plaintiff may have been responsible, even in part, for the dispute between the Settling Parties and Participant Parties, would be tantamount to rewarding the plaintiff for creating the circumstances which cause it to file the instant interpleader action in the first place.

(Report Recommendation at 8-9 (citation omitted).)

Because, as discussed *supra*, the Frank Firm is not a disinterested stakeholder and has not deposited all of the Settlement Funds with the Court, it is not entitled to recover its attorneys' fees.  In addition, the Frank Firm's responsibility for creating this so-called dispute, its lack of a "real and reasonable fear of double liability," and its acts of bad faith in filing the interpleader action and since also preclude an award of attorneys' fees.

It has been the Frank Firm's position from the time it received the Settlement Funds that because of the Participant Parties' participation in RM, and because they were among the signatories to the Settlement Agreement, any proposed distribution must be approved by them. (See Sheldon Aff., ¶ 8, Ex. 6 at 1.)  The Frank Firm, however, has not (and cannot) explain how being signatories to the Settlement Agreement authorizes the Participant Parties to direct the Settlement Funds paid for the express benefit of the "Plaintiffs."  Indeed, neither the Frank Firm

nor the Participant Parties have come forward with any evidence or law that the Participant

Parties have any authority to direct the distribution of the Settlement Proceeds or to make any

other decision on RM's behalf as might justify the Frank Firm's position.   Instead, Frank

testified as follows:

> Q.       Going back to Exhibit 2 [(the Settlement Agreement)], Paragraph
> 18, the last sentence, quote, the settling parties represent that the persons
> executing this settlement agreement are authorized to bind all of the corporate
> entities in this matter, end quote. Do you see that?
>
> A.       I do.
>
> Q.       And with respect to your clients, RM, Varwood and Katcaev, do
> you know which of the persons executing the settlement agreement were
> authorized to bind which corporate entities?
>
> A.       All three [Schmdt, Pirozhnikov, and Katcaev] owned all of the
> stock together.  They were authorized.  *I did not make any determination at the
> time, or even today, as to which among the three had specific authority*. I think
> the three together, being the unanimous shareholders, that is to say holders of 100
> percent of the shares had the requisite authority, and, in fact, that was reported to
> opposing counsel, and they -- and opposing counsel and his clients relied upon
> that representation.
>
> Q.       And what's the basis of your understanding that these three
> shareholders, acting unanimously had authority to bind this company?
>
> A.       *35 years of practice*.

(Frank. Tr. at 79:14-80:5.)[22]

It is Frank's failure to identify his clients' duly-authorized constituents, his failure to

abide by bar rules prohibiting "aggregate settlements," his haughty presumption of legal

authority, and his resulting, unjustified insistence that the Participant Parties approve any

---

[22] The Frank Firm has claimed that because the Settlement Agreement contains language that "the person(s) executing this Settlement Agreement are authorized to bind all of the corporate entities in this matter," it thus follows that the Participant Parties had authority to bind RM.  (See FF's Answers to Interrogatories, attached hereto as Exhibit "D," at 6-7.)  That inference, however, is clearly unsupported.  Rather, the clear meaning and purpose of that language was to assure the underlying defendants that *among* the signatories—which included Grudtsin, Katcaev, Schmdt, and Pirozhnikov—was one or more persons with individual or collective authority to bind the company; and *not* that all four signatories had individual or collective authority to bind the company.

distribution of the Settlement Funds – by which he essentially invited the Participant Parties to make claims to his clients' money – that *created* the dispute that is the pretense for the instant action.  Applying *Mendez*, 982 F. 2d at 788-89, the Frank Firm is clearly not entitled to discharge or its fees.

The relevant legal principal—that a business entity (such as a corporation or limited liability company) is a juristic person distinct from its shareholders or members, who lack legal standing to assert the entity's claims as their own, even if they are the majority owners—is not some arcane concept with which the Frank Firm might be unfamiliar.  Rather, this is a basic axiom that every lawyer who represents a business entity is expected to understand.  As someone who has been practicing law for over thirty-five years, Frank is presumed to know "that when a lawyer represents an organization, the entity is the client, not the constituents of the organization."  *Rudolf*, 901 So. 2d at 150.  If it was clear to the Florida District Court – an impartial third-party – that, as a matter of law, the Participant Parties lack standing to claim the Settlement Funds, then Frank – the Settling Parties' lawyer and fiduciary – has no excuse for his purported uncertainty.

