**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
ALAN L. FRANK LAW ASSOCIATES, P.C.,

                      Plaintiff,

         -against-

OOO RM INVEST, VARWOOD HOLDINGS, LTD.,
TCAHAI HAIRULLAEVICH KATCAEV, SASHA
SCHMDT and SERGEY PIROZHNIKOV,

                  Defendants.
----------------------------------------------------------X
OOO RM INVEST, VARWOOD HOLDINGS, LTD.
and TCAHAI HAIRULLAEVICH KATCAEV,

              Counter-Plaintiffs,

         -against-

ALAN L. FRANK LAW ASSOCIATES, P.C.,
ALAN L. FRANK and EUGENE A. KHAVINSON,

             Counter-Defendants.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV 17-1338 (NGG) (ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Garaufis, is the motion of Alan L. Frank

Law Associates (the "Frank Firm") and Alan L. Frank ("Frank") (collectively, the "Frank

Parties") to dismiss the counterclaims of the defendants OOO RM Invest ("RM"), Varwood

Holdings, Ltd. ("Varwood") and Tcahai Hairullaevich Katcaev ("Katcaev") (collectively, the

"Settling Parties"), as well as the motion of the counter-defendant Eugene A. Khavinson

("Khavinson") to dismiss the amended third-party complaint[1] pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  For the reasons set forth below, the undersigned respectfully

---

[1] The third-party complaint was stricken by the Florida Court on January 4, 2017.  The Settling Parties have asserted counterclaims against Khavinson.  The Court will treat Khavinson's submission as a motion to dismiss the counterclaims.

recommends that the motions be granted, in part, and denied, in part.

## BACKGROUND

The facts which serve as a basis for the instant motions are set forth in the undersigned's Report and Recommendation dated February 24, 2020, familiarity with which is assumed. For the sake of brevity, the Court will not repeat those facts here. The Court will, however, briefly summarize the relevant procedural history in order to provide a context for adjudicating the instant motions.

On February 22, 2016, the Frank Firm commenced this interpleader action in the Eastern District of New York stemming from a written settlement agreement entered into by the Settling Parties and several nonparties in an action filed in the Southern District of Florida. ECF No. 1. At a conference held on June 23, 2016, the parties consented to have the action transferred to the Southern District of Florida. ECF No. 41. The action was transferred the following day. One week later, on July 1, 2016, the Frank Firm deposited $2,312,319.60 into the Registry of the Florida Court. ECF No. 67.

On July 8, 2016, the Settling Parties moved to dismiss the interpleader complaint. ECF No. 72. On December 1, 2016, Magistrate Judge O'Sullivan issued a Report and Recommendation recommending that their motion be denied. ECF No. 147. The Report and Recommendation was adopted by Judge Altonaga on December 19, 2016. ECF No. 155. Subsequently, on January 3, 2017, the Settling Parties filed an answer, along with counterclaims and crossclaims, in which they asserted their entitlement to the interpleaded fund and alleged, among other things, claims for legal malpractice and breach of fiduciary duty. ECF No. 156. Their answer also included a third-party complaint against Khavinson. *Id.* The following day, the Court issued an order striking the third-party complaint on the grounds that the deadline for

2

motions to amend pleadings or join parties had expired.  ECF No. 157.  The Florida court did,

however, permit the Settling Parties to amend their crossclaim to add claims against the Frank

Firm, Frank, and Khavinson.  ECF Nos. 169.[2]  Their amended counterclaim sets forth six causes

of action:

1. Count I asserts a claim for breach of fiduciary duty against the Frank Firm;

2. Count II seeks a declaratory judgment as against the Frank Firm with respect to the Settling Parties' entitlement to the interpleaded funds;

3. Count III seeks a declaratory judgment as against both the Frank Firm and Khavinson as to the validity of their retention agreement;

