UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
ALAN L. FRANK LAW ASSOCIATES, P.C.,

                          Plaintiff,

            -against-

OOO RM INVEST, VARWOOD HOLDINGS,
LTD., TCAHAI HAIRULLAEVICH KATCAEV,
SASHA SCHMDT and SERGEY PIROZHNIKOV,

                          Defendants.

_____

OOO RM INVEST, VARWOOD HOLDINGS,
LTD. and TCAHAI HAIRULLAEVICH KATCAEV,

                          Counter-Plaintiffs,

            -against-

ALAN L. FRANK LAW ASSOCIATES, P.C.,
ALAN L. FRANK and EUGENE A. KHAVINSON,

                          Counter-Defendants.

_____

**MEMORANDUM & ORDER**
**17-CV-1338 (NGG) (ARL)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff and Counter-Defendant Alan L. Frank Law Associates, P.C. ("Frank Firm") commenced this interpleader action on February 22, 2016 against Defendants and Counter-Plaintiffs OOO RM Invest, Varwood Holdings, Ltd., and Tcahai Hairullaevich Katcaev (collectively, the "Settling Parties") and Defendants Sasha Schmdt and Sergey Pirozhnikov (collectively, the "Majority Owners"). (Compl. (Dkt. 1) at 2-4.) The action arises from a $2.9 million settlement agreement between the Settling Parties and several nonparties. (Settling Parties' Rule 56.1 Stmt. ("Settling Parties' 56.1") (Dkt. 277-1) ¶ 15.) The Settling Parties subsequently asserted counterclaims against Frank Firm and its principal, Alan L. Frank (collectively, the "Frank Parties"), and Eugene A. Khavinson, alleging, *inter alia*, legal malpractice and

1

breach of fiduciary duty. (Settling Parties' Answer, Crossclaim, and Counterclaim ("Counterclaim") (Dkt. 169) at 9-19.)

The Settling Parties moved for partial summary judgment, seeking the distribution of the interpleader fund pursuant to terms set forth in the Division Agreement, a document described below. (Settling Parties' Mot. for Partial Summ. J. (Mot. for Summ J.) (Dkt. 277) at 6.) The Frank Parties filed a motion to dismiss the Settling Parties' counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Frank Parties' Mot. to Dismiss and Mot. to Strike Am. Counterclaim ("Frank Mot.") (Dkt. 173).) Khavinson also moved to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Khavinson Mot. to Dismiss ("Khavinson Mot.") (Dkt. 274).) The court referred the Settling Parties' motion for partial summary judgment, the Frank Parties' motion to dismiss, and Khavinson's motion to dismiss to Magistrate Judge Arlene R. Lindsay for Reports and Recommendations ("R&Rs"), pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). (*See* May 17, 2019 Order Referring Mots.; June 5, 2019 Order Referring Mot.)

On February 24, 2020, Judge Lindsay issued an R&R recommending that the Settling Parties' partial summary judgment motion be denied. (Report and Recommendation ("February 24 R&R") (Dkt. 302) at 2.) The Settling Parties filed timely objections to the February 24 R&R. (*See* Obj. to R&R ("Settling Parties' Obj. to Feb. 24 R&R") (Dkt. 306).) On March 2, 2020, Judge Lindsay issued an R&R recommending that the Frank Parties' and Khavinson's motions to dismiss the Settling Parties' counterclaims be denied in part and granted in part. (Report and Recommendation ("March 2 R&R") (Dkt. 303) at 1-2.) The Settling Parties, the Frank Parties, and Khavinson all filed timely objections to the March 2 R&R. (*See* Obj. to R&R ("Frank Obj.") (Dkt. 311); Obj. to R&R ("Settling Parties' Obj. to March 2 R&R") (Dkt. 315); Obj. to R&R ("Khavinson Obj.") (Dkt. 316).)

For the reasons explained below, the Settling Parties' objections to the February 24 R&R are OVERRULED, the February 24 R&R (Dkt. 302) is ADOPTED IN FULL, and the Settling Parties' (Dkt. 277) Motion for Partial Summary Judgment is DENIED. Additionally, for the reasons explained below, the Settling Parties', the Frank Parties', and Khavinson's objections to the March 2 R&R are OVERRULED, the March 2 R&R is ADOPTED IN FULL, the Frank Parties' (Dkt. 173) Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Khavinson's (Dkt. 274) Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The court provides a summary of the facts and procedural history pertinent to the motions that are presently at issue.[1] Except as otherwise indicated, the facts in this section are not in dispute.

### A.  Factual Background

RM is a Russian limited liability company with its principal place of business in Russia. (Settling Parties' 56.1 ¶ 1.) At the time this lawsuit was filed, Defendants Katcaev, Schmdt, and Pirozhnikov were the three "participants" who held equity in RM. (*Id.* ¶¶ 2-5.) Katcaev and Pirozhnikov each hold, and have held throughout the period relevant to this case, a 25% stake in RM. (*Id.* ¶¶ 2-3.) The parties agree that Schmdt held a 50% stake in RM prior to April 23, 2018, but they dispute the current status of his ownership interest.[2] (*Id.* ¶ 4; Majority Owners' Rule 56.1 Counter-Stmt. ("Majority Owners' 56.1") (Dkt. 280) at ECF pp. 13-19) ¶

---

[1] The facts are set forth in greater detail in Judge Lindsay's R&Rs.

[2] According to the Settling Parties, on April 23, 2018, Schmdt was divested of his 50% interest in RM, which was transferred to BBR Bank. (Settling Parties' 56.1 ¶ 5.) Schmdt disputes that he no longer has a 50% equity stake in RM and contends that Katcaev procured the divestment of Schmdt's stake fraudulently. (Majority Owners' 56.1 ¶¶ 5, 57-58.)

4.) From September 2012 to January 2019, Dmitri Grudtsin was RM's Director General. (Settling Parties' 56.1 ¶ 6.) Since early 2019, Katcaev has served as RM's Director General. (*Id.* ¶ 2.) Katcaev is also the sole owner of defendant corporation Varwood, which the Majority Owners contend—and Katcaev does not dispute—is a shell corporation that conducts no business. (Settling Parties' 56.1 ¶¶ 8-9; Majority Owners' 56.1 ¶ 29.) RM has effectively ceased operations, and its only material assets are its share of the settlement proceeds discussed below. (Majority Owners' 56.1 ¶ 34.)

In or around 2013, Katcaev negotiated a deal with Net Element, Inc. ("Net Element"), subject to which RM would transfer its principal assets to Net Element in exchange for 30% of Net Element's stock. (Decl. of Sasha Schmdt ("Schmdt Decl.") (Dkt. 280 at ECF pp. 2-6) ¶ 7.) Katcaev proposed that Net Element transfer the stock to Varwood instead of directly to RM. (*Id.* ¶ 8.) The deal fell apart, and the Defendants retained Frank Firm to represent them in actions against Net Element, with Khavinson as co-counsel. (*Id.* ¶ 9; Settling Parties' 56.1 ¶ 17; Counterclaim ¶ 13.) Frank Firm filed a lawsuit against Net Element and other defendants in the Southern District of Florida, on behalf of RM, Varwood, and Katcaev, as well as an arbitration claim—later consolidated with the lawsuit—on behalf of Varwood and Katcaev. (Settling Parties' 56.1 ¶¶ 10-12.) The parties to this underlying lawsuit eventually reached a settlement agreement, subject to which the Settling Parties would receive $2.9 million and 1,000,000 shares of Net Element stock. (*Id.* ¶¶ 14-16.) Schmdt and Pirozhnikov signed the Stipulation of Mediation Settlement (the "Settlement Agreement") as shareholders of RM, and Katcaev signed it individually. (Stipulation of Mediation Settlement (Dkt. 277-1) at ECF pp. 18-19.) After the deduction of attorney's fees and costs, the remaining value of the settlement fund was just over $2.3 million. (Settling Parties' 56.1 ¶ 24.)

The Settlement Agreement provided for the settlement funds to be released to Frank Firm and did not specify how those funds would be apportioned. (*Id.* ¶¶ 15, 20.) Frank and the Majority Owners suggest that Schmdt, Katcaev, and Pirozhnikov had agreed to split the proceeds from the settlement equally between the three of them, and the Majority Owners asked Frank to distribute the funds accordingly. (Majority Owners' 56.1 ¶¶ 36-37.) Katcaev opposed that plan and asked that Frank transfer the overwhelming majority of the proceeds to him. (Majority Owners' 56.1 ¶ 37.) Meanwhile, because none of the Settling Parties were U.S. persons or companies, the Settling Parties, acting on Frank Firm's advice, directed Net Element to transfer 800,000 shares of its stock to Schmdt, who was a U.S. citizen, and 100,000 shares each to Frank Firm attorneys Frank and Khavinson. (Settling Parties' 56.1 ¶¶ 17-18.)

