UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ALAN FRANK LAW ASSOCIATES, P.C.,

                Plaintiff,

    v.

OOO RM INVEST, ET AL.,

                Defendants.

------------------------------------------------------------X

**MEMORANDUM & ORDER**

17-CV-1338 (LGD)

**LEE G. DUNST**, Magistrate Judge:

    Presently before the Court is a motion for a jury trial by Defendant/Cross-Defendant Sasha Schmdt and Defendant Sergey Pirozhnikov (referred to as the "Majority Owners"). Electronic Case File Number ("ECF No.") 375. Defendants/Cross-Plaintiffs OOO RM Invest ("RM"), Tcahai Katcaev ("Katcaev"), and Varwood Holdings ("Varwood") (collectively, the "Settling Parties") oppose the motion and, instead, request that all remaining claims in this case be determined by a bench trial before the undersigned.[1] ECF No. 376. Pursuant to the Court's orders, the parties submitted supplemental briefing on the motion. *See* ECF Nos. 377 & 381. For the reasons set forth herein, the Court grants the Majority Owners' request for a jury trial.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    The Court assumes familiarity with the lengthy factual and procedural history of this case and provides a summary of that history only insofar as necessary for the resolution of the

---

[1] On October 14, 2022, the remaining parties in this case consented to jurisdiction before the undersigned and the case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF No. 372.

pending motion.  The facts of this case are set forth more thoroughly in several decisions by District Judge Nicholas G. Garaufis and Magistrate Judge Arlene R. Lindsay.[2]  ECF Nos. 302, 303, 335 & 350.

### A.   The Parties

RM is a limited liability company organized under the laws of, and with a principal place of business in, the Russian Federation.  ECF No. 383 at 3; ECF No. 375 at 1.  RM has essentially ceased operations and the only material assets are the funds which are subject of the dispute in the action pending before the Court.  ECF No. 335 at 3.

At the time this lawsuit commenced, Katcaev, Schmdt, and Pirozhnikov were the three participants in RM.  ECF No. 302 at 3.  Schmdt held a 50% stake in RM (up to April 23, 2018, as his ownership was purportedly transferred to BBR Bank[3]), while Katcaev and Pirozhnikov each held a 25% interest.  ECF No. 335 at 3.

According to the Settling Parties, non-party Dmitri Grudstin ("Grudstin") served as RM's Director General[4] for most of the period from September 2012 to January 2019.  ECF No. 383 at 3.  The Majority Owners disagree about whether Grudstin was in this role for this entire period.

---

[2] On June 8, 2022, this case was randomly reassigned to the undersigned.  June 8, 2022 Order.

[3] Judge Garaufis explained a disputed fact between the parties as to whether Schmdt's 50% stake in RM was transferred to a Russian bank known as "BBR Bank."  ECF No. 335 at 15-16.  The Settling Parties requested the Court take judicial notice of this and the Majority Owners objected to the Court making such a finding.  *Id.*; ECF No. 268; ECF No. 280 at 35.  Judge Garaufis noted that "even if Schmdt was divested of his stake on or about April 23, 2018, it is not necessarily clear that such divesture would deprive him of any interest in the interpleaded funds. . . . Therefore, the court respectfully disagrees with Judge Lindsay's R&R insofar as it concluded that Schmdt has lost any claim of entitlement to the interpleaded funds."  ECF No. 335 at 16.

[4] A Director General under Russian Law is akin to a Chief Executive Officer of a company.  *See generally* ECF No. 18; ECF No. 219, Exhibit A at 28 (Art. 40.1 of Federal Law of 08.02.1998 No. 14-FZ "On Limited Liability Companies.").

2

ECF No. 383 at 3.  According to the Settling Parties, neither Schmdt nor Pirozhnikov have ever been RM's Director General or received power-of-attorney from RM's Director General.  ECF No. 383 at 3.

Varwood is a company organized under the laws of Belize, with its principal place of business in Switzerland and is owned 100% by Katcaev.  ECF No. 375 at 1; ECF No. 302 at 3.