Had the Frank Firm properly discharged its duties to its clients, and adhered to Rule 4-1.8(g)'s, Rules Regulating the Florida Bar, prohibition against aggregate settlements, we would not be where we are today.  Specifically, if the Frank Firm had simply drafted the Settlement Agreement to state the amounts due thereunder to each of its clients, the Settling Parties, as required by Rule 4-1.8(g), there would not now be any conflict as to whom and how much are payable under said agreement.  If the Frank Firm had made *any* effort to determine the identity of RM's authorized agents, or had simply considered the documentation and law provided to it, this so-called conflict would have been resolved.   Accordingly, because the Frank Firm has no "real

and reasonable fear of double liability," and is squarely responsible for the conflict at the heart of this interpleader action, it cannot recover its fees incurred herein.  *See Mack v. Kuckenmeister*, No. 3:08-CV-0037 0-ECR-RAM, 2011 WL 1377146 (D. Nev. Apr. 12, 2011) ("attorney's fees and costs are not permitted in an interpleader action where there is no substantial likelihood of multiple liability for the Plaintiff.  . . . a party who files an interpleader action without exercising sufficient diligence in investigating the merits of the allegedly competing claims, thereby causing unnecessary litigation, is not entitled to attorney's fees." (citing *Mendez*, 982 F.2d 783)); *Metro. Life Ins. Co. v. Prater*, 508 F. Supp. 667, 669 (E.D. Ky. 1981) (denying stakeholder's request for attorney's fees where "[t]here was no substantial likelihood of multiple liability.") *Aetna Life Ins. Co. v. Harley*, 365 F. Supp. 1210 (N.D. Ga. 1973) (denying stakeholder's request for attorney's fees where "had [it] conducted the slightest investigation of the claims upon the fund, it could only have concluded that Brenda's claim was without merit"); *Paul Revere Life Ins. Co. v. Riddle*, 222 F. Supp. 867, 868 (E.D. Tenn. 1963) (denying stakeholder's request for attorney's fees where "plaintiff was never in any real danger of double liability").

Moreover, the Frank Firm is also precluded from recovering its attorneys' fees because of its flagrant acts of bad faith.  Specifically, confronted with: (1) its clear violation of Florida Bar Rules prohibiting aggregate settlements; and (2) the absence of any agreement with Varwood or Katcaev that might otherwise have entitled the Frank Firm to a contingency fee based upon their share of any recovery; Frank, as the Frank Firm's corporate representative, testified falsely under oath to a revised, ahistorical version of events, in an apparent effort to escape the consequences of his actions.  Specifically, despite the Settlement Agreement's reference to "Plaintiff*s*," and despite the absence of any writing whereby Varwood or Katcaev disclaim any interest in the Settlement Funds, and despite the Frank Firm's prior statement to the Florida District Court that

40

"[t]here is no real dispute that the Plaintiff*s* [plural] should receive the net settlement proceeds" (Cross-Motion to Interplead at 1), Frank falsely testified that: (1) all of the Settlement Funds were intended for RM; and (2) that Frank had never contemplated disbursing the funds directly to Schmdt, Pirozhnikov, and Katcaev:

> Q.    . . . . When was it decided that the monies would not go to the three participants [Schmdt, Pirozhnikov, and Katcaev], but instead to RM?
>
> A.    I don't think there was ever a time where I thought I'd be writing, or the firm would be writing three checks to the three individuals.  I think it was always contemplated that it would go to RM Invest.
>
>     I think there was – but there had been discussion as to how each stakeholder would be remunerated, and it was my understanding through conversation with Katcaev that it would be in one-third components –
>
> Q.    So you're saying ---
>
> A.    -- but from RM Invest.
>
> Q.    So your firm would not be involved in the distribution among the shareholders, is that your testimony?
>
> A.    That's my testimony, that's correct.  Not just my testimony, that's the truth.  That's accurate.  Money was supposed to go to RM Invest, and it would have except that your client did not provide me with your client's tax payer ID number.

(Frank Dep. Tr. at 70:2-22.)

However, e-mails that the Frank Firm had, without justification, failed to initially produce to the Settling Parties reveal his testimony to be utterly false, and instead show that Frank had been prepared to disburse the settlement funds directly to Schmdt, Pirozhnikov, and Katcaev subject only to the provision of their tax IDs and instructions signed by all three regarding the division of the proceeds:

> We now have the net insurance settlement proceeds in our Florida Trust account.
>
> Please remind the principals [Schmdt, Pirozhnikov, and Katcaev] that we need tax ID numbers from *each of them* in order to release the money *to them*.