4. Count IV asserts a claim for malpractice against the Frank Parties and Khavinson for

a. failing to identify RM's duly authorized constituents at the outset of the representation;

b. negotiating the terms of the Settlement Agreement, and then counseling the Settling Parties to enter into the same, without first seeking and obtaining an agreement among the Settling Parties regarding the division of the Settlement Funds as required by Rule 4-1.8(g), R. Regulating Fla. Bar;

c. negotiating the terms of the Settlement Agreement, and then counseling the Settling Parties to enter into the same, which provided for the transfer of 800,000 shares of Net Settlement stock to Schmdt, who was not a party to the Lawsuit, and had no interest therein other than a derivative interest as a member of RM;

d. refusing to comply with the Settling Parties' instructions regarding the division of the Settlement Funds, and instead – out of apparent concern for themselves, or the Participant Parties [Schmdt and Pirozhnikov] – insisting upon the consent of the Participant Parties, who were not clients of the Frank Firm or Frank, not parties in the Lawsuit, had no entitlement to any portion of the Settlement Funds, and no authority to act on behalf of any of the Settling Parties; and

---

[2] The Settling Parties filed an amended pleading on January 19, 2017.  It appears they had forgotten to include a crossclaim the day before.  The Court treats ECF No. 169 as the operative pleading.

e. initiating the instant action, where the Frank Firm, acting through Frank, essentially invited the Participant Parties to lay claim to funds belonging to its clients, the Settling Parties, thereby putting its own interests and those of the Participant Parties ahead of those of its clients.

5. Count V asserts a claim for breach of fiduciary duty as against the Frank Parties and Khavinson for the same conduct enumerated in the malpractice claim; and

6. Count VI seeks a declaratory judgment as against the Frank Parties and Khavinson as to the validity of the retention agreement and the attorneys' entitlement to the 200,000 shares of Net Element stock.

*Id.*

On January 24, 2017, the Frank Parties filed the instant motion to dismiss those counterclaims. ECF No. 173. On February 10, 2017, Khavinson did the same. ECF No. 183. However, before those motions were decided, Judge Altonaga issued an order transferring the case back to the Eastern District of New York and terminating all pending motions. ECF No. 193. Following the transfer, the case was reassigned to District Judge Feuerstein who met with the parties and established a briefing schedule for the Frank Firm's renewed motion for discharge. Judge Feuerstein indicated that all other motions unrelated to the discharge motion were to be held in abeyance pending resolution of the discharge motion.

On May 22, 2017, the Frank Firm filed a renewed motion for discharge and attorneys' fees. ECF No. 214. That motion was denied. ECF No. 253. While the motion was pending, the case was reassigned to District Judge Garaufis. In January 2019, Judge Garaufis lifted the stay issued by Judge Feuerstein and granted the parties leave to file motions including the motions now before the Court.

4

**DISCUSSION**

**A.    Standards of Law**

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

**B.    The Malpractice Claim**

The first argument proffered by the Frank Parties in support of their motion is that the malpractice claim (Count IV) is barred under Pennsylvania law. Khavinson also seeks to dismiss the malpractice claim arguing that New York law governs the claim to the extent it is asserted against him. The Settling Parties contend that the malpractice claim is governed by Florida law.

Accordingly, the Court must begin its analysis by determining which state's choice of law rules apply. As a general rule, a federal court looks to the choice of law rules of the state in which it sits in diversity cases. *Schuman v. Mezzetti*, 702 F. Supp. 52, 53 (E.D.N.Y. 1988) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). However, where, as here, the parties obtain a transfer of venue, district courts generally apply the choice of law rules of the state in which the plaintiff [initially] brought the action." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). In this case, those states are one and the same. Accordingly, the Court will be governed by New York choice of law rules.

In New York, "the first step [in the choice of law inquiry] is to determine whether there is an 'actual conflict' between the laws invoked by the parties." *Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 416–17 (E.D.N.Y. 2013) (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001)). This is so because a choice-of-law analysis need not be performed unless there is "an 'actual conflict' between the applicable rules of two relevant jurisdictions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012).[3] "An 'actual conflict' between the laws of two states arises [only] where there are 'relevant substantive differences that could have a significant impact on the outcome of the case.'" *Youngman*, 923 F. Supp. 2d at 416 (citing *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin.*, Inc., 414 F.3d 325, 332 (2d Cir. 2005)). With these rules in mind, the Court will first address the choice of law arguments raised by the parties in relation to the malpractice claim. The Court will then analyze the merits of the Frank Parties' and Khavinson's contentions.

---

[3] The first 10 pages of the Frank Parties' memorandum addresses which of the competing jurisdictions has the greater interest in having its law applied in this litigation. The Court does not reach this analysis unless a conflict exists.