Frank suggested that Khavinson mediate the Majority Owners' and Katcaev's dispute regarding distribution of the funds. (Report & Recommendation (Dkt. 249) at 8.) Khavinson drafted a mediation agreement, which was never signed, and claims that he conducted a mediation session at which Katcaev did not attend. (*Id.*) The Settling Parties terminated Frank Firm and retained new counsel, which instructed Frank to distribute the funds without regard to Schmdt or Pirozhnikov's wishes, because neither of them had been individual parties to the underlying lawsuit nor (according to the Settling Parties) had authority to act as RM's agent, and because Katcaev purportedly had legal authority to act on behalf of both RM and Varwood. (*Id.*) Frank subsequently brought this interpleader action to resolve the parties' dispute over the distribution of the settlement proceeds.

In January 2016, Grudtsin, purporting to act on behalf of RM, and Katcaev, purporting to act on behalf of himself and Varwood, executed the Settlement Proceeds Division Agreement ("Division Agreement"), which provided that $212,000 of the settlement

funds would be paid to Varwood as reimbursement for costs, with the remaining funds split evenly between Varwood and RM. (Settling Parties' 56.1 ¶ 21; Katcaev Decl. Ex. 2.) In effect, this meant that RM would receive approximately 46% of the settlement proceeds.[3] The Majority Owners, who did not approve the Division Agreement, dispute its validity on that basis and argue that Varwood is not entitled to a portion of the settlement funds because its claims in the underlying litigation were deemed worthless. (Majority Owners' 56.1 ¶ 21.)

Minutes from an April 8, 2016 RM board meeting, with all three of RM's participants allegedly in attendance, reflect that RM's Board voted to keep Grudtsin in the position of Director General. (*Id.* ¶ 43.) The Majority Owners allege that the board meeting never took place, that they were not even in Russia at the time, and that Katcaev fabricated the minutes and forged their signatures. (*Id.* ¶¶ 43, 45; Schmdt Decl. ¶ 14; Pirozhnikov Decl. ¶ 3.) On April 28, 2016, the Majority Owners convened a meeting at which the sole attendee was Valeriy Leonidovich Matveev, who was allegedly authorized to vote on behalf of both Schmdt and Pirozhnikov, and who allegedly voted to remove Grudtsin as Director General. (Majority Owners' 56.1 ¶¶ 40-42.) A Russian court subsequently concluded that Grudtsin would remain RM's Director General, notwithstanding its finding that Schmdt and Pirozhnikov's signatures from the April 8, 2016 Board Meeting minutes were indeed forgeries, because the April 28, 2016 meeting was not conducted in the correct location. (*Id.* ¶¶ 47, 50.) On appeal, the decision was affirmed. (*Id.* ¶ 51.)

---

[3] Under the terms of the Division Agreement, Katcaev, as the sole owner of Varwood and a 25% equity-holder in RM, would receive approximately 65% of the distributed funds, as opposed to the 25% he would receive if all funds were directed to RM and apportioned by equity stake, or the 33% he would receive if all funds were directed to RM and apportioned equally among its three participants. (*See* February 24 R&R at 11.)

## B.  Procedural Background

Frank Firm commenced this interpleader action in this court on February 22, 2016. (Compl. at 1.) The Majority Owners filed their Answer and Crossclaim on May 9, 2016, in which they asserted that RM was entitled to the entirety of the settlement fund. (Answer to Compl. and Crossclaim (Dkt. 24) at 2.) On June 24, 2016, the action was transferred to the U.S. District Court for the Southern District of Florida, pursuant to a motion by the Settling Parties to which all parties consented. (*See* Minute Order (Dkt. 41); Notice of Case Transfer (Dkt. 42).) On July 1, 2016, the Frank Firm deposited approximately $2.31 million into the Registry of the Florida Court, and retained the balance of the $2.9 million in settlement proceeds as payment for its attorney's fees and costs. (Settling Parties' 56.1 ¶ 24.)

On July 8, 2016 the Settling Parties moved to dismiss the interpleader complaint, and on September 2, 2016 they moved to dismiss the Majority Owners' crossclaims. (Mot. to Dismiss Compl. (Dkt. 72); Renewed Mot. to Dismiss Answer to Compl. and Crossclaim (Dkt. 106).) On December 1, 2016, Magistrate Judge John J. O'Sullivan issued two R&Rs in which he recommended that the district court: (1) deny the Settling Parties' motion to dismiss the complaint; (2) grant the Settling Parties' motion to dismiss the Majority Owners' crossclaim; and (3) deny the Frank Firm's motion for discharge and award of attorney's fees and costs. (Report & Recommendation re Mot. to Dismiss (Dkt. 147) at 1; Report & Recommendation re Mot. for Attorney Fees and Discharge (Dkt. 148) at 1.)

The district court adopted the R&Rs. (*See* Order Adopting Report and Recommendation (Dkt. 154); Order Adopting Report & Recommendation (Dkt. 155).) The Settling Parties filed crossclaims in which they asserted their right to the settlement funds and brought claims for legal malpractice, breach of fiduciary duty,

and a declaratory judgment against the Frank Parties and Khavinson. (Answer, Crossclaim and Counterclaim at 9-25.)

On February 28, 2017, the District Court for the Southern District of Florida transferred this case back to the Eastern District of New York. (Notice of Case Transfer (Dkt. 193).) The court stayed all discovery and motions pending the resolution of the Frank Firm's renewed motion for discharge, which the court referred to Magistrate Judge Lindsay. (*See* Renewed Mot. for Discharge (Dkt. 214); May 24, 2017 Order Referring Renewed Mot. for Discharge.)

 On December 18, 2018, the court adopted Judge Lindsay's R&R recommending the denial of Plaintiff's renewed motion. (Order Adopting Report and Recommendation (Dkt. 253) at 3.) Shortly thereafter, the court lifted the stay on discovery and granted the parties leave to file motions. (*See* Jan. 29, 2019 Minute Entry.)

On May 10, 2019, the Settling Parties filed the pending Motion for Partial Summary Judgment, arguing that the entire settlement fund should be distributed to them pursuant to the terms of the Division Agreement. (Mot. for Summ. J. at 6-8.) The same day, Khavinson filed a motion to dismiss the Settling Parties' counterclaims.[4] (Khavinson Mot. to Dismiss at 1-2.) The Frank Parties' motion to dismiss, which had been filed while the case was pending in the Southern District of Florida, was reinstated as of June 5, 2019. (*See* June 5, 2019 Order Reinstating Mot.) All three motions were referred to Judge Lindsay. (*See* May 17, 2019 Order Referring Mots.; June 5, 2019 Order Referring Mot.)

---

[4] Khavinson styled his motion as a motion to dismiss the Settling Parties' third-party complaint against him, which the court in the Southern District of Florida had previously dismissed. Magistrate Judge Lindsay construed his motion as a motion to dismiss the Settling Parties' counterclaims. (March 2 R&R at 1 n.1.)

On February 24, 2020, Judge Lindsay issued an R&R recommending that the court deny the Settling Parties' motion for partial summary judgment. (Feb. 24 R&R at 2.) The Settling Parties filed a timely objection on March 9, 2020. (*See* Settling Parties' Obj. to Feb. 24 R&R.) The Majority Owners filed a memorandum in opposition to the Settling Parties' objection on March 23, 2020. (Reply in Opp. to Obj. to Report & Recommendation ("Majority Owners' Opp.") (Dkt. 313).)

On March 2, 2020, Judge Lindsay issued an R&R recommending that the court partially grant and partially deny the Frank Parties' and Khavinson's motions to dismiss the Settling Parties' counterclaims. (March 2 R&R at 1-2.) The Frank Parties filed a timely objection on March 16, 2020. (Frank Obj.) The Settling Parties and Khavinson both filed timely objections on March 26, 2020. (Settling Parties' Obj. to March 2 R&R; Khavinson Obj.) The Settling Parties thereafter filed memoranda in opposition to the Frank Parties' and Khavinson's objections, and Khavinson filed a memorandum in opposition to the Settling Parties' objections. (Settling Parties' Mem. in Opp. re Frank Obj. ("Settling Parties' Opp. to Frank Obj.") (Dkt. 317); Settling Parties' in Mem. in Opp. re Khavinson Obj. ("Opp. to Khavinson Obj.") (Dkt. 328); Khavinson Mem. in Opp. re Settling Parties' Obj. (Dkt. 331).)