**B.     Background Facts**

In approximately 2013, RM entered into a transaction with a Florida-based company Net Element, Inc. ("Net Element"), whereby RM would transfer its principal assets to Net Element in exchange for 30% of Net Element's stock.  ECF No. 335 at 4.  While subject to dispute, Net Element also may have entered into a separate agreement with Varwood to acquire RM's assets.  *Id.*; ECF No. 375 at 2.  Both deals apparently fell apart and Net Element never acquired RM's assets under either agreement.  ECF No. 335 at 4; ECF No. 375 at 2.  As a result, RM filed an action in 2014 in the United States District Court for the Southern District of Florida seeking relief against Net Element and related individuals (the "Florida Action").  ECF No. 335 at 4; ECF No. 375 at 2.  Attorneys Alan Frank Law Associates, P.C. (the "Frank Firm") and Eugene A. Khavinson ("Khavinson") represented RM, Katcaev, and Varwood in the Florida Action.  ECF No. 335 at 4.  Varwood and Katcaev also brought a separate arbitration action against Net Element, which later was joined with the Florida Action.  ECF No. 335 at 4; ECF No. 375 at 2.

The Florida Action ultimately was resolved in an October 2015 Stipulation of Mediation Statement (the "Settlement Agreement") (at ECF No. 277-2, Exhibit 1), whereby the "Settling Plaintiffs" would receive $2.9 million and 1 million shares of Net Element Stock, but without specifying how the funds would be allocated.  ECF No. 335 at 4; ECF No. 375 at 2.  The parties now disagree about the definition of the term "Plaintiffs" in the Settlement Agreement and how

3

the funds should be apportioned properly. ECF No. 375 at 2. The Settlement Agreement only stated that the funds would be provided to the Frank Firm, but did not describe any details of any further distribution. ECF No. 335 at 5. Alan Frank ("Frank") of the Frank Firm and the Majority Owners have suggested in prior filings that the funds were to be distributed equally among the three owners of RM (Katcaev, Schmdt, and Pirozhnikov), while Katcaev allegedly asked Frank to give him 90% of the settlement funds (and less than 5% each to the Majority Owners). ECF No. 335 at 5; ECF No. 280, ¶ 37. Additionally, because none of the Settling Parties were United States citizens or companies, the Settling Parties, pursuant to advice from the Frank Firm, directed Net Element to transfer 800,000 shares of the settling stock to Schmdt (who is a United States citizen) and 100,000 shares each to Frank and Khavinson. ECF No. 335 at 5.

In January 2016, Grudstin (purporting to act on behalf of RM) and Katcaev (purporting to act on behalf of himself and Varwood) executed the Settlement Proceeds Division Agreement (the "Division Agreement"), which provided $212,000 of the settlement funds would be paid to Varwood for costs with the remaining amount split between Varwood and RM. ECF No. 335 at 6; ECF No. 277-2. As a result of the Division Agreement, Katcaev (the sole owner of Varwood and a 25% equity-holder of RM) would receive 65% of the distributed funds (as opposed to 25% he would receive if the funds were distributed to RM or 33% that he would receive if the funds were apportioned equally with Schmdt and Pirozhnikov). ECF No. 335 at 6 n.3. The Majority Owners currently dispute the validity of the Division Agreement.[5] ECF No. 375 at 5.

### C. Procedural History

Due to the dispute over the distribution of settlement proceeds ($2.9 million and 1 million

---

[5] The parties also dispute (1) whether an April 8, 2016 RM board meeting actually took place, in which RM allegedly retained Grudstin as Director General, and (2) whether Schmdt and Pirozhnikov (as participants in RM) attended the purported meeting. ECF No. 375 at 5. A Russian court later concluded that Grudstin would remain as RM's Director General, but

4

shares of Net Element stock) received pursuant to the Settlement Agreement, the Frank Firm brought this interpleader action in the Eastern District of New York on February 22, 2016.[6]  ECF No. 1.  The Majority Owners filed an Answer and Crossclaim, asserting RM was entitled to the settlement funds.  ECF No. 24.  Upon the motion of the Settling Parties, Judge Sandra J. Feuerstein transferred the case to the United States District Court for the Southern District of Florida.  ECF Nos. 41 & 42.  On July 1, 2016, the Frank Firm deposited approximately $2.31 million into the Court Registry of the Florida District Court and retained the remaining amount for their fees.  ECF No. 335 at 7.  On July 8, 2016, the Settling Parties moved to dismiss the interpleader complaint and later moved to dismiss the Majority Owners' crossclaims on September 2, 2016.  ECF No. 72 & 106.  On December 1, 2016, Magistrate Judge John. J. O'Sullivan issued Report and Recommendations that recommended (1) denying the Settling Parties' motion to dismiss the complaint; (2) granting the Settling Parties' motion to dismiss the Majority Owners' crossclaim; and (3) denying the Frank Firm's motion for discharge and award of attorney's fees and costs.  ECF No. 147 & 148.  District Judge Cecilia M. Altonaga adopted the Report and Recommendations in separate orders on December 16, 2016, and December 19, 2016.  ECF No. 154 & 155.  Two months later, on February 28, 2017, Judge Altonaga transferred the case from the Southern District of Florida back to the Eastern District of New York (over the objection of the Settling Parties).  ECF No. 193.