We will also need a writing signed by all of them indicating *who should receive each share of the proceeds*.

(Sheldon Aff., ¶ 4, Ex. 2 at ALF 000112.)

We cannot release any funds without tax ID numbers and a letter signed by each of the principals specifying *who gets what amount of money*.

(Sheldon Aff., ¶ 5, Ex. 3.)  Because the Frank Firm has failed to establish the propriety of either interpleader or discharge, and has clearly acted in bad faith, the Court should not condone such conduct by awarding its fees incurred in this action.

## VI.   Frank's Claims of Unreasonable Conduct Are Unsupported by Evidence or Law

In the last section of its Motion (at 27-28 n. 7), the Frank Firm claims that the undersigned, by attempting to vindicate the rights of its clients, has somehow acted unreasonably and vexatiously.  The Frank Firm's arguments, however, are pure *ipse dixit*, unsupported by any law or evidence and should thus be completely disregarded.  Indeed, a number of the Frank Firm's claims are *demonstrably* false.  For example, Frank's claim that the undersigned "issued irrelevant and overly broad discovery" (Motion at 27-28 n. 7) is belied by: (1) the supplemental discovery responses filed by the Frank Firm [D.E. 114] the day before the September 22, 2016 discovery hearing requested by the undersigned on account of the Frank Firm's failure to comply with its discovery obligations; and (2) Magistrate Judge O'Sullivan's Order [D.E. 124] following that hearing, which compelled the Frank Firm to produce additional discovery that it had unreasonably withheld.

WHEREFORE, for the foregoing reasons, Defendants OOO RM Invest, Varwood Holdings, Ltd., and Tcahai Hairullaevich Katcaev respectfully request that the Court enter an order: (1) denying Plaintiff Alan L. Frank Law Associates, P.C.'s Renewed Motion for Discharge and Award of Attorneys' Fees and Costs, (2) directing the Clerk of the Court to

disburse the interpleaded funds to the undersigned law firm; and (3) awarding such other and further relief as the Court deems just and proper.

Dated: May 11, 2017

By: _s/ Samuel M. Sheldon_____
        Samuel M. Sheldon

THE BEHAR LAW FIRM, P.A.
17501 Biscayne Blvd. Ste. 460
Aventura, Florida 33160
(786) 735-3300

*Attorneys for Defendants/Counter-Plaintiffs/Cross-Plaintiffs OOO RM Invest, Varwood Holdings, Ltd., and Tcahai Hairullaevich Katcaev*

43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ALAN L. FRANK LAW ASSOCIATES, P.C.,

                  Plaintiff,           No. 17-CV-1338 (SJF) (ARL)

v.

OOO RM INVEST, et al.,           **CERTIFICATE OF SERVICE**

          Defendants.

--------------------------------------------------------X

OOO RM INVEST, et al.,

          Counter-Plaintiffs

v.

ALAN L. FRANK LAW ASSOCIATES, P.C.,
et al.,

          Counter-Defendants.

--------------------------------------------------------X

     I hereby certify that on May 11, 2017, the foregoing document was served in accordance

with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the

Eastern District's Rules on Electronic Service upon the following parties and participants:

Alan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
136 Old York Road
Jenkintown, PA 19046
*Attorneys for Plaintiff Alan L. Frank Law*
*Associates, P.C.*

Richard J. Mooney, Esq., *pro hac vice*
Rimon Law, P.A.
One Embarcadero Center, #400
San Francisco, CA 94111
*Attorneys for Defendant/Cross-Defendant*
*Sasha Schmdt and Defendant Sergey*
*Pirozhnikov*

Geralyn M. Passaro, Esq., *pro hac vice*
Litchfield Cavo LLP
600 Corporate Drive, Suite 600
Ft. Lauderdale, FL 33333
*Attorneys for Counter-Defendants Alan L.*

Edward Fogarty, Jr., Esq.
Litchfield Cavo LLP
420 Lexington Avenue, Suite 2104
New York, NY 10170
*Attorneys for Counter-Defendants Alan L.*

*Frank Law Associates, P.C. and Alan L. Frank*

Michael Furman, Esq.
Stefanie A. Singer, Esq.
Furman Kornfeld & Brennan, LLP
61 Broadway, 26th Floor
New York, NY 10006
*Attorneys for Counter-Defendant Eugene A. Khavinson*

*Frank Law Associates, P.C. and Alan L. Frank*