As a threshold matter, it is important to note that the Frank Parties' motion was fully briefed while the case was still pending in Florida. When the motion was reactivated, the Frank Parties and the Settling Parties resubmitted the same papers. As such, the Settling Parties often urge the Court to apply Florida law because it was "the law of the state where the action [was] being tried." Settling Parties' Mem. at 1. However, the Frank Parties also cite to Florida law and it is not at all clear if the parties' reliance on Florida law is based on the fact that Florida was the forum state or because it is allegedly the "locus of the torts." Moreover, the parties sporadically address arguments made by one another in earlier briefs whether or not those arguments are currently being propounded. Accordingly, working through their submissions has been a challenge. The Court has attempted to read the arguments made by the Frank Parties and liberally while at the same time drawing reasonable inferences in favor of the non-movant.

Turning to the substance of the arguments, the law regarding the permissibility of malpractice claims relating to settlements is not in conflict. Contrary to the Frank Parties' contention, Pennsylvania law, like Florida and New York law,[4] does not bar legal malpractice suits due to the mere acceptance of a settlement. To state a legal malpractice claim under Pennsylvania law, "the plaintiff bears the burden of proving: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff." *ASTech Int'l, LLC v. Husick*, 676 F. Supp. 2d 389, 400 (E.D. Pa. 2009). Here, the Frank Parties argue that the Settling Parties cannot not satisfy their burden with respect to the second element because under Pennsylvania law "dissatisfied litigants [may not] agree to a settlement and then file suit against

---

[4] *Keramati v. Schackow*, 553 So. 2d 741, 745–46 (Fla. Dist. Ct. App. 1989) (reversing summary judgment where court had barred party from raising malpractice based on acceptance of a settlement in a prior suit); *In re Monahan Ford Corp. of Flushing*, 390 B.R. 493, 503 (Bankr. E.D.N.Y. 2008) ("Under New York law, the settlement of an underlying claim does not preclude a legal malpractice action.")(collecting cases).

their attorneys in the hope that they will recover additional monies." *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346, 1351 (Pa. 1991).

While the Frank Parties statement is correct, they have interpreted the Pennsylvania common law too broadly. Relying, in large part, on the decision in *Muhammad*, the Frank Parties argue that Pennsylvania Courts have established a bright line rule with respect to malpractice claims:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable . . . The primary reason we decide today to disallow negligence or breach of contract suits against lawyers after a settlement has been negotiated by the attorney and accepted by the client is that to allow them will create chaos in our civil litigation system.

*Id*. 1348-49. However, in that case, Muhammad had signed off on a final settlement agreement and later sued his attorney because he was dissatisfied with the settlement amount. As such, the *Muhammad* court sought to prevent litigants who second guess their settlement terms from later suing their attorneys. The claims in this case are very different. The Settling Parties have not raised an issue with respect to the terms of the Net Element settlement. Instead, they accuse the Frank Parties and Khavinson of, among other things, failing to resolve how the settlement funds were to be apportioned after the parties had signed the agreement and to properly advise the parties of their rights and obligations under that agreement – failures which they say resulted in years of litigation in order to recover the bargained-for settlement.

Moreover, as the Settling Parties correctly note, subsequent to *Muhammad*, another Pennsylvania Superior Court explained that "the [*Muhammad*] rule applies in cases where the

alleged negligence lies in the exercise of judgment regarding an amount to be accepted or paid in settlement of a claim, not when allegations exist concerning an attorney's failure to advise a client properly about well-established principles of law and the impact of an agreement upon the substantive rights and obligations of the client." *Banks v. Jerome Taylor & Assocs.*, 700 A.2d 1329, 1332 (Pa. Super. Ct. 1997) (citing *McMahon v. Shea et al.*, 441 Pa. Super. 304, 310–12, 657 A.2d 938, 941 (1995) (*en banc*).  In affirming the Superior Court decision, the Pennsylvania Supreme Court stated, "it would be absurd for attorneys to be permitted to shield themselves from liability for legal errors under the guise that they were exercising professional judgment." *Id.* (*McMahon*, 547 Pa. at 130–32, 688 A.2d at 1182).  Accordingly, the Court finds no conflict between Florida and Pennsylvania law, both of which permit malpractice claims relating to settlements under certain circumstances and rejects the Frank Parties' argument that seeks dismissal of the counterclaim on that ground