## II.    LEGAL STANDARD

### A.  Review of R&R

In reviewing a magistrate judge's R&R regarding a dispositive matter, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." *Romero v. Bestcare Inc.*, No. 15-cv-7397 (JS)

(GRB), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017).[5] The district court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). If, however, an objecting party "makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the R&R only for clear error. *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008); *see also Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to R&R was "not specific enough" to "constitute an adequate objection" under Fed. R. Civ. P. 72(b)).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this [c]ourt will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot

---

[5] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

by themselves create a genuine issue of material fact where non would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### C. Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To decide a defendant's motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

11

III.   DISCUSSION

A. The Settling Parties' Motion for Partial Summary Judgment

The Settling Parties moved for partial summary judgment, arguing that the remaining settlement proceeds should be distributed to them in accordance with the Division Agreement. In her February 24 R&R, Judge Lindsay recommended denying the motion. She concluded that the Majority Owners are not barred from asserting a claim to the settlement funds in their capacity as participants of RM and defendants in the interpleader action, notwithstanding that their crossclaim was previously dismissed for lack of standing. (February 24 R&R at 18-20.) She also concluded that while the divestiture of Schmdt's stake in RM meant that "Schmdt can no longer claim entitlement to the interpleaded [funds] in this action," it did not require the distribution of the funds according to the Settling Parties' preferred terms. (*Id.* at 20-21.) Finally, Judge Lindsay concluded that a genuine issue of material fact existed with respect to the enforceability of the Division Agreement, specifically regarding whether the execution of the Division Agreement constituted a "major transaction" under Russian law, and she declined to credit the Settling Parties' allegation the Majority Owners' opportunity to contest enforceability under Russian law has expired. (*Id.* at 21-24.) The Settling Parties object to each of these conclusions, as discussed below.

1.   The Majority Owners' Right to Assert a Claim to the Interpleaded Funds

The Settling Parties object to Judge Lindsay's conclusion that the Majority Owners may assert a claim to the settlement funds pursuant to their roles as RM's participants (or, arguably, in the case of Schmdt, former participant) and their status as defendants in the interpleader action initiated by Frank Firm. (Settling Parties'

Obj. to February 24 R&R at 7-12.) They emphasize that the District Court for the Southern District of Florida previously dismissed the Majority Owners' crossclaim for lack of standing and argue that the Majority Owners cannot properly assert the rights of RM when RM is itself a party to this action. (*Id.*)

The Settling Parties' arguments miss the mark. The Southern District of Florida's dismissal of the Majority Owners' crossclaim for lack of standing pertained merely to their ability to initiate a claim for relief subject to the requirements of Article III of the U.S. Constitution; it had no bearing on whether they could take a position with respect to the proper disposition of the settlement proceeds in the interpleader action initiated by the Frank Firm, in which they were named as defendants. The Majority Owners' opposition to the Settling Parties' partial motion for summary judgment is consistent with their role as the Settling Parties' co-defendants in this interpleader action, and the court is not obligated to disregard their arguments, properly raised in this context, simply because they lacked standing to raise similar arguments through the vehicle of a crossclaim.

Nor is the court obligated to disregard the Majority Owners' arguments simply because they, as individuals, were not parties to the underlying action. The Settling Parties' argument to the contrary relies on the assumption that resolution of this interpleader action merely requires that the court determine how much of the settlement fund is owed to Varwood and how much is owed to RM, without regard for how the funds owed to RM should be apportioned.

The history and facts of this litigation counsel against such a conclusion. Frank Firm presumably named Schmdt and Pirozhnikov as defendants in this action because it understood them to be at least arguably entitled to a share of the settlement proceeds, by virtue of their combined 75% stake in RM. At present, RM has effectively ceased operations; given that it transacts no business,

13

funds procured by RM through this action would seemingly serve no purpose other than to line its participants' pockets. (*See* Majority Owners' 56.1 ¶ 34.) Moreover, the Majority Owners argue that Katcaev has effectively usurped control of RM through a series of manipulative and fraudulent acts, such that directing funds to RM at this juncture would not guarantee their fair distribution among the company's rightful participants. The Majority Owners claim that at the time of settlement it was clear to all three of RM's participants that the settlement funds were owed entirely to RM, and yet RM takes a position in this litigation that it is owed merely 46% of those funds—a position contrary to both the view of its Majority Owners and, seemingly, its own self-interest.

Construing these facts in the light most favorable to the non-movant Majority Owners, there is a genuine dispute of material fact as to whether RM, in its present form, legitimately represents the interests of its participants. The court therefore concludes that the allocation of RM's share of the settlement proceeds among Schmdt, Pirozhnikov, and Katcaev is an issue within the scope of this interpleader action. To confine this court's inquiry to the distribution of funds between Varwood and RM, both of which are allegedly controlled at this juncture by Katcaev, would do little to address the real issue in this case, which is the dispute between the three individuals behind those two entities.

Accordingly, the court rejects the Settling Parties' claim that the Majority Owners are not entitled to assert a claim to the interpleaded funds.[6]

---

[6] For the same reason, the court rejects the Settling Parties' objection to Judge Lindsay's failure to enter partial summary judgment directing 46% of the interpleaded funds to RM, on the theory that all Defendants agree that RM is entitled to at least a 46% share of the proceeds. (Settling Parties' Obj. to February 24 R&R at 4.) While the Defendants agree that *at the time*

2.  Sasha Schmdt's Right to Assert a Claim to the Inter-
     pleaded Funds

The Settling Parties also object to Judge Lindsay's failure to rec-
ommend that partial summary judgment be granted against
Schmdt, on the theory that the divesture of Schmdt's interest in
RM also divests him of any claim of entitlement to the inter-
pleaded funds. (Obj. to Feb. 24 R&R at 4.) As the Settling Parties
note, Judge Lindsay observed that "[a]lthough Schmdt 'disputes'
that he ceased to be a participant on [April 23, 2018], . . . [h]e
does not . . . dispute that [BBR Bank] currently owns his share of
the company. . . . Accordingly, Schmdt can no longer claim enti-
tlement to the interpleaded in this action." (Feb. 24 R&R at 20.)

The Settling Parties contend that BBR Bank now owns Schmdt's
50% ownership stake, and they have submitted legal entity pa-
perwork for RM that appears to corroborate that claim. (Settling
Parties' 56.1 ¶ 5; Extract from the Unified State Register of Legal
Entities (Dkt. 268-1) at ECF pp. 5-8.) The Majority Owners dis-
pute the claims that Mr. Schmdt was divested of his stake in RM
and that his former stake is now held by BBR Bank. (Majority
Owners' 56.1 ¶¶ 4-5.) Schmdt suggests that Katcaev engineered
a fraudulent scheme in coordination with a "friendly banker,"
whereby Katcaev intentionally defaulted on a personal loan on
which Schmdt was the guarantor and the bank pursued Schmdt
rather than Katcaev, the borrower, for payment. (Schmdt Decl.
¶¶ 18-19; Majority Owners' 56.1 ¶¶ 56-58.) They allege that
Schmdt is engaged in ongoing litigation regarding this matter in
Russian courts. (Majority Owners' 56.1 ¶ 58.) The Majority Own-
ers also object to the Settling Parties' request that the court take

_of settlement_ at least 46% of the proceeds were owed to RM, they disagree
as to how RM's portion of the interpleaded funds should be distributed
among them. The Settling Parties therefore overlook a key point of dispute
and a genuine issue of material fact, and Judge Lindsay correctly declined
to recommend the distribution of any portion of the interpleaded funds at
this stage of the litigation.

judicial notice of BBR's 50% stake in RM in reliance on the puta-tive legal entity paperwork, noting that the Settling Parties' have failed to provide any evidence regarding the legal effect of that document. (April 26, 2019 Decl. of Richard Mooney (Dkt. 280) at ECF p. 35.)

On this record, the current ownership of Schmdt's former stake in RM appears to be a disputed fact. Additionally, even if Schmdt was divested of his stake on or about April 23, 2018, it is not necessarily clear that such divesture would deprive him of any interest in the interpleaded funds. If the Majority Owners suc-cessfully establish at trial that Schmdt, Pirozhnikov, and Katcaev had reached an enforceable agreement as to how the funds would be distributed between the three of them, and not merely how they would be distributed among the Settling Parties, such an agreement might control the proper distribution of the funds notwithstanding Schmdt's subsequent divesture. Therefore, the court respectfully disagrees with Judge Lindsay's R&R insofar as it concluded that Schmdt has lost any claim of entitlement to the interpleaded funds,[7] and it finds that Judge Lindsay did not err in declining to recommend partial summary judgment against Schmdt.