On May 10, 2019, the Settling Parties filed a motion for partial summary judgment, arguing that the settlement funds should be distributed exclusively to them.  ECF No. 335 at 8.

---

concluded that the purported signatures of Schmdt and Pirozhnikov were forged on the minutes for the April 8, 2016 meeting.  *Id.*

[6] The case was originally filed under Docket No. 16-CV-22484, but was later reassigned Docket No. 17-CV-1338.  ECF No. 194.

On February 24, 2020, Magistrate Judge Lindsay issued a Report and Recommendation recommending denial of the Settling Parties' motion for partial summary judgment. ECF No. 302. On November 30, 2020, Judge Garaufis (to whom the case was now assigned) adopted the Report and Recommendation in full, finding numerous genuine issues of material fact precluded the entry of summary judgment. ECF No. 335 at 12. Specifically, Judge Garaufis found (1) that the Majority Owners have a right to assert claims to the interpleaded funds and that "there is a genuine dispute of material fact as to whether RM, in its present form, legitimately represents the interests of its participants" (ECF No. 335 at 12-14); (2) Schmdt has a right to assert a claim to the interpleaded funds (ECF No. 335 at 15-16); and (3) there is a genuine dispute as to the enforceability of the Division Agreement (ECF No. 335 at 17-19).

On January 10, 2022, the Settling Parties demanded a jury trial on "all issues so triable." ECF No. 359 (the "Jury Demand"). Specifically, the Jury Demand stated: "Defendants/Counter-Plaintiffs/Cross-Plaintiffs, OOO RM INVEST ('RM'), VARWOOD HOLDINGS, LTD. ('VARWOOD'), and TCAHAI HAIRULLAEVICH KATCAEV, a/k/a Tsakhay Katsaev ('Katcaev') (collectively, the 'Settling Parties'), through undersigned counsel and pursuant to Rule 38(b)(1), hereby demand a jury trial of all issues so triable." *Id.* Alan L. Frank Law Associates, P.C. and Frank (the "Frank Parties") filed a motion to strike the Jury Demand. ECF No. 360. The Majority Owners made no submission in connection with the motion to strike the Jury Demand. Ultimately, the Frank Parties' motion to strike was never formally ruled upon, due to a later settlement and dismissal of the Frank Parties, and, as a result, the Court denied the motion as moot. ECF Nos. 362, 370 & 371; October 17, 2022 Order. However, the Settling

6

Parties' Jury Demand has never been withdrawn.

### D. The Majority Owners' Pending Motion for a Jury Trial

On November 4, 2022, the Majority Owners filed a motion seeking a jury trial on the sole claims remaining in the case which are between them and the Settling Parties. ECF No. 375. The Settling Parties oppose this motion. ECF No. 376. The parties disagree whether the only issues remaining in this case -- (1) entitlement to the interpleaded funds ($2.3 million), and (2) the Settling Parties' Crossclaim against Schmdt for unjust enrichment (800,000 Net Element shares) -- are triable by a jury.

In seeking a jury trial, the Majority Owners argue that they are entitled to rely on the Settling Parties' January 10, 2022 Jury Demand, pursuant to Rule 38 of the Federal Rules of Civil Procedure, and contend that the remaining issues are triable by jury. ECF No. 375 at 3-5. The Majority Owners frame the two remaining issues to be tried as follows: (A) "Was the 'Division Agreement' between RM and Varwood a legitimate agreement sufficient to transfer 50% of the settlement funds to Varwood?" and (B) "To whose control should the funds belonging to RM, whether 50% or 100% of the settlement funds, be transferred?" ECF No. 375 at 5. The Majority Owners argue these are contract and internal governance questions that are routinely determined by juries. *Id.* In response to a request for further briefing pursuant to the Court's November 21, 2022 Order, the Majority Owners also argue, *inter alia*, that *Ross v. Bernhard*, 396 U.S. 531 (1970), supports their position, as "[t]he [Supreme] Court held that the claims – including a breach of contract claim – were legal and therefore the right to a jury attached." ECF No. 381 at 1.