In addition, the Court disagrees that differences in the way Pennsylvania, Florida and New York apply contributory negligence to malpractice claims is sufficient to raise a conflict of law at this stage in the litigation.  To this end, the Frank Parties assert that a conflict exists between the laws of Pennsylvania and "Florida" with respect to the application of contributory negligence to malpractice claims.  Specifically, the Frank Parties note that Pennsylvania's contributory negligence doctrine bars an action for legal malpractice.  *See Gorski v. Smith*, 812 A.2d 683 (Pa. Super 2002) (applying the doctrine of contributory negligence to a legal malpractice claim).  In comparison, Florida and New York apply the doctrine of comparative negligence to malpractice actions.  See, e.g., *Michael Kovach, P.A. v. Pearce*, 427 So. 2d 1128 (Fla. 5th DCA 1983); *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 300 (2d Cir. 1997) (when New York, by statute, adopted comparative negligence, it abolished

9

contributory negligence as a complete defense.).  While the Frank Parties are correct that the laws differ, the issue of contributory or comparative negligence is not ripe for determination on this Rule 12(b)(6) motion.  Indeed, the fact that the Frank Parties believe that the "Settling Parties are, at least, contributorily negligent because they signed the Settlement Agreement" is an issue that must be raised at trial.  Accordingly, the contributory negligence argument lacks relevance for this choice of law analysis and does not negate the plausibility of the malpractice claim.[5]

Finally, in their memorandum, both parties reference a rule governing the conduct of the Florida Bar referred to as the "aggregate settlement rule," which provides:

> A lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

Rule 4-1.8(g), R. Regulating Fla. Bar.  Notably, neither party has raised a conflict of law issue with respect to this rule.  In fact, the Settling Parties cite to the Florida rule and then reference a case applying a similar rule in Oregon.  The Frank Parties cite to cases from Illinois and Oregon and reference a similar rule from Maryland.

---

[5] It warrants mention that, in the future, the Court may be required to engage in a choice of law analysis with respect to the comparative negligence defense.  The weight of authority in the Second Circuit holds that comparative negligence laws are "loss-allocating." *O'Brien v. Marriot Int'l, Inc.*, No. CV 04-3369(VVP), 2006 WL 1806567, at *2 (E.D.N.Y. June 29, 2006). "Where loss-allocating rules are the subject of choice-of-law questions, New York courts apply the three-step test established in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972).  *Id.*  "First, the court must determine if the parties are domiciliaries of the same state and apply the law of that state if they are." *Id.* "If, as here, they are not, the court must next determine whether the alleged tort occurred in the domicile of one of the parties, in which case the law of that state would apply." *Id.*  The first *Neumeier* rule is inapplicable here because the parties are domiciliaries of New York, Russia, Belize and Switzerland.  *See* ECF No. 167 ¶¶ 1-5, 7.  The Court's analysis would, therefore, begin with the second prong of the *Neumeier* test.

With respect to the applicability of the rule to this case, the Frank Parties argue that "any violation of the rule . . . *itself* does not give rise to a [malpractice] cause of action." However, the Frank Parties acknowledge that "a violation of the Rule . . . may be used as some evidence of negligence." It appears that this is precisely how the Settling Parties intend to apply the rule to the facts of this case. Indeed, they argue that in order for the Frank Parties to have satisfied the disclosure requirement under the rule they would have had to first determine the respective rights of their clients to a portion of the settlement. Although they admit that the Frank Parties' have not yet apportioned the funds, they, nonetheless, claim that their consent was not obtained. In any case, this is a factual issue, and thus, the Frank Parties' interpretation of the rule does not support dismissal of the malpractice claim under Rule 12(b)(6).