---

[7] Throughout this Memorandum and Order, the court characterizes its agreement with the recommendations set forth in Judge Lindsay's Febru-ary 24 R&R as "full" agreement, and it ultimately adopts "in full" the February 24 R&R. That characterization is accurate in the sense that the court agrees with and adopts all of Judge Lindsay's recommendations re-garding the proper disposition of the Settling Parties' Motion for Partial Summary Judgment. The court emphasizes, however, that it does not agree with the finding, set forth in the February 24 R&R, that Schmdt has lost a claim of entitlement to the interpleaded funds.

### 3. Enforceability of Division Agreement

The Settling Parties object to Judge Lindsay's recommendation that the court deny partial summary judgment regarding the enforceability of the Division Agreement on two grounds. First, they argue that under Russian law, Grudtsin, as RM's Director General, had legal authority to execute the Division Agreement on RM's behalf without the approval of participants Schmdt and Pirozhnikov. (Settling Parties' Obj. to February 24 R&R at 5.) Second, they argue that even if the Division Agreement was improperly executed, the statute of limitations on the Majority Owners' opportunity to contest its enforceability under Russian law has expired. (*Id.* at 5-7.)

The Majority Owners argue that the Division Agreement, which was executed in January 2016 without their authorization, is invalid under Russian law. They point to Article 46 of the Federal Law No. 14-Fz of February 8, 1998 on Limited Liability Companies, which requires that "[a] decision on the approval of a major transaction . . . be taken by a general meeting of the company's participants." (Notice of Foreign Law, Russian Fed. Law. No. 14-Fz ("Russian LLC Law") (Dkt. 280) at ECF pp. 38, 67.) Article 46 of the Russian LLC Law defines a "major transaction" as a transaction "associated with the acquisition or alienation or with possibility of the direct or indirect alienation by the company of assets whose value comprises 25 and more percent of the value of the company's property." (*Id.*) Moreover, "[t]ransactions completed in the process of the company's usual economic activity shall not be deemed to be major transactions." (*Id.*)

The parties dispute whether the execution of the Division Agreement constituted a "major transaction" under Article 46. The Settling Parties filed to the docket a letter from an attorney in Ernst & Young's St. Petersburg office, offering a "[l]egal opinion as to the legal authority under Russian corporate law to act and

17

enter into contracts for and on behalf of limited liability companies." (Ernst & Young Legal Opinion (Dkt. 18) at 1.) Her letter states that under Russian law, "[t]he Director General is not required to obtain prior approval from the general meeting of the LLC's participants" to enter into a "[s]ettlement proceeds division agreement." (*Id.* at 1, 3.) Her letter further notes that while "large transactions" that "involv[e] the disposal of material LLC's assets" do require approval by an LLC's participants, entering an agreement "intended to perform a previously achieved amicable settlement may not be treated as . . . a large transaction" if the agreement "does not create new rights or impose new liabilities, but only establishes how each of the plaintiffs receives payments under the amicable agreement." (*Id.* at 5, 7.)

The Majority Owners contend that the Division Agreement purported to dispose of more than 25 percent of RM's assets, in light of Schmdt's assertion that at the time of the settlement of the underlying action, RM had no material assets other than the settlement proceeds, and under the terms of the Division Agreement approximately 54% of the interpleaded funds would go to Varwood, rather than to RM. (Schmdt Decl. ¶ 11; Majority Owners' 56.1 ¶ 21; Majority Owners' Opp. at 8.)

Construing facts in the light most favorable to the non-movant Majority Owners, there is a clear dispute regarding the material factual question of whether the Division Agreement purported to alienate at least 25 percent of RM's assets, so as to constitute a "major transaction" under Article 46 of the Russian LLC Law. If, as the Majority Owners assert, RM was entitled to the full value of the interpleaded funds and possessed no other material assets, a jury could reasonably conclude that the distribution of proceeds contemplated by the Division Agreement met the criteria for a "major transaction" that could only be executed with the authorization of RM's participants. Contrary to the Settling Parties' contention, the court is under no obligation to credit the *legal*

*conclusions* asserted in the letter they obtained from a Russian attorney, simply because the Majority Owners have not submitted a comparable letter with a competing interpretation of Russian law. (*See* Settling Parties' Obj. to Feb. 24 R&R at 5.) The court therefore rejects the Majority Owners' objection to this portion of Judge Lindsay's R&R. (*See* Feb. 24 R&R at 21-23.)

The Settling Parties also argue that even if the Division Agreement were invalid under Russian law, the Majority Owners' only recourse would be to dispute its validity through the Russian legal system, which—according to the Settling Parties—they have failed to do within the applicable limitations period. (Settling Parties' Obj. to Feb. 24 R&R at 5-7.) Judge Lindsay, in her February 24 R&R, concluded that "[a]t minimum, the [c]ourt would require expert testimony or additional briefing to make . . . a determination" as to which of two limitations periods applies and whether the U.S. litigation provides a basis for equitable tolling. (Feb. 24 R&R at 24.) The Majority Owners do not directly dispute the Settling Parties' assertion that the relevant limitations period under Russian law has expired, but they argue that even if that is the case, this court may nonetheless independently determine whether the Division Agreement controls the allocation of the interpleaded funds. (Majority Owners' Opp. at 9.)

The Majority Owners' ability to successfully challenge the Division Agreement's enforceability in *Russian* court depends upon the limitations period under Russian law, but the Majority Owners have taken timely action to block enforcement of the Division Agreement in *this* court. The court rejects the Settling Parties' contention that it is bound to enforce the Division Agreement, even if it finds that it was executed unlawfully, on the grounds that the Russian limitations period has allegedly expired. If the court finds that RM lacked legal authority to enter the Division Agreement, it will not enforce the agreement. The Majority Owners do not need to invalidate the agreement in Russian court in

order to prevent its enforcement in this court, and thus their alleged failure to do so in a timely manner is not dispositive.

The court therefore rejects the Settling Parties' objections to Judge Lindsay's recommendation on the issue of the Division Agreement's enforceability.

As explained above, the court agrees with the February 24 R&R's recommendation that the Settling Parties' Motion for Partial Summary Judgment be denied. It therefore rejects the Settling Parties' objections to the February 24 R&R and adopts the February 24 R&R in full.

### B. The Frank Parties' Motion to Dismiss

The court next considers the Frank Parties' motion to dismiss the Settling Parties' counterclaims. In their Amended Answer, Cross-claim, and Counterclaim, the Settling Parties asserted six causes of action against the Frank Firm, Frank, or both:

- In Count I, the Settling Parties claim that the Frank Parties breached their fiduciary duty by initiating the instant interpleader action rather than directly disbursing the settlement funds to the Settling Parties. (Counterclaim at 9-10.)

- In Count II, the Settling Parties seek a declaratory judgment against the Frank Firm establishing their entitlement to the interpleaded funds. (*Id.* at 11.)

- In Count III, the Settling Parties seek a declaratory judgment that their retention agreement, subject to which the Frank Parties and Khavinson retained approximately 20% of the settlement proceeds, was invalid or not binding. (*Id.* at 11-12.)

- In Count IV, the Settling Parties allege legal malpractice against the Frank Parties and Khavinson for, *inter alia*, counseling the Settling Parties to enter the settlement

without first determining the division of the proceeds, ne-gotiating the transfer of 800,000 stock shares to Schmdt, and refusing to comply with the Settling Parties' instructions for distribution of the funds. (*Id.* at 13-15.)

- In Count V, the Settling Parties allege that the Frank Parties and Khavinson breached their fiduciary duty by engaging in the same conduct enumerated in Count IV. (*Id.* at 15-18.)

- In Count VI, the Settling Parties seek a declaratory judgment regarding the validity of the retention agreement and the Frank Parties' and Khavinson's entitlement to shares of Net Element stock pursuant to such agreement. (*Id.* at 18-19.)

Judge Lindsay recommended that the court grant the Frank Parties' motion to dismiss with respect to Counts I and II. (March 2 R&R at 17.) She recommended that the court grant the Frank Parties' motion with respect to Count IV insofar as the Settling Parties' claim that the initiation of the interpleader action was malpractice, but that the court deny the motion to dismiss the malpractice claim on all other grounds alleged. (*Id.* at 11-13.) She recommended that the court deny the Frank Parties' motion to dismiss with respect to Counts III, V, and VI. (*Id.* at 16, 19.) The Frank Parties and the Settling Parties both object to aspects of the March 2 R&R. (*See* Frank Obj.; Settling Parties' Obj. to March 2 R&R.)