In now opposing a jury trial, the Settling Parties argue that (1) the Majority Owners failed to make their own timely jury demand; (2) the remaining issues are not triable as of right; and (3)

7

a jury trial is not available pursuant to Rule 39(b) of the Federal Rules of Civil Procedure.  ECF No. 376 at 1-5.  The Settling Parties further claim that they would be prejudiced by a jury trial, as they purportedly "have never had any reason to believe that entitlement to the interpleaded funds would be decided by a jury."  *Id.*  Additionally, in response to the Court's November 21, 2022 Order, the Settling Parties argue that Judge Garaufis's earlier decision further supports their arguments that the remaining issues are equitable as the Majority Owners each lack sufficient standing.  ECF No. 377.  Finally, they argue that the "*Ross* test" is inapposite and would not require a jury trial.  *Id.*

## II.   LEGAL STANDARD

The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . . "  U.S. Const. amend. VII.  The Supreme Court has defined "[s]uits at common law" to mean suits in which "legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).  Further, in *Ross*, the Supreme Court explained, "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."  396 U.S. at 538.

The right to demand a jury trial is governed by Rule 38, which includes:

> (b) DEMAND. On any issue triable of right by a jury, a party may demand a jury trial by:
>
>> (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and
>>
>> (2) filing the demand in accordance with Rule 5(d).
>
> (c) SPECIFYING ISSUES. In its demand, a party may specify the

8

> issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may—within 14 days after being served with the demand or within a shorter time ordered by the court—serve a demand for a jury trial on any other or all factual issues triable by jury.
>
> (d) WAIVER; WITHDRAWAL. A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.

Fed. R. Civ. P. 38. Retraction of a jury demand under Rule 38 requires the consent of all the parties, and "this requirement permits a party to rely on a jury demand originally made by an adversary." *S.E.C. v. Masri*, 551 F. Supp. 2d 320, 321 (S.D.N.Y. 2008); *see Rosen v. Dick,* 639 F.2d 82, 91 (2d Cir. 1980) (explaining that Rule 38(d) "ensures that one party may rely on another's jury demand"); *Huang v. Shanghai City Corp.*, No. 19-CV-7702 (LJL), 2022 WL 2306870, at *3 (S.D.N.Y. June 27, 2022) ("a properly made demand may be withdrawn only on consent of the parties").

"Encroaching upon the province of juries to decide questions of fact . . . violates not only constitutional rights of the parties in a suit, but also the constitutional rights of the jurors themselves." *In re Longtop Fin. Techs. Ltd. Sec. Litig.,* 32 F. Supp. 3d 464, 474 (S.D.N.Y. 2014) (internal quotations and citations omitted). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Jasco Tools, Inc. v. Dana Corp.,* 574 F.3d 129, 151 (2d Cir. 2009). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor v. Electric Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted); *see Khusenov v. Prokraft Inc.*, No. 21-CV-03703 (HG), 2023 WL 1785527, at *3 (E.D.N.Y. Feb. 6, 2023) ("the court 'may not make credibility

9

determinations or weigh the evidence. Credibility determinations . . . are [a] jury function [], not [that] of a judge.'" (quoting *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 150 (2000)).

### III. DISCUSSION

The Court concludes that (1) the Majority Owners may rely on the Settling Parties' Jury Demand; and (2) the remaining issues are primarily legal as of right and should be tried by a jury.

#### A. The Majority Owners May Rely On The Settling Parties' Jury Demand

The Settling Parties served the Frank Parties with the Jury Demand "within 14 days of receiving the Frank Parties' Amended Answer and Affirmative Defenses" and filed it on January 10, 2022. ECF No. 359 & 360-1 at 2. The Jury Demand "demand[ed] a jury trial of all issues so triable." ECF No. 359. The case law is clear that a party may rely on another's jury demand, as the Majority Owners have done in this case. *See Rosen*, 639 F. 2d at 91 ("one party may rely on another's jury demand"); *Huang*, 2022 WL 2306870, at *3 ("Each other party is entitled to rely on the jury demand for all issues specified in that demand."); *Cheng v. Via Quadronno LLC*, No. 20-CV-8903, 2022 WL 17069800, at *7 (S.D.N.Y. Nov. 17, 2022) ("Once one party has made a jury demand, no other party need make a second demand for the action to be designated 'jury action' and in order to preserve its jury trial right."); *Texas v. Penguin Group (USA) Inc.*, No. 12-CV-3394, 2013 WL 1759567, at *17 (S.D.N.Y. Apr. 24, 2013) ("Once a proper jury demand is made, all other parties affected by the demand may also rely on it.").