The Court does, however, find merit, in the Frank Parties' assertion that to the extent the malpractice claim is based on their commencement of this interpleader action, the malpractice cause of action should be dismissed. Notably, neither of the parties have suggested that this argument requires a conflict of law analysis. *See Licci ex rel. Licci*, 672 F.3d at 157 (2d Cir. 2012)(where, as here, "no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law."). Rather, they debate whether the act of filing the interpleader itself is actionable and can form a basis of the malpractice claim. To this end, the Court agrees that the filing of the interpleader was entirely appropriate in this case. "Under Rule 22 of the Federal Rules of Civil Procedure, an interpleader is available when a stakeholder 'is or may be exposed to double or multiple liability.'" *U.S. Tr. Co. of New York v. Alpert*, 10 F. Supp. 2d 290, 294 (S.D.N.Y. 1998), aff'd sub nom. *U.S. Tr. Co. of New York v. Jenner*, 168 F.3d 630 (2d Cir. 1999). Indeed, a stakeholder who "legitimately fears multiple [liability] directed against a single fund" may properly bring an interpleader action 'regardless of

the merits of the competing claims.'" *Id.* (citing *6247 Atlas Corp. v. Marine Ins. Co., Ltd.,* 155 F.R.D. 454, 461 (S.D.N.Y.1994). Given the facts in this case, the Frank Firm was well within its rights in bringing this interpleader action. In sum, the Court respectfully recommends that the Frank Parties' motion to dismiss the malpractice claim be denied except to the extent the Settling Parties are basing their claim on the filing of the interpleader action.

Turning to Khavinson's motion, "to establish a claim of legal malpractice under New York law, a plaintiff must establish: '(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." *Joseph DelGreco & Co. v. DLA Piper L.L.P.* (U.S.), 899 F. Supp. 2d 268, 276 (S.D.N.Y. 2012), aff'd sub nom. *In re Joseph DelGreco & Co., Inc.*, 535 F. App'x 31 (2d Cir. 2013)). In addition, the cases relied upon by Khavinson acknowledge that claims for legal malpractice are viable, "despite settlement of the underlying action, if it is alleged that settlement of the action was effectively compelled by the mistakes of counsel." *Bernstein v. Oppenheim & Co., P.C.*, 160 A.D.2d 428, 430, 554 N.Y.S.2d 487, 489 (1990). As such, because there is also no conflict between Florida and New York law, no choice of law analysis is required

For this reason, Khavinson's arguments primarily address the merits of the malpractice claim. To this end, he argues that the Settling Parties' claim for malpractice is substantively deficient because they failed to plead any damages proximately caused by his acts or omissions. Moreover, he characterizes their factual contentions as a "conclusory laundry list of actions or inactions purportedly giving rise to [a] claim for malpractice – most of which occurred after the underlying case settled." The Court disagrees with this characterization. The Settling Parties allege, among other things, that the Frank Parties (1) failed to identify RM's duly authorized constituents at the outset of their representation; (2) counseled the Settling Parties to enter into

12

the settlement agreement without first obtaining an agreement among them regarding the division of the funds; and (3) counseled the Settling Parties to transfer of 800,000 shares of Net Settlement stock to Schmdt based on what they now believe to be a mistake. ECF No. 169. They further assert that "Khavinson – who was the attorney that directly counseled and communicated with them, and [who] shared in the fees paid by and for the benefit of the Settling Parties . . . participated and/or acquiesced in the conduct by the [Frank Parties] . . .. *Id.* While Khavinson is correct that a claim that only alleges "either 'an error in judgment' or a 'selection of one among several reasonable courses of action' fails to state a claim for malpractice," *see Kirk v. Heppt,* 532 F. Supp. 2d 586, 592 (S.D.N.Y. 2008), in this case, the Settling Parties have alleged that their attorneys' failure to thoroughly investigate the rights and obligations of the parties under the terms of the settlement agreement amounted to negligence. Moreover, the Settling Parties have raised a separate issue concerning the advice they were given with respect to the transfer of the Net Element stock. This issue is further complicated by the fact that Frank and Khavinson each took a share of the stock for themselves. Accordingly, the Court also respectfully recommends that Khavinson's motion to dismiss the malpractice claim be denied except to the extent that the Settling Parties are basing their claim on the filing of the interpleader action.[6]

### C.    Declaratory Judgment Regarding the Fee Agreement

The Frank Parties and Khavinson also seek to dismiss Counts III and VI of the counterclaims, which address the validity of their retainer agreement and seek a declaration that neither Frank nor Khavinson are entitled to retain the 200,000 shares of Net Element stock they

---

[6] The Court's discussion regarding the filing of the interpleader action applies in equal force to the claims asserted against Khavinson.

received after the Underlying Action was settled.[7]  Frank Parties' Mem. at 11-12.  "[U]nder New York law, the choice of law analysis is generally done separately for each claim and defense, under a doctrine called dépeçage." *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015).  Accordingly, the Court, once again, begins its analysis by determining if a conflict of law exists.