### 1.   Choice-of-Law Principles

The parties dispute which state's laws should govern the resolution of these motions to dismiss. The Settling Parties argue that Florida law applies, in light of the fact that Florida was the forum for the underlying litigation that gave rise to the interpleader action, the Settling Parties' counterclaims, and the instant motions

21

to dismiss. (Settling Parties' Mem. of Law in Opp. to Frank Parties' Mot. to Dismiss ("Settling Parties' Opp. to Frank Mot.") (Dkt 181) at 1-10.) The Frank Parties argue that Pennsylvania law should apply to the counterclaims against them, because Frank Firm is based in Pennsylvania.[8] (Frank Mot. at 2.)

"[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013). When an action is transferred from one venue to another, the governing law remains unchanged; in other words, the choice of law rules of the state in which the action was initially brought continue to apply. *Id.* at 153-54. This case was initiated in the Eastern District of New York, transferred to the Southern District of Florida, and then transferred back to the Eastern District of New York. Thus, the state in which this court sits and the state in which the action was initiated are one and the same, and the court will apply New York choice-of-law rules.

Under New York's choice-of-law rules, the first inquiry is "to determine whether there is an actual conflict between the laws invoked by the parties." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). If an actual conflict exists, "the court must then classify the conflicting laws by subject matter with reference to New York law." *Id.* "[U]nder New York law, the choice of law analysis is generally done separately for each claim and defense." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 600 (S.D.N.Y. 2018).

---

[8] Khavinson, whose motion to dismiss is discussed below, and whose legal practice is based in New York, argues that New York law should apply to the counterclaims against him. (Khavinson Mem. of Law in Support of Mot. to Dismiss ("Khavinson Mem.") (Dkt. 274-3) at 5-7.)

Thus, to the extent that the laws invoked by the parties in support of their positions on a given claim do not conflict, the court will not undertake an analysis of which law to apply. To the extent that such laws do conflict, the court will undertake the inquiry on a claim-by-claim basis.

### 2. Breach of Fiduciary Duty Claim for Initiating Interpleader (Count I)

The Settling Parties allege that the Frank Firm breached its fiduciary duty to the Settling Parties by initiating this interpleader action, in which it named the Majority Owners as the Settling Parties' co-defendants, rather than simply disbursing the settlement funds to the Settling Parties' counsel. (Counterclaim at 9-10.) Judge Lindsay recommended granting the Frank Parties' motion to dismiss on this fiduciary duty claim, and the Settling Parties object to that recommendation. (March 2 R&R at 17; Settling Parties' Obj. to March 2 R&R at 3-4.)

Rule 22 of the Federal Rules of Civil Procedure allows for the joinder of defendants in an interpleader action by "[p]ersons with claims that may expose a plaintiff to double or multiple liability," notwithstanding that the defendants' claims may be adverse. Fed. R. Civ. P. 22(a)(1). The Settling Parties contend that the Frank Parties had no basis to fear liability to the Majority Owners because they were not parties to the underlying litigation, lacked authority to act on behalf of any of the Settling Parties, and had no entitlement to the interpleaded funds. (Settling Parties' Obj to. Mar. 2 R&R at 3-4.)

As discussed above, the court denies the Settling Parties' motion for partial summary judgment against the Majority Owners in part because it finds, based on the record before it, that there is a genuine dispute of material fact as to whether the Majority Owners are entitled to some portion of the interpleaded funds. Even if the trier of fact ultimately determines that the Majority Owners are not entitled to any portion of the interpleaded funds,

23

the present posture of this case underscores the plausibility of their claims. The Majority Owners' colorable claims to the interpleaded funds, whether or not they are meritorious, have the potential to expose the Frank Firm to multiple liability. As a result, the Frank Parties had a justifiable legal basis to initiate the interpleader action, and the Settling Parties have no plausible claim that the Frank Parties breached their fiduciary duty by doing so. The court therefore agrees with Judge Lindsay that the Settling Parties fail to state a claim for relief on Count I, and grants the Frank Parties' motion to dismiss on that count.

   3.   Declaratory Judgment Regarding Entitlement to Interpleader Funds (Count II)

The Settling Parties seek a declaratory judgment against the Frank Firm under 28 U.S.C. § 2201 "that they—who, unlike the [Majority Owners] were the Frank Firm's clients, the plaintiffs in the Lawsuit, and the 'Settling Plaintiffs' under the Settlement Agreement—are entitled to the interpled funds in the Court Registry together with any interest accrued therein." (Counterclaim at 11.) The Frank Parties argue that this declaratory judgment claim should be dismissed as moot, because the Frank Firm has already conceded that it should pay the interpleaded funds by depositing them into the Court Registry, and because it has initiated the interpleader action to resolve the question of entitlement to those funds. (Frank Mot. at 17.) Judge Lindsay agreed that the claim should be dismissed as a means of simplifying the proceedings, because the issues it raises are duplicative of the merits of the underlying interpleader action. (March 2 R&R at 17.)

The Settling Parties do not specifically object to Judge Lindsay's recommendation that Count II be dismissed. (*See* Settling Parties' Obj to. Mar. 2.) Moreover, the court agrees with Judge Lindsay that Count II of the Settling Parties' counterclaim is duplicative

of the underlying action. The Settling Parties have adequately asserted their claim of entitlement to the interpleaded funds through their Answer and other filings in this case, and there is no plausible risk that they will be deemed to have forfeited their claim. *Cf. Bank of Am., N.A. v. Morgan Stanley & Co., Inc.*, No. 10-CV-6322 (RJH), 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011) (finding that a named interpleader defendant may be deemed to have forfeited its claim of entitlement to the funds if it fails to assert such a claim). The court therefore agrees with Judge Lindsay that dismissal of Count II of their counterclaim will not cause them prejudice, and it adopts the relevant portion of the R&R and dismisses the claim.

4. Declaratory Judgments Regarding Validity of Retention Agreement and Stock Transfer (Counts III, VI)

In Count III of their counterclaim, the Settling Parties seek a declaratory judgment against the Frank Firm and Khavinson under 28 U.S.C. § 2201, stating that RM's Retention Agreement, which was signed by Schdmt on RM's behalf, is not valid or, alternatively, not binding on Katcaev and Varwood, and that therefore the Frank Firm and Khavinson were not entitled to withhold 20% of the Settlement Funds as payment for attorney's fees. (Counterclaim at 11-12.) In Count VI, the Settling Parties seek a declaratory judgment that Frank and Khavinson were not entitled to receive the 20,000 shares of Net Element stock that were transferred to them following the settlement. (*Id*. at 18-19.)

Judge Lindsay found that the Frank Parties had not established a legal basis for dismissing these claims and recommended that their motion to dismiss be denied on these counts. (March 2 R&R at 15-16.) The Frank Parties do not specifically object to this portion of the R&R. (*See* Frank Obj.) The court therefore reviews this portion of Judge Lindsay's recommendation for clear error. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010).

Having found none, the court adopts this portion of the R&R and denies the Frank Parties' motion to dismiss with respect to Counts III and VI.

### 5. Legal Malpractice (Count IV)

Count IV of the Settling Parties' counterclaim alleges legal malpractice against the Frank Parties and Khavinson, based on five of their alleged actions or omissions as counsel to the Settling Parties: (1) "failing to identify RM's duly authorized constituents at the outset of the representation"; (2) negotiating and encouraging the Settling Parties to enter a settlement agreement "without first seeking and obtaining an agreement among the Settling Parties regarding the division of the Settlement Funds"; (3) negotiating and encouraging the Settling Parties to enter a settlement agreement that provided for 800,000 shares of Net Element stock to be transferred to Schmdt; (4) refusing to distribute the Settlement Funds as the Settling Parties instructed; and (5) initiating the interpleader action. (Counterclaim at 13-14.) Judge Lindsay recommended that the Frank Parties' motion to dismiss these claims be denied, except to the extent that the Settling Parties allege malpractice based on the filing of the interpleader action. (March 2 R&R at 12-13.) The Frank Parties and the Settling Parties both object to Judge Lindsay's recommendation. (*See* Settling Parties' Obj. to March 2 R&R at 3-4; Frank Obj. at 2-4.)