Additionally, the Settling Parties never withdrew their demand, as the Majority Owners did not consent to this withdrawal as required under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent."). The

10

Jury Demand by the Settling Parties was properly filed and is now properly relied upon by the Majority Owners.[7]

### B. The Remaining Issues Are Primarily Legal And Should be Tried By A Jury

However, this does not end the analysis, as the next question is whether the issues remaining in this case are properly "triable" to a jury. The Court concludes that, even though this case began as an interpleader action, the remaining issues are primarily matters of contract which are legal in nature (as a result of the Frank Parties' settlement and dismissal). Consequently, they should be determined by a jury as the appropriate fact finder.

While this case started as an interpleader action, which was traditionally a matter of equity, "numerous courts and commentators have now come to the conclusion that the right to a jury should not turn on how the parties happen to be brought to court." *Hyde Properties v. McCoy*, 507 F.2d 301, 305 (6th Cir. 1974) (quoting *Ross*, 396 U.S. at 542). "The historical characterization of the former is no longer determinative of the jury claim." *Id*.; *see Dairy Queen Inc., v. Wood*, 369 U.S. 469, 473 (1962) (holding that where both legal and equitable issues are presented in the same case, if the demand for a jury is timely and properly made, it is to be upheld); *see also United States v. ERR, LLC*, 35 F.4th 405, 415 (5th Cir. 2022) (considering a subrogation action and holding there was a right to a jury when the nature of the action

---

[7] Even if the Jury Demand was not properly brought and/or was properly withdrawn, the Court could order a jury trial pursuant to Fed. R. Civ. P. 6(b)(1)(B) due to excusable neglect. *See Raymond v. Int'l Business Machines Corp.*, 148 F.3d 63, 66-67 (2d Cir. 1998) (holding that a court could order a jury trial due to excusable neglect, considering factors such as prejudice, reason for delay, duration, and whether the movant acted in good faith). These factors favor the Majority Owners here, as there is good cause for delay in light of their reasonable reliance on the Settling Parties' Jury Demand, and there would be no clear prejudice in this case because, as previously argued by the Settling Parties, "(1) this case had already been set for a jury trial *twice*;" and "(2) [previous court filings] reflect the parties' long-held assumption that there would be a jury trial." ECF No. 360-1 at 5-6.

11

centered on legal issues); *Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.*, 425 F. Supp. 3d 165, 170 (E.D.N.Y. 2019) ("a jury trial depends upon 'the nature of the issue, rather than the character of the overall action.'" (quoting *Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011)); *Wachovia Bank, Nat'l Ass'n v. Ming Tien*, No. 04-20834-CIV, 2006 WL 8433228, at *6 (S.D. Fla. Dec. 5, 2006) ("If the underlying disputes would have been tried at law, the party is entitled to a jury trial as a matter of right.").

The remaining triable issues include (1) the enforceability of the Division Agreement, (2) the distribution of the funds pursuant to the Settlement Agreement, and (3) unjust enrichment claims against Schmdt regarding the Net Element stock. The first two issues are primarily matters of contract and corporate governance, which are legal in nature even though there may be some equitable determinations to be made. *See, e.g., Ross*, 396 U.S. at 542 (finding issues of contract law to be legal in nature); *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("[A] claim for money due and owing under a contract is quintessentially an action at law." (internal quotations and citations omitted)); *Dairy Queen*, 369 U.S. at 473 (finding a jury trial should be held in a case involving breach of contract issues); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988) ("When an action involves both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the parties have a right under the Seventh Amendment to have the legal claims tried to a jury."); *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 237 (S.D.N.Y. 2021) ("breach of contract [is] legal in nature and thus [parties] are entitled to a jury trial."); *Reliability Rsch. Inc. v. Computer Assocs. Int'l, Inc.*, 851 F. Supp. 58, 60 (E.D.N.Y. 1993) ("It is well established that the right to jury trial of legal issues remains even in a case

12

involving both legal and equitable claims." (citing *Tull v. United States*, 481 U.S. 412, 425 (1987); *Resnick v. Resnick*, 763 F. Supp. 760, 766 (S.D.N.Y. 1991) ("when a federal court is presented with a case involving both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the party making the demand has a right to have the legal claims tried to a jury")). Additionally, an unjust enrichment claim may be properly considered by a jury trial, especially here, where there is a clear overlap of the issues in this trial. *See ERR, LLC*, 35 F.4th at 414 (holding that an overlap of issues requiring a jury trial warranted a trial on all the issues to preserve Seventh Amendment rights); *Oorah, Inc. v. Schick*, 552 F. App'x 20, 23 (2d Cir. 2014) (finding unjust enrichment claims were "properly before a jury"); *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (appeal of sufficiency of evidence supporting jury verdict on unjust enrichment claims); *Buchwald v. Renco Grp.,* 539 B.R. 31, 48-51 (S.D.N.Y. 2015), *aff'd sub nom. Matter of Magnesium Corp. of Am.,* 682 F. App'x 24 (2d Cir. 2017) (unjust enrichment claim tried by a jury).