With respect to Counts III and VI, the Settling Parties contend that Florida law governs their claims concerning the enforceability of the retainer agreement.  The Frank Parties argue that Pennsylvania has the greatest "interest" in any claim that concerns their fee agreement.  Khavinson has not specifically addressed these declaratory judgment actions.  Although the Court agrees that Pennsylvania law governs the contract claims challenging the validity and enforceability of the retainer agreement, the Frank Parties' "interest" analysis is misplaced.  In New York, separate choice-of-law rules apply to contract and tort claims.  *Fin. One Pub. Co.,* 414 F.3d at 336.  In a tort case, courts apply an "interest analysis" to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation.  *Id.*  In contrast, "[i]n contract cases, New York courts apply '[t]he 'center of gravity' . . . choice of law theory . . .." *Id.* (citing *Allstate Ins. Co.*, 597 N.Y.S.2d at 907)).  The purpose of the "center of gravity" test is to determine which state has "the most significant relationship to the transaction and the parties." *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 394 (2d Cir. 2001) (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 84 N.Y.2d 309, 618 N.Y.S.2d 609, 612, 642 N.E.2d 1065 (1994) (quoting Restatement (Second) of Conflict of Laws § 188[1] )).

The New York Court of Appeals has suggested that in addition to the place of contracting, which has traditionally been the determinative choice of law factor, courts may

---

[7] In his memorandum, Khavinson has joined I the arguments raised by the Frank Parties. Khavinson Mem. at 4.

consider four other factors in order to establish who has the "most significant relationship:" the place of negotiation, the place of performance, the location of the subject matter and the domicile or place of business of the contracting parties. *Id.* According to the Frank Parties, the retainer agreement was drafted in Pennsylvania. While there is no indication as to where it was signed, the Frank Parties argue that Sasha Schmdt, who was the largest stakeholder at the time, signed the agreement and is domiciled in New York. The contracting parties place of business was Russia. Although the litigation occurred in Florida, and Khavinson was working in New York, the center of gravity factors favor Pennsylvania with respect to the retainer agreement.

Nonetheless, resolving the conflict of law issue in favor of the Frank Parties does little toward determining the motions to dismiss Counts III and VI. Indeed, the Frank Parties were so focused on the choice of law dispute, they barely address the merits of the declaratory judgment claims. They simply assert that (1) the fee agreement was signed by Sasha Schmdt, (2) Katcaev assented to the fee agreement and (3) Katcaev twice authorized the Frank Firm to distribute their fee according to the retainer agreement. Frank Parties' Mem. at 11. The Settling Parties dispute these facts. They claim that Katcaev never signed or assented to the retainer agreement before the Frank Firm commenced the arbitration on his and Varwood's behalf or the lawsuit on behalf of the Settling Parties. Indeed, they allege in Count VI that:

> 1.    Schmdt had neither actual nor apparent authority to enter into the Retention Agreement on RM's behalf, . . .;
>
> 2.    Neither Katcaev nor Varwood ever entered into a contingency fee agreement with the Frank Firm, Frank, or Khavinson; and
>
> 3. Despite having never entered into a valid contingency fee agreement with any of the Settling Parties, the Frank Firm, acting through Frank and Khavinson, counseled the Settling Parties to enter into the Settlement Agreement, which provides in relevant part for the transfer of 100,000

shares each to Frank and Khavinson, representing a contingency fee of 20% of the 1,000,000 shares of Net Element stock that were transferred in consideration for the settlement.

ECF 167. Accordingly, neither the Frank Parties nor Khavinson have set forth any arguments that support the dismissal of Counts III and VI as a matter of law, and thus, the Court respectively recommends that their motions to dismiss these counts be dismissed.

### D.    Declaratory Judgment Regarding the Interpleaded Funds

The Frank Firms also seeks to dismiss Counts II of the amended counterclaim, which asserts the Settling Parties' claim to the interpleaded funds. Neither party suggests that there is a conflict of law between the jurisdictions with respect to whether Count II is procedurally correct. Accordingly, for the purpose of this discussion, the Court applies New York law.