The parties dispute whether Pennsylvania or Florida law governs the Settling Parties' malpractice claims. Contrary to the Frank Parties' contentions, Judge Lindsay found that there were no conflicts between those states' laws that were necessary to resolve at this stage of litigation. (*Id.* at 7-10, 12.) The allegedly conflicting laws relate to two issues: first, whether a litigant's acceptance of

a settlement precludes it from bringing a malpractice claim regarding that settlement, and second, whether contributory negligence operates as a bar to a legal malpractice action.

i.    Viability of Legal Malpractice Actions Arising from Settlement

The Frank Parties contend that under Pennsylvania law, which they allege ought to apply, a litigant who agrees to a settlement effectively forfeits any claim of legal malpractice arising from that settlement. They locate this proposition in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541 (Pa. 1991), which concerned plaintiffs' legal malpractice action against their former attorneys based on plaintiffs' dissatisfaction with the settlement amount they received in underlying litigation. 526 Pa. at 544-45. The Supreme Court of Pennsylvania concluded that plaintiffs' malpractice claim was barred because, "in light of . . . longstanding public policy which encourages settlements," it would "not permit a suit to be filed by a dissatisfied plaintiff against his attorney, following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action." *Id.* at 546.

A few years after it decided *Muhammad*, the Supreme Court of Pennsylvania distinguished its holding in a legal malpractice action in which the plaintiff claimed his former attorney had negligently advised him with respect to a settlement in a domestic relations dispute. *See McMahon v. Shea*, 547 Pa. 124, 126-28 (Pa. 1997). The *McMahon* court noted that unlike in *Mohammad*, the plaintiff was "not attempting to gain additional monies by attacking the value that his attorneys placed on his case," but was instead "contending that his counsel failed to advise him as to the possible consequences of entering into a legal agreement." *Id.* at 130. It concluded that the plaintiff's malpractice action was not precluded by the settlement agreement and emphasized that "the

analysis of *Muhammad* is limited to the facts of that case." *Id.* at 131-32.

The Third Circuit, analyzing Pennsylvania law in the wake of *McMahon* and *Muhammad*, concluded that "legal malpractice actions are not barred . . . if the malpractice plaintiff does not try to question, retrospectively, the amount of the settlement the attorney negotiated." *Wassall v. DeCaro*, 91 F.3d 443, 447 (3d Cir. 1996). It noted that while "the Pennsylvania Superior Court has viewed *Muhammad* narrowly, it has done so not by creating artificial distinctions, but by paying heed to the policy concerns underlying the Pennsylvania Supreme Court's holding in *Muhammad.*" *Id.* at 448.

The Settling Parties' legal malpractice counterclaim does not allege that the Frank Parties and Khavinson negligently failed to negotiate a settlement with sufficiently favorable terms. Rather, they allege that they negligently "fail[ed] to resolve how the settlement funds were to be apportioned . . . and to properly advise the parties of their rights and obligations" under the settlement agreement. (March 2 R&R at 8.) Where an attorney has allegedly "neglected his role as a steward," "allowing a subsequent malpractice action serves as a systemic deterrent for this behavior and thus promotes the policies articulated in *Muhammad*," such as "preserving resources and allowing access to the courts by other litigants." *Wassall*, 91 F.3d at 449. The nature of the Settling Parties' malpractice claim is therefore distinguishable from the preclusive rule announced in *Muhammad* on both factual and policy grounds.

Accordingly, the court concludes that Pennsylvania law does not bar the Settling Parties' malpractice claim. Pennsylvania law is substantially similar in this respect to the law of Florida, which—all parties agree—allow for legal malpractice actions arising out of settlements. *See, e.g., Keramati v. Schackow*, 553 So. 2d 741,

745-46 (Fla. Dist. Ct. App. 1989) (declining to credit the argument "that mere acceptance of a settlement in a prior suit foreclosed the client from bringing a malpractice suit against the attorney who handled the case").[9] Regardless of which law applies to the Settling Parties' legal malpractice claim, the claim is not barred simply by the fact that it arises from a settlement agreement.

ii.     Contributory Negligence

The Frank Parties also contend that the Settling Parties' malpractice claim should be dismissed because it is governed by Pennsylvania law, which applies the doctrine of contributory negligence to malpractice claims. *See Gorski v. Smith*, 812 A.2d 683, 702 (Pa. Super. Ct. 2002) ("[S]ince legal malpractice actions do not involve bodily injury or damage to property, legal malpractice actions are outside the scope of [Pennsylvania's] comparative negligence act, and hence the doctrine of contributory negligence should apply."). Under Pennsylvania's contributory negligence doctrine, "in a legal malpractice action based on negligence, the negligence of a client, if proven at trial, may be considered by a jury in awarding damages" and may even, depending on the nature of the client's negligence, operate as a complete bar to recovery. *Id.* at 701, 703-04. Florida, by contrast, is a "comparative negligence" jurisdiction, in which a client's own negligence may affect the amount of recovery but

---

[9] The parties also seem to agree that New York law, which Khavinson argues ought to apply to the legal malpractice claims against him, does not preclude malpractice actions arising from settlements. *See Chamberlain, D'Amanda, Oppenheimer & Greenfield, LLP v. Wilson*, 136 A.D.3d 1326, 1328 (N.Y. App. 2016) ("A settlement of the underlying action does not, per se, preclude a legal malpractice action.").

does not preclude him from recovery altogether. *See Michael Kovach, P.A. v. Pearce*, 427 So. 2d 1128, 1129-30 (Fla. Dist. Ct. App. 1983).

Even if the Frank Parties are correct that the Settling Parties' malpractice claim must be governed by Pennsylvania tort law, they have not yet "proven at trial" that the Settling Parties were contributorily negligent. Their argument is therefore premature and provides no sound basis for dismissal of the malpractice claims at this stage of the litigation. Drawing all reasonable inferences in the Settling Parties' favor, as the court must do in deciding the Frank Parties' motion to dismiss, the trier of fact may ultimately conclude that the Settling Parties were not negligent in a manner that bars their recovery under Pennsylvania law. It is therefore not necessary for the court to determine at this stage whether Pennsylvania or Florida law ultimately applies to the Settling Parties' malpractice claim against the Frank Parties: in either case, the Frank Parties cannot establish that the Settling Parties fail to state a claim for relief because of their own negligence.

### iii. Aggregate Settlement Rule & Failure to Obtain Agreement as to Apportionment of Funds

The parties dispute the relevance of a rule governing the Florida Bar, referred to as an "aggregate settlement rule," which provides that "[a] lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent, in a writing signed by the client." Rule 4-1.8(g), R. Regulating Fla. Bar. The Settling Parties' counterclaim alleges that the Frank Parties committed legal malpractice by negotiating the underlying settlement "without first seeking and obtaining an agreement among the Settling Parties regarding the division of the Settlement Funds as required by Rule 4-1.8(g)." (Counterclaim at 13.) The Frank Parties argue that the aggregate settlement rule does

not require that counsel apportion a settlement between its clients and therefore that their alleged failure to apportion is not actionable. (Frank Mot. at 13-14.) Judge Lindsay recommended denying the Frank Parties' motion to dismiss this aspect of the malpractice claim, finding that the Frank Parties' compliance with the rule was a factual issue, and that its alleged violation of the rule could be evidence of negligence. (March 2 R&R at 11.) The Frank Parties object. (Frank Obj. at 3-4.)

The Settling Parties contend that by failing to address the apportionment of the settlement among its clients, the Frank Parties deprived them of their ability to give informed consent to the settlement, as required by the aggregate settlement rule. Drawing all reasonable inferences in favor of the Settling Parties, the trier of fact might ultimately credit their assertion that "their consent was not obtained." (Settling Parties' Opp. to Frank Obj. at 8.)

Moreover, even if the Frank Parties did not violate the aggregate settlement rule, they fail to establish that their alleged failure to broach the subject of apportioning the settlement funds before the Settling Parties entered the settlement agreement is irrelevant to the issue of negligence. The gravamen of the Settling Parties' allegation is that the Frank Parties were negligent in this respect, and the question of the Frank Parties' compliance with the aggregate settlement rule is merely one means of assessing whether the Frank Parties breached a professional standard. Because the Frank Parties do not adequately establish that their alleged failure to counsel their clients to determine how the settlement funds would be divided is not actionable, the court agrees with Judge Lindsay and declines to dismiss that aspect of the legal malpractice counterclaim.

    iv.    Initiation of Interpleader

The Settling Parties' counterclaim alleges that the Frank Parties committed legal malpractice by "initiating the instant action,"

and thereby "essentially invit[ing] the [Majority Owners] to lay claim to the funds belonging to its clients." (Counterclaim at 14.) Judge Lindsay found that the Frank Parties' initiation of the interpleader was not actionable and recommended dismissing the legal malpractice claim insofar as it arose from that action. (March 2 R&R at 11-12.) The Settling Parties object. (Settling Parties' Obj. to March 2 R&R at 3-4.)

As discussed above, the court agrees with Judge Lindsay that the Frank Parties acted appropriately in initiating the interpleader action in this case, because they had a reasonable basis to fear multiple liability. The court therefore agrees that the legal malpractice claim should be dismissed insofar as it seeks to establish on the basis of the interpleader.