The Court rejects various other arguments by the Settling Parties in now opposing a jury trial. First, as explained herein, the Court disagrees with the Settling Parties' arguments that the Majority Owners' request for a jury trial was untimely, given the Settling Parties' earlier Jury Demand at ECF No. 359. ECF No. 376 at 1-2. The Court does not agree that the Settling Parties' Jury Demand was limited to the now-dismissed claims, and the Court further finds that it was reasonably relied upon by the Majority Owners. Additionally, the Court is not persuaded by the Article III arguments from the Settling Parties that Magistrate Judge O'Sullivan and Judge Garaufis previously found that the Majority Owners could not assert a claim on behalf of RM, did not have standing to bring their own claims, and could only litigate the distribution of the funds. ECF No. 376 at 2-3 (citing ECF No. 335 at 13). The Court is not persuaded that these

13

prior decisions now prohibit a jury trial, because the nature of the remaining issues are legal in nature and center primarily on contract law. The Court also rejects the arguments of the Settling Parties that there are no remaining factual issues to be decided at trial. *Id*. at 3-4. The Court contemplates numerous factual determinations for a jury to make concerning the Settlement Agreement, the enforceability of the Division Agreement, and the unjust enrichment claim. The Court is further not persuaded that the Settling Parties would be prejudiced by a jury trial, as the record clearly suggests they contemplated a jury trial in this case (as evidenced by their filing of the Jury Demand and up until their opposition to a jury trial recently manifested itself). *See id*. at 4. Practical concerns raised by the Settling Parties also do not weigh against a jury trial here; the Court may proceed to bifurcate issues or instruct the jury as necessary on the law (both Russian and domestic) as necessary. *See id.* at 5; ECF No. 377 at 3.

Finally, Judge Garaufis's earlier decision denying summary judgment noted several relevant issues of material fact, which should be determined by a jury. ECF No. 335. First, Judge Garaufis found "a genuine dispute of material fact as to whether RM, in its present form, legitimately represents the interests of its participants" (*id.* at 14); "a genuine dispute of material fact as to whether the Majority Owners are entitled to some portion of the interpleaded funds" (*id.* at 23); and a genuine dispute as to the enforceability of the Division Agreement (*id*. at 17-19). Judge Garaufis also contemplated that a jury would make these factual determinations: "[i]f, as the Majority Owners assert, RM was entitled to the full value of the interpleaded funds and possessed no other material assets, a *jury* could reasonably conclude that the distribution of proceeds contemplated by the Division Agreement met the criteria for a 'major transaction' that could only be executed with the authorization of RM's participants."[8] *Id*. at 18 (emphasis

---

[8] In trying to avoid Judge Garaufis's explicit reference to a "jury" making this factual determination, the Settling Parties argue that this was just "a generic reference to the fact-finder"

14

added). Although this prior order is not necessarily determinative on the current motion, it further suggests that a jury trial would be appropriate to determine the remaining factual issues in this case.[9]

## IV. CONCLUSION

For the reasons set forth above, the Court grants the Majority Owners' request for a jury trial of the remaining claims.

Dated: Central Islip, New York
       March 16, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge

---

and that "Judge Garaufis's intent to reference a non-specific fact-finder" can be found in other sections of his decision denying partial summary judgment. ECF 377 at 2 fn. 2. The Court is unconvinced by this after-the-fact effort to divine Judge Garaufis's intent in referencing a "jury" as the factfinder. Moreover, the Settling Parties never filed any motion seeking that Judge Garaufis correct any mistake in referencing "a jury" in his decision. *See* Fed. R. Civ. P. 60(b)(1). In fact, the Settling Parties subsequently filed their own demand for "a jury trial of all issues so triable." ECF 359.

[9] The Court will make any determinations about Russian law, pursuant to Fed. R. Civ. P. 44.1 (concerning foreign law issues), but this does not deprive the Majority Owners of their right to a jury trial on the factual issues in this case.