With respect to Count II, the Frank Parties argue that the question of who is entitled to the settlement proceeds is at the heart of the interpleader action, and thus, the counterclaim should be stricken as it is duplicative of the underlying issue that will be resolved in this action. In opposition, the Settling Parties argue that "there is no single procedurally-correct way to assert a claim to interpleaded funds." Settling Parties' Mem. at 18 (citing *Ohio National Life Assurance Corp. v. Jones*, No. 11-23786-CIV, 2013 WL 1900446 (S.D. Fla. May 7, 2013) (considering the parties' answers and affirmative defenses to be their statements of claim to interpleaded funds); *Central Bank of Tampa v. United States*, 838 F. Supp. 564, 566 (M.D. Fla. 1993) ("In an action for interpleader, an answer filed by a defendant may be considered that defendant's statement of claim to the interpleaded funds."). As a general rule, the Settling Parties are correct. For example, in *Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10 CIV. 6322 RJH, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011), the Southern District of New York noted "[t]he failure of a named interpleader defendant to . . . assert a claim to the res

16

can be viewed as forfeiting any claim of entitlement that might have been asserted." 2011 WL 2581765, at *4.  In contrast, in *Bell v. Nutmeg Airways Corp.*, 66 F.R.D. 1, 5 (D. Conn. 1975), the District Court of Connecticut held that a counterclaim asserting a right to the fund had been improperly denominated as it was essentially a statement of the defendants' claim to the fund and a denial of the rights of the other named defendants.  The *Bell* Court felt that the claim of entitlement was more properly set forth in an answer.  Given the breadth of issues in this case and the fact that the Settling Parties have clearly asserted a claim of entitlement to the fund, the Court does agree that striking Count II would simplify the pleadings without depriving the Settling Parties of any of their rights.  Accordingly, the undersigned respectfully recommends that Count II be dismissed.

### E.    Breach of Fiduciary Duty Claims

The Frank Parties and Khavinson next seek to dismiss the breach of fiduciary duty claims.  The first breach of fiduciary duty claim, Count I, is only alleged as to the Frank Firm.  Specifically, the Settling Parties assert that the Frank Firm breached its fiduciary duty to them by initiating the interpleader action rather than immediately disbursing the settlement funds.  As previously stated, the Frank Firm was well within its rights to commence an interpleader action given the parties' disputes in this case.  Moreover, the Settling Parties' reliance on the Florida Court's denial of the Frank Firm's motion to discharge is completely misplaced.  Although the Florida Court determined that discharge was improper because the Frank Firm was alleged to be independently liable to the defendants, the Court did not rule that the act of filing the interpleader complaint was actionable.  Accordingly, the Court respectfully recommends that Count I be dismissed.

A different result is warranted with respect to Count V.  This Count alleges that both the
Frank Parties and Khavinson breached their fiduciary duties by, among other things, failing to
identify RM's duly authorized constituents at the outset of the representation.  It also asserts that
they improperly counseled the Settling Parties to enter into the Settlement Agreement, which
provided for the transfer of 800,000 shares of Net Settlement stock to Sasha Schmdt, who they
now claim was not a party to the Underlying Lawsuit.  To this end, there is no substantive
difference in Florida and Pennsylvania law concerning claims for breach of fiduciary duty.
Indeed, both Pennsylvania and Florida law permit simultaneous claims for breach of fiduciary
duty and legal malpractice.  *See Brenner v. Miller*, No. 09-60235-CIV, 2009 WL 1393420 (S.D.
Fla. May 18, 2009); *ASTech Int'l, LLC*, 676 F. Supp. 2d at 400 (applying Pennsylvania law).
However, "[u]nder New York law, where a claim for breach of fiduciary duty is 'premised on the
same facts and seeking the identical relief' as a claim for legal malpractice, the claim for
fiduciary duty 'is redundant and should be dismissed.'" *Nordwind v. Rowland*, 584 F.3d 420,
432–33 (2d Cir. 2009) (citing *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills,
Inc.,* 10 A.D.3d 267, 780 N.Y.S.2d 593, 596 (App. Div.2004)).  Accordingly, the Court
addresses first the breach of fiduciary duty claim asserted against the Frank Parties and then
engages in a conflict of law analysis with respect to the breach of fiduciary duty claim asserted
against Khavinson.