For the reasons explained above, the court agrees fully with Judge Lindsay's recommendation regarding the Settling Parties' legal malpractice claim, and rejects both the Settling Parties' and Frank Parties' objections to this aspect of the R&R. The court grants the Frank Parties' motion to dismiss with respect to Count IV of the counterclaim only to the extent it alleges malpractice arising from the initiation of the interpleader, and denies their motion to dismiss Count IV on all other grounds.

6. Breach of Fiduciary Duty (Count V)

Count V of the Settling Parties' counterclaim asserts a claim for breach of fiduciary duty based on the same alleged conduct that gives rise to the legal malpractice claim. (Counterclaim at 15-17.) Judge Lindsay recommended denying the Frank Parties' motion to dismiss with respect to Count V, noting that the Frank Parties primarily raised the same arguments that they raised in support of their motion to dismiss Count IV. (March 2 R&R at 18-19.) The Frank Parties do not object to that aspect of the March 2 R&R.

(*See* Frank Obj.) Finding no clear error in Judge Lindsay's analysis, the court adopts her recommendation to deny the Frank Parties' motion to dismiss with respect to Count V.

### 7. Frank Parties' Additional Claims

The Frank Parties made several additional arguments in their motion to dismiss, including a claim that Frank could not be liable in his individual capacity, a claim that Katcaev lacks standing, a request to strike paragraphs of the Counterclaim asserting consequential damages, and a request to strike the Settling Parties' request for attorney's fees. (*See* Frank Mot. at 17-19.) Judge Lindsay recommended denying the motion to dismiss in all of these respects. (March 2 R&R at 20-21.) The Frank Parties object only to the recommendation regarding attorney's fees. (Frank Obj. at 5-6.)

With respect to attorney's fees, the Frank Parties argue that both Florida and Pennsylvania law generally prohibit an award of attorney's fees except as provided for by statute or the parties' agreement. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1148 (Fla. 1985); *Merlino v. Del. Cty.*, 556 Pa. 422, 425 (Pa. 1999). As the March 2 R&R points out, however, both states allow for an award of attorney's fees where the defendant's wrongful action is the cause of the plaintiff's involvement in litigation, and attorney's fees may therefore be treated as damages. *See In re Pennsylvania Footwear Corp.*, 204 B.R. 165, 180-81 (Banrk. E.D. Pa. 1997); *Reiter v. Monteil*, 98 So. 3d 586, 588 (Fla. Dist. Ct. App. 2012); *see also* March 2 R&R at 20-21. In their objection, the Frank Parties argue that because Judge Lindsay recommended that their initiation of the interpleader was not actionable, attorney's fees incurred in the course of this litigation cannot be properly awarded. (Frank Obj. at 4-5.)

In light of its holding that the Frank Parties did not breach a fiduciary duty or commit legal malpractice by initiating the

interpleader action, the court agrees with the Frank Parties that there is no basis to award attorney's fees to the Settling Parties that cover the full scope of their involvement in this action. However, if the Settling Parties prevail on any of their counterclaims that the court declines to dismiss herein, it is feasible that the Frank Parties might be assessed attorney's fees incurred by the Settling Parties in litigating the prevailing counterclaims. The court therefore agrees with Judge Lindsay that the motion to dismiss the request for attorney's fees should be denied.

Additionally, the court finds no clear error in this portion of the R&R and therefore adopts all recommendations to which the Frank Parties have not objected. *See Gesualdi,* 2010 WL 985294, at *1.

***

As explained above, the court adopts all of Judge Lindsay's recommendations regarding the Frank Parties' motion to dismiss and rejects all objections raised by the Frank Parties and Settling Parties. Accordingly, the court grants the motion to dismiss on Counts I and II of the counterclaim, as well as on Count IV insofar as it alleges malpractice based on the initiation of the interpleader, and it denies the motion to dismiss in all other respects.

### C. Khavinson's Motion to Dismiss

The Settling Parties assert Counts III, IV, V, and VI of the counterclaim against Khavinson, as well as against the Frank Parties. (Counterclaim at 11-18.) The R&R recommends granting Khavinson's motion to dismiss with respect to Count V, granting it in part and denying it in part with respect to Count IV, and denying it with respect to Counts III and VI. (March 2 R&R at 13, 16, 19-20.) The Settling Parties and Khavinson both object. (*See* Settling Parties' Obj. to March 2 R&R; Khavinson Obj.)

1.  Declaratory Judgments Regarding Validity of Retention Agreement and Stock Transfer (Counts III, VI)

As discussed above, Counts III and VI of the Settling Parties' counterclaim seek declaratory judgments under 28 U.S.C. § 2201 regarding, respectively, the validity or enforceability of the Settling Parties' retention agreement and Frank and Khavinson's entitlement to New Element stock. (Counterclaim at 11-12, 18-19.) Judge Lindsay recommended denying Khavinson's motion to dismiss on these counts, noting that his motion to dismiss had "not specifically addressed these declaratory judgment actions" and that, like the Frank Parties, he had not "set forth any arguments that support the dismissal of Counts III and VI as a matter of law." (March 2 R&R at 14-16.) Khavinson objects, asserting that the Retention Agreement was valid, and that the retention of attorney's fees and the transfer of Net Element stock were authorized under its terms. (Khavinson Obj. at 5.)

The Settling Parties allege that Schmdt lacked authority to enter the Retention Agreement on RM's behalf, and that Katcaev and Varwood did not enter a contingency fee arrangement with the Frank Parties or Khavinson. (Counterclaim at 12, 18-19.) The court must accept those factual allegations as true for purposes of evaluating the motions to dismiss. *L-7 Designs,* 647 F.3d at 429. Khavinson disputes the accuracy of those factual claims, but does not explain why, even if those claims are true, the Settling Parties' claim for a declaratory judgment necessarily fails. Therefore, Khavinson has merely established the existence of a factual dispute and not a legal basis for dismissal. The court therefore adopts the R&R and denies Khavinson's motion to dismiss with respect to Counts III and VI.

2. Legal Malpractice (Count IV)

Count IV of the Settling Parties' counterclaim asserts a claim for legal malpractice against Khavinson, as well as against the Frank Parties, on a variety of grounds set forth above. (Counterclaim at 13-14.) As she did with respect to the Frank Parties' motion to dismiss, Judge Lindsay recommended denying Khavinson's motion to dismiss Count IV except insofar as the Settling Parties allege malpractice arising from the initiation of this interpleader action. (March 2 R&R at 13.) Khavinson objects, arguing that the R&R erroneously found that Florida's aggregate settlement rule applied to him, that it erroneously found that the Settling Parties' "buyer's remorse" was actionable, and that it erroneously found that his alleged failure to identify duly authorized constituents was actionable. (Khavinson Obj. at 2-5.) The Settling Parties object to Judge Lindsay's recommendation that Khavinson's motion to dismiss be granted insofar as the Settling Parties allege that initiating the interpleader was malpractice. (Settling Parties' Obj. to March 2 R&R at 3-4.)

As discussed above, the court finds that the Frank Parties reasonably feared multiple liability and were justified in initiating this interpleader action, and therefore concludes that the initiation of the interpleader is not itself an actionable basis for a malpractice claim. It therefore rejects the Settling Parties' objection on this issue and adopts Judge Lindsay's recommendation that Khavinson's motion, like the Frank Parties' motion, be partially granted on this ground.

Khavinson's objection to Judge Lindsay's consideration of the aggregate settlement rule misses the mark. Khavinson suggests that the rule is irrelevant to the evaluation of whether he behaved negligently because he is not a member of the Florida Bar and did not seek *pro hac vice* admission in the U.S. District Court for

the Southern District of Florida in connection with the underlying litigation. (Khavinson Obj. at 2.) However, as the Settling Parties point out, the Bars of many other states, including New York, have substantially identical rules. *See* N.Y. Rules of Professional Conduct Rule 1.8(g). (*See* Opp. to Khavinson Obj. at 3.) Thus, regardless of which jurisdiction's rule applied to Khavinson, he cannot establish that the substance of the aggregate settlement rule was irrelevant to the standards of professional conduct that governed his behavior. As discussed above, the court finds that the counter-defendants' compliance with the aggregate settlement rule is relevant evidence regarding their alleged negligence, and that even proof of their adherence to the rule's requirement would not disprove the Settling Parties' allegations of negligence. Accordingly, the court rejects Khavinson's objection on this issue.