With respect to the merits of the claim asserted against the Frank Parties, the Frank
Parties have parroted the same arguments that they raised in support of dismissal of the
malpractice claim.  They also contend that failing to identify RM's authorized constituents can
not give rise to a breach of fiduciary duty claim because the person alleged to be the authorized
constituent, that is Katcaev, agreed to the settlement.  This argument misses the mark.  The

Settling Parties are not disputing the terms of the settlement to which they acknowledge Katcaev agreed.  They take issue with the failure of the Frank Parties to identify RM's authorized constituents, arguing that once the settlement was entered, the Frank Parties were unable to determine how to divide the proceeds.  Similarly, the Frank Parties' argument concerning the payment of stock to Schmdt ignores the thrust of the Settling Parties' argument.  With respect to the transfer of stock, the Settling Parties contend that they relied on the Frank Parties advice that the stock could not be transferred to a non-U.S. person or company, which they now claim was a mistake.  Accordingly, the allegations asserted against the Frank Parties are sufficient to state a claim for breach of fiduciary duty and the Court respectfully recommends that their motion to dismiss Count V be denied.

As stated above, a conflict of law does exist between Florida and New York.  Where "conflict exists in a tort case, the court must . . . apply an 'interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation.'"  Youngman , 923 F. Supp. 2d at 416 (citing *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994)).  "Performing that interest analysis requires the court to identify the type of rules that are in conflict."  *Id. "* If the conflict involves rules that regulate conduct, New York law usually applies the law of the place of the tort ("*lex loci delicti*")."  In this case, the Court finds that the conduct allegedly causing the injury occurred principally or entirely in New York.  Khavinson is a resident of New York and is licensed to practice in the State of New York.  Counterclaim ¶14.  He was hired by Sasha Schmdt, who is also a New York resident, and most of the work he performed was done in New York.  Khavinson's Mem. at 7.  As previously noted, the domiciles and places of business of the other parties are Russia and Belize.  Thus, the factors point to the choice of New York law with respect

to the claim against Khavinson.  Since the claim, here, for breach of fiduciary duty is premised on the same facts as a claim for legal malpractice, the Court respectfully recommends that the claim for fiduciary duty against Khavinson be dismissed as duplicative.

### F.    The Remaining Contentions Offered in Support of Dismissal

Frank contends that none of the claims can be asserted against him individually because he did not conduct any activities outside of his professional corporation.  However, he has offered no legal support for this position.  Accordingly, the Court respectfully recommends that Frank's motion to dismiss the claims asserted against him individually be dismissed.

The Court also respectfully recommends that the Frank Parties' request to strike paragraphs 64 and 65, which seek consequential damages amounting to $9.6 million be denied as premature.  The Frank Parties may be correct that the amount of alleged damages is completely speculative, but the Settling Parties are not required to prove their damages at this stage in the litigation.

Moreover, the Court respectfully recommends that the Frank Parties' request to strike the request for attorneys' fees be denied at this time.  The Frank Parties correctly note that, as a general rule, both Florida and Pennsylvania courts refuse to award attorney's fees except where provided by statute or agreement of the parties.  *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1148 (Fla. 1985); *Merlino v. Del. Cty.*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). However, "'[w]here the wrongful act of defendant has involved [the] plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expenses to protect his interests, such costs and expenses, including attorney's fees, should be treated as legal consequences of the original wrongful act, and may be recovered as damages.'" *In re Pennsylvania Footwear Corp.*, 204 B.R. 165, 180–81 (Bankr. E.D. Pa. 1997) (citing *Blum v.*

*William Goldman Theatres, Inc.*, 69 F. Supp. 468, 470 (E.D. Pa.1946), modified, 164 F.2d 192

(3d Cir. 1947)); *Reiter v. Monteil,* 98 So. 3d 586, 588 (Fla. 2d DCA 2012).

Finally, the Court respectfully recommends that Frank Parties' unsupported contentions

regarding Katcaev's standing and the alleged bar to recovery due to the disputed Division

Agreement be disregarded.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  Any

requests for an extension of time for filing objections must be directed to Judge Garaufis prior to

the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within

this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed

R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018

WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's

finding" by failing to timely object); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*,

118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
       March 2, 2020

                              _____/s_____
                              ARLENE R. LINDSAY
                              United States Magistrate Judge