The court also rejects Khavinson's argument that Judge Lindsay erroneously recommended that the Settling Parties could allege malpractice on the basis of "buyer's remorse." (Khavinson Obj. at 3-4.) Khavinson's argument relies on a key factual dispute—whether the Settling Parties gave informed consent to the terms of the retention agreement and the Net Element stock transfer—being resolved in his favor. As discussed above, as the movant he is not entitled to such a presumption at this stage of the proceedings. Similarly, the Settling Parties plausibly allege that Khavinson's failure to identify duly authorized constituents caused them damages by causing a significant delay in the disbursement of funds that they allege are owed entirely to them. Thus, contrary to Khavinson's arguments, the alleged damages are not exclusively based on the settlement agreement itself. (*See* Khavinson Obj. at 4.)

The court agrees fully with Judge Lindsay's recommendation to partially grant and partially dismiss Khavinson's motion to dismiss the malpractice counterclaim, adopts that recommendation, and rejects all relevant objections.

### 3. Breach of Fiduciary Duty (Count V)

Count V of the Settling Parties' counterclaim asserts a claim for breach of fiduciary duty based on the same alleged conduct that gives rise to the legal malpractice claim. (Counterclaim at 15-17.) Judge Lindsay recommended that the Khavinson's motion to dismiss be granted with respect to Count V, because New York law requires dismissal of a claim for breach of fiduciary duty that is duplicative of a legal malpractice claim. *See Nordwind v. Rowland*, 584 F.3d 420, 432-33 (2d Cir. 2009). (*See* March 2 R&R at 18-20.) The Settling Parties object to that recommendation, arguing both that New York law should not govern their breach of fiduciary duty claim and that they state a claim for relief even under New York law. (Settling Parties' Obj. to March 2 R&R at 7-9.)

As Judge Lindsay found, New York law and Florida law differ with respect to the permissibility of simultaneous claims for breach of fiduciary duty and legal malpractice, when such claims arise out of the same facts and seek the same relief. "Under New York law, where a claim for breach of fiduciary is premised on the same facts and seeking the identical relief as a claim for legal malpractice, the claim for fiduciary duty is redundant and should be dismissed." *Nordwind*, 584 F.3d 432-33 (citing *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (N.Y. App. Div. 2004)). By contrast, "[t]here are numerous cases applying Florida law where courts adjudicate plaintiff's allegations of legal malpractice [and] breach of fiduciary duty. . . . The courts in those cases generally permit all of those claims to proceed, without explicitly holding that plaintiffs

are permitted to bring them simultaneously." *Brenner v. Miller*, No. 09-cv- 60235 (PCH), 2009 WL 1393420, at *2 (S.D. Fla. May 18, 2009) (citing *Jones v. Law Firm of Hill & Ponton*, 223 F. Supp. 2d 1284 (M.D. Fla. 2002); *Jackson v. Bellsouth Telecomms.*, No. 00-7588-CIV, 2002 WL 34382750 (S.D. Fla. Nov. 26, 2002)).

Under New York's choice-of-law rules, "the actual conflict between the laws invoked by the parties" must be resolved by "classify[ing] the conflicting laws by subject matter." *Booking*, 254 F.3d at 419. "The New York Court of Appeals has held that the relevant analytical approach to choice of law in tort actions in New York is the interest analysis," which requires "that the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)). Under this analytical approach, "torts are divided into two types, those involving the appropriate standards of conduct . . . and those that relate to allocating losses that result from admittedly tortious conduct." *Id.* Where, as here, "conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the great interest in regulating behavior within its borders." *Id.* (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)).

Judge Lindsay concluded that the jurisdiction in which the tort occurred was New York, where Khavinson is a resident and a member of the Bar. (March 2 R&R at 19.) The Settling Parties argue that the R&R mistakenly focused on where the alleged tortfeasor committed the relevant conduct as opposed to the locus of

the allegedly tortious injury, and contend that Florida, as the jurisdiction of the underlying litigation, was the jurisdiction in which the tort occurred. (Settling Parties' R&R at 7-8.)

"A state has a paramount interest in regulating the conduct of attorneys licensed to practice within its borders." *Diversified Grp, Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 453 (S.D.N.Y. 2001). Accordingly, courts applying New York choice-of-law principles generally find that a state's "interest in regulating the conduct of its attorneys" outweighs another state's "slight interest in protecting its citizens who engage out-of-state attorneys." *Id.*; *see also Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 433 (S.D.N.Y. 2012); *Lambert v. Fiddler Gonzalez & Rodriguez*, No. 96-CV-7233 (LMM), 2001 WL 893362, at *1 n.1 (S.D.N.Y. Aug. 8, 2001); *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 471 (W.D. Mich. 1997); *LNC Investments, Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1350-51 (S.D.N.Y. 1996).

New York's interest outweighs Florida's even more strongly in a case, such as this one, in which the jurisdiction in which the legal action occurred (here, Florida) was not even the domicile of the relevant clients. *See Cont'l Cas. Co. v. Cura Grp., Inc.*, No. 03-CV-61846 (CMA), 2007 WL 9700733, at *7 (S.D. Fla. Jan. 23, 2007) ("New York's interest in regulating attorneys licensed to practice within its borders trumps Illinois' interest in protecting a non-client business operating within its borders from negative consequences resulting from legal malpractice committed by an out-of-state law firm representing an out-of-state client."). Khavinson, a New York lawyer, was "not licensed to practice law in Florida, and there has been no claim of the unauthorized practice of law." *Kurlander v. Kaplan*, No. 19-CV-742 (WFJ), 2019 WL 6789572, at *5 (M.D. Fla. Dec. 12, 2019). Because "[t]he gravamen of" the Settling Parties' claim is their "dissatisfaction with the legal advice provided by" Khavinson, New York has "the

greater interest in regulating the alleged misconduct of its law-yers." *Id.*

The Settling Parties argue that even if New York law governs their breach of fiduciary duty claim against Khavinson, the claim should nonetheless withstand Khavinson's motion to dismiss be-cause Rule 8(d)(2) of the Federal Rules of Civil Procedure allows for the pleading of alternative or inconsistent claims in separate counts. (Settling Parties' Obj. to March 2 R&R at 8-9.) But Rule 8(d)(2) contemplates alternate claims that are factually incon-sistent with one another, not alternate claims that are factually identical, and therefore it does not contradict New York law providing for the dismissal of a duplicative breach of fiduciary duty duty claim. *See MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010), *aff'd* 410 F. App'x 408 (2d Cir. 2011) ("New York law holds that, where a breach of contract or breach of fiduciary duty claim is premised on the same facts and seeks relief identical to that sought in a legal malpractice cause of action, such claims are re-dundant and should be dismissed.").

Finally, the court disagrees with the Settling Parties' objection that their legal malpractice claim in Count IV and their breach of fiduciary duty claim in Count V "are based upon distinct conduct" because one arises from alleged negligence while the other arises from alleged breaches of the duty of loyalty. (Settling Parties' Obj. to March 2 R&R at 9.) "Contrary to [the Settling Parties'] assumption, it is not the theory behind a claim that determines whether it is duplicative," but rather the conduct alleged and the relief sought. *MIG*, 701 F. Supp. 2d at 532.

The court agrees with Judge Lindsay's recommendation that New York law governs the breach of fiduciary duty claim against Khavinson, and that under New York law this claim should be dismissed as duplicative. It therefore grants Khavinson's motion to dismiss with respect to Count V of the counterclaim.

*** 

As explained above, the court adopts all of Judge Lindsay's rec-
ommendations regarding Khavinson's motion to dismiss and
rejects all objections raised by Khavinson and Settling Parties. Ac-
cordingly, the court grants the motion to dismiss on Count V of
the counterclaim, as well as on Count IV insofar as it alleges mal-
practice based on the initiation of the interpleader, and it denies
the motion to dismiss in all other respects.

## IV.    CONCLUSION

For the reasons explained above, the court ADOPTS IN FULL
both the (Dkt. 302) February 24, 2020 R&R and the (Dkt. 303)
March 2, 2020 R&R, and OVERRULES all (Dkts. 306, 311, 315,
316) objections to the R&Rs. The court DENIES the Settling Par-
ties' (Dkt. 277) Motion for Partial Summary Judgment. The court
GRANTS IN PART and DENIES IN PART the Frank Parties' (Dkt.
173) Motion to Dismiss the Settling Parties' Counterclaim, con-
sistent with the analysis set forth above. The court GRANTS IN
PART and DENIES IN PART Khavinson's (Dkt. 274) Motion to
Dismiss the Settling Parties' Counterclaim, consistent with the
analysis set forth above.

SO ORDERED.


Dated:     Brooklyn, New York
           November 30, 2020


                                    /s/ Nicholas G. Garaufis
                                   NICHOLAS G. GARAUFIS
                                   United States District Judge

42