UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

ALAN L. FRANK LAW ASSOCIATES, P.C.,

        Plaintiff,        No. 17-CV-1338 (LGD)

v.

OOO RM INVEST, VARWOOD HOLDINGS,
LTD., TCAHAI HAIRULLAEVICH KATCAEV,
SASHA SCHMDT, and SERGEY PIROZHNIKOV,

        Defendants.

---------------------------------------------------------X

## PROPOSED JURY CHARGES

Defendants/Cross-Plaintiffs, OOO RM INVEST ("**RM**"), VARWOOD HOLDINGS, LTD. ("**Varwood**"), and TCAHAI HAIRULLAEVICH KATCAEV ("**Katcaev**") (collectively, the "**Settling Parties**"), Defendant/Cross-Defendant SASHA SCHMDT ("**Schmdt**") and Defendant SERGEY PIROZHNIKOV ("**Pirozhnikov**") through undersigned counsel and pursuant to the Court's Order dated April 3, 2023 [ECF No. 398], hereby file the following Proposed Jury Charges[1]:

### Preliminary Instructions

**1:1.   Introduction to Jury[2]**

Members of the jury, we are about to start the trial of this case, about which you have heard some details during jury selection. Before the trial begins, however, I will provide you with certain instructions to help you understand what you will hear and see, and to guide your conduct during the trial.

**1:2.   Parties**

---

[1] The parties expect that this document may require revision depending on the Court's ruling(s) following the hearing scheduled for June 1, 2023.

[2] New York Pattern Jury Instructions ("**PJI**") 1:1.

The party who brings a lawsuit is called the plaintiff. In this action, which is a special type of action called an "interpleader action," the plaintiff, ALAN L. FRANK LAW ASSOCIATES, P.C., deposited approximately $2,312,000.00 with the Court, and asked the Court to determine who should receive those funds, together with approximately $182,000.00 of interest that has accrued since the time those funds were deposited. You may hear the approximately $2,494,000.00 on deposit with the Court referred to as the "**Deposited Funds**."

The plaintiff is not making any claim to the Deposited Funds and is no longer a party in the case.

Instead, there are two (2) groups of defendants who have competing claims to the Deposited Funds.

The first group of defendants consists of (1) OOO RM INVEST, which is a limited liability company organized under the laws of Russia, which you may hear referred to as "**RM Invest**" or "**RM**"; (2) VARWOOD HOLDINGS LIMITED, which is a company organized under the laws of Belize, which you may hear referred to as "**Varwood**"; and (3) TCAHAI KATCAEV, who is an individual, who you may hear referred to as "**Zahar**" or as "**Mr. Katcaev**."

The second group of defendants consists of (1) SASHA SCHMDT, an individual, who you may hear referred to as "**Mr. Schmdt**"; and (2) SERGEY PIROZHNIKOV, an individual, who you may hear referred to as "**Mr. Pirozhnikov**."

RM, Varwood, and Mr. Katcaev were clients of the plaintiff, and were represented by the plaintiff in a lawsuit in which each of them were seeking monetary damages. The parties to that lawsuit—including RM, Varwood, and Mr. Katcaev—entered into a settlement agreement whereby $2,800,000.00 was paid to the plaintiff for the benefit of RM, Varwood, and Mr. Katcaev. You may hear that agreement referred to as the "**Settlement Agreement**."

That Settlement Agreement, however, does not specify how that money was to supposed to be divided between RM, Varwood, and Mr. Katcaev. But rather than resolving that issue, the plaintiff deposited the settlement funds (minus his legal fees) with the Court, leaving it to the Court to decide how those funds should be divided.

In an effort to resolve that controversy, RM, Varwood, and Mr. Katcaev entered into a written agreement, which you may hear referred to as the "**Division Agreement**," whereby Varwood is to receive $212,000.00 of the Deposited Funds for reimbursement of its expenses in the settled lawsuit, with the remainder of the funds to be divided 50/50 between RM and Varwood. Mr. Katcaev makes no claim to the Deposited Funds.

Mr. Schmdt and Mr. Pirozhnikov, who were "participants" in RM—which is comparable to having a membership interest in a U.S. limited liability

company—at the time of the settlement, take the position that the Division Agreement is invalid under Russian law, and that all of the deposited funds should be allocated to RM.

Mr. Schmdt and Mr. Pirozhnikov also take the position that RM's current management does not legitimately represent the interests of the company, and so they are asking that the Deposited Funds not be paid to RM directly, but instead to RM's participants in proportion to their participation interests at the time of the October 2015 settlement. That is, Mr. Schmdt and Mr. Pirozhnikov are asking for fifty percent (50%) of the Deposited Funds be paid to Mr. Schmdt; twenty-five percent (25%) of the funds to be paid to Mr. Pirozhnikov; and the remaining twenty-five percent (25%) of the funds to be paid to Mr. Katcaev.

RM, Varwood, and Mr. Katcaev oppose any of the Deposited Funds being paid to Mr. Schmdt or Mr. Pirozhnikov on the grounds that: (1) neither Schmdt nor Pirozhnikov were among the "plaintiffs" for whom the settlement funds were paid under the Settlement Agreement; (2) because there is no legal basis for the settlement funds that are rightfully paid to RM to instead be paid to RM's participants; and (3) because Mr. Schmdt is no longer a participant in RM, and because Mr. Pirozhnikov's current participation interest in RM is only 0.3 percent.

In addition, RM, Varwood, and Mr. Katcaev have a cross-claim against Mr. Schmdt for stock that Mr. Schmdt received under the Settlement Agreement, which Mr. Schmdt then sold for approximately $272,500.00. It is RM, Varwood, and Mr. Katcaev's position that this stock was issued to Mr. Schmdt as a matter of convenience because—unlike RM, Varwood, or Mr. Katcaev—Mr. Schmdt is a U.S. citizen. It is also RM, Varwood, and Mr. Katcaev's position that Mr. Schmdt gave nothing of value to anyone in exchange for that stock, and that it would be inequitable for him to retain the $272,500.00 of proceeds he received from the sale of that stock, without paying fair value to the plaintiffs in the settled lawsuit for whose benefit that stock was issued, namely RM, Varwood, and Mr. Katcaev

## 1:3    Openings and Evidence[3]

When I have completed these instructions, the attorneys will make opening statements in which each will outline for you what he expects to prove. The purpose of opening statements is to tell you about each party's contentions so you will have a better understanding of the evidence as it is introduced. What is said in opening statements is not evidence. The evidence upon which you will base your decisions will come from the testimony of witnesses here in court or in sworn testimony given before trial, or in the form of photographs, documents, or other exhibits admitted into evidence.

In this case, Mr. Schmdt and Mr. Pirozhnikov will make an opening statement first, followed by RM Invest, Varwood, and Mr. Katcaev. After the

---

3 PJI 1:3.

opening statements, Mr. Schmdt and Mr. Pirozhnikov will introduce evidence in support of their claims. Normally a party must introduce all of their witnesses and complete their entire case before the opposing party introduces any evidence, although exceptions are sometimes made. After the opposing party has completed the introduction of all their evidence, the other party may, but is not required to, present witnesses and exhibits. If they do so, then the other party may, but is not required to, offer additional evidence for the purpose of rebuttal. A witness is examined by the party who calls that witness to testify, and then may be questioned by the opposing party in cross-examination. Additional questioning may occur.

### 1:4    Objections, Motions[4]

At times during the trial, an attorney may object to a question or to the introduction of an exhibit or make motions concerning legal questions that apply to this case. Arguments in connection with objections or motions sometimes are made outside the presence of the jury. Any ruling I make will be based solely on the law and therefore you must not conclude from any ruling or from anything I say during the trial that I favor any party to this lawsuit.

### 1:5    Summations[5]

After all the evidence is in, the attorneys will speak to you in a closing statement or summation. In summing up, the lawyers will point out what they contend the evidence has shown, what inferences or conclusions they contend you should draw from the evidence, and what conclusions they contend you should reach as your verdict. What attorneys say in summation, like what they say in jury selection, opening statements, or in the making of objections or motions during the trial, is only argument and not evidence. Mr. Schmdt and Mr. Pirozhnikov will sum up first, followed by RM, Varwood, and Mr. Katcaev.

### 1:6    Function of Court and Jury[6]

After summations, I will instruct you on the rules of law that apply to this case. You then will retire for your deliberations. Your function as jurors is to decide what has or has not been proved and to apply the rules of law I give you to the facts as you find them to be. The decisions you reach will be your verdict. Your decisions will be based on the testimony you hear and the exhibits received in evidence during the trial. You are the sole and exclusive judges of the facts and nothing I say or do should be taken by you as any indication of my opinion as to the facts. My role is to preside impartially and not to express any opinion concerning the facts. Any opinion of mine on the facts would, in any event, be totally irrelevant because the facts are for you to decide. On the other hand, and with equal emphasis, I instruct

---

4 PJI 1:4.

5 PJI 1:5.

6 PJI 1:6.

you that in accordance with the oath you took as jurors you must accept the rules of law I give you whether or not you agree with them. You are not to ask anyone else about the law. You must not consider or accept any advice about the law from anyone other than me.

### 1:7 Consider Only Competent Evidence[7]

As the sole judges of the facts, you must decide which of the witnesses you believe, what portion of their testimony you accept and what weight you give to it. At times during the trial I may sustain objections to questions, and you may hear no answer, or, where an answer has been given, I may instruct that it be stricken or removed from the record and that you disregard it. You may not draw any inference or conclusion from an unanswered question nor may you consider testimony that has been stricken or removed from the record in reaching your decisions. The law requires that your decisions be made solely on the evidence before you. Any items I exclude from your consideration will be excluded because they are not legally admissible.

### 1:7A Impartiality[8]

A lawsuit is a civilized method of determining disputes. It is basic to the administration of any system of justice that the decisions on both the law and the facts be made fairly and honestly. You as the jurors and I as the court have a heavy responsibility—to act impartially and to ensure a just result is reached in deciding the dispute between the parties in this case.

### 1:7B Fair Juror and Absence of Implicit or Unconscious Bias[9]

As a fair and impartial juror you must guard against the application of any stereotypes or attitudes about people or groups that might lead you to render a decision based on those stereotypes or attitudes. Keep in mind that bias is not always obvious or conscious. In assessing the testimony and other evidence in the case, you must not be swayed by those stereotypes or attitudes.

### 1:8 Weighing Testimony[10]

The law does not require you to accept all the evidence I will admit. In deciding what evidence you will accept you must make your own evaluation of the testimony given by each of the witnesses, and decide how much weight, if any, you choose to give to that testimony. The testimony of a witness may not conform to the facts as they occurred because he is intentionally lying, because the witness did

---

7 PJI 1:7.

8 PJI 1:7A.

9 PJI 1:7B.

10 PJI 1:8.

not accurately see or hear what he or she is testifying about, because the witness's recollection is faulty, or because the witness has not expressed himself clearly. There is no magical formula by which you evaluate testimony. You bring with you to this courtroom all the experience and background of your lives. In your everyday affairs, you decide for yourselves the reliability or unreliability of things people tell you. The same tests you use in your everyday dealings are the tests you should apply in your deliberations. In deciding how much weight, if any, you will give to a witness's testimony, you may consider the interest or lack of interest of that witness in the outcome of this case, the bias or prejudice of the witness, if there by any, the age, the appearance, the manner in which the witness gives testimony on the stand, the opportunity and ability the witness had to observe the facts about which he or she testifies, and the probability or improbability of the witness's testimony when considered in light of all the other evidence in the case. If it appears there is a conflict in the evidence, you should decide whether and to what extent the apparent conflict can be reconciled by fitting the different versions together. If you cannot do so, you will have to decide which of the conflicting versions you will accept, if any.

**1:9    Conduct During the Time You Serve as a Juror[11]**

To help make sure a just result is reached when you decide this case, consistent with the oath you took as a juror, there are several rules that must govern your conduct during the time you serve as a juror.

**1:11    Discussion Among Jurors—Keep an Open Mind—Independent Research[12]**

In fairness to the parties to this lawsuit, it is very important for you to keep an open mind throughout the trial. You must reach your decision and verdict on the evidence only as it is admitted during this trial, and then only after you have heard the summations of the attorneys and my instructions to you on the law. Then you will exchange your views and opinions with the other members of the jury to reach your decisions and verdict.

While it is human nature for you to form tentative opinions about the witnesses, testimony and other evidence as the trial progresses, and there is a strong temptation to discuss those opinions during the course of the trial, the law does not permit it. The reason for this is that if you engage in premature discussions, without the benefit of all the evidence, the summations by the lawyers, and my final instructions on the law, your discussions will not be fully informed. That would be unfair to the parties.

For this reason, among others, do not do any independent research on any topic you might hear about in this case, whether by consulting others, reading any material or conducting internet searches of any kind. Some of the topics you are not

---

11 PJI 1:9.

12 PJI 1:11.

to discuss or research are the law or any of the issues in this case. You also must not discuss or do research about the parties, the lawyers, the witnesses, or me. After you have rendered your verdict and have been discharged, you will be free to do any research you choose, or to share your experiences. Remember these rules while you are serving as a juror, whether in the courtroom or elsewhere, including whenever you use a computer or other personal electronic device. It is vital that you carefully follow these directions. The law requires that you consider only the testimony and other evidence admitted at this trial. Not only does our law mandate it, but the parties depend on you to fairly and impartially consider only the admitted evidence. To do otherwise, by allowing outside information, which may be incomplete, inaccurate, or otherwise unreliable, to affect your judgment, would be unfair and prejudicial to the parties and could require a retrial of this case.

All cell phones, smartphones, or any other personal electronic devices must be turned off while you are in the courtroom and while you are deliberating.

**1:12   Discussion with or by Others[13]**

Do not talk, either among yourselves or with anyone else, about anything related to this case. You may tell people you are a juror and give them information about when you will be required to be in court, but you must not talk with anyone about any other matters related to this case.

You must not provide any information about this case to anyone by any means whatsoever. This means you must not discuss or give or get information about any matter related to this case by telephone, text message, email, or any internet services or social media, including, for example, blogs, chat rooms, Google, Facebook, Twitter, LinkedIn, Instagram, TikTok, or any other platform.

You must not permit any person who is not a juror to talk about this case in your presence, and if anyone does so despite your telling that person not to, report that to me as soon as you are able. However, you must not discuss with your fellow jurors either that fact or any other fact you feel necessary to bring to my attention.

**1:13   Conversation with Parties, Attorneys or Witnesses[14]**

Although it is a normal human tendency to talk to people with whom you come in contact, during the time you serve on this jury, do not talk, whether in or out of the courtroom, with any of the parties or their attorneys or any witness. By this I mean not only do not talk about the case, but do not talk to them at all, even to pass the time of day. In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors. If a lawyer, party or

---

13 PJI 1:12.

14 PJI 1:13.

witness does not acknowledge you, that person is not being rude, but is merely following my instructions not to speak with you.

The parties and the attorneys involved in this case, or people working with them on this case, may properly look at a juror's public website, public social media, posts or blogs, or your social media profiles that are publicly accessible. This may have occurred during jury selection, and also may occur during the course of this trial, during deliberations, and after the trial has ended. While the parties and attorneys may look at your public media, they may not communicate with you through public media or any other way during the trial and deliberations.

In fact, nobody may communicate with you about the case for any reason in any manner during the course of this trial or during the time you are deliberating. If you believe anyone has attempted to communicate with you, in any manner about the case, let me know as soon as possible. You should not communicate about the case with anyone other than me or the court officer.

### 1:13A  Juror Concerns[15]

During this trial circumstances may arise when a juror has a need to bring a matter to my attention. Should any one of you find yourself in that situation, please notify our court officer, either orally or through a note, that you need to speak to me, and I will then instruct you further. Do not tell any other juror or anyone else about the matter you seek to bring to my attention.

### 1:13B  Alternate/Additional Jurors[16]

Under the law only six jurors will deliberate on this case. We have selected additional jurors because at some time during the trial a juror may be unable to continue service due to some emergency. All of you are required to pay the same careful attention during the trial so that each of you will be fully familiar with the case. The fact that there are additional jurors does not mean that any juror is free to excuse himself or herself from the case. As a duly sworn juror it is your obligation to be available and attentive throughout the trial.

### 1:13C  Juror Note-Taking[17]

If you want you may take notes and we will provide note taking materials to you. Whether you take notes or not, you should be aware that the court reporter records everything stated in the courtroom, and any portion of the transcript, at your request, will be read back to you during your deliberations. If you do take notes during the trial, you should not allow your notetaking to become a distraction from the proceedings. If any of you do take notes during the trial, those notes are only

---

15 PJI 1:13A.

16 PJI 1:13B.

17 PJI 1:13C.

for your personal use and can only be used as an aid to your memory. Any difference between any juror's recollection and any juror's notes should always be settled by asking to have the court reporter's transcript on that point read back to you. The court transcript should govern your deliberations and determinations rather than a juror's notes. A juror's notes are not a substitute for the official record or for the governing principles of law that I will give to you during and at the end of the trial. Your notes are confidential and will be collected and secured at the end of each session and destroyed at the end of the trial.

**1:13D  Juror Questioning[18]**

If any of you has a question you would like to ask a witness or the court, please write the question on a piece of paper, which the court officer will deliver to me. I will decide whether and how the question may be asked, and what procedure to follow.

**1:14  Conclusion[19]**

The description of trial procedure, the rules governing your conduct and the legal principles I have described for you will, I believe, make it easier for you to understand the trial as it proceeds and to reach a just result at its conclusion.

**<u>Post-Evidence Instructions</u>**

**1:20  Introduction[20]**

Members of the jury, we now come to that portion of the trial when you are instructed on the law that applies to the case, after which you will retire for your deliberations. You have heard and seen all the evidence introduced by the parties and through arguments of their attorneys you have learned the conclusions each party believes should be drawn from the admitted evidence.

**1:21  Review Principles Stated[21]**

You will recall that at the beginning of the trial I stated certain principles. Briefly, they were that you are bound to accept the rules of law as I give them to you whether or not you agree with them. You are not to ask anyone else about the law. You must not consider or accept any advice about the law from anyone other than me.

---

18 PJI 1:13D.

19 PJI 1:14.

20 PJI 1:20.

21 PJI 1:21.

During this trial I have ruled on the admission of evidence and on motions made with respect to the applicable law. You must not conclude from any ruling I have made, any questions I might have asked or anything I have said that I favor any party to this lawsuit.

Your view of the evidence and your decisions on the issues of fact will decide this case. During the trial, I may have sustained objections to questions without allowing the witness to answer or where an answer was made, instructed that it be removed or stricken from the record, and that you disregard it and dismiss it from your minds. In reaching your decisions, you may not draw any inference or conclusion from an unanswered question, nor may you consider testimony that has been removed or stricken from the record. The law requires that your decisions be made solely on the admitted evidence. Anything I excluded from your consideration was excluded because it was not legally admissible.

In deciding how much weight, if any, you choose to give to the testimony of any particular witness, there is no magical formula that can be used. The tests used in your everyday affairs to decide the reliability or unreliability of statements made to you by others are the tests you will apply in your deliberations. In deciding how much weight, if any, to give to a witness' testimony, you may consider the interest or lack of interest of that witness in the outcome of the case, the bias or prejudice of the witness, if there be any, the age, the appearance, the manner in which the witness gave testimony on the stand, the opportunity and ability the witness had to observe the facts about which he or she testified, and the probability or improbability of the witness' testimony when considered in the light of all the other evidence in the case. If it appears there is a conflict in the evidence, you will have to consider whether and to what extent the apparent conflict can be reconciled by filling the different versions together; otherwise, you will have to decide which of the conflicting versions, if any, you will accept.

By the processes I have just described and any further instructions I may give, you, as the sole judges of the facts, decide which of the witnesses you believe, what portion of their testimony you accept and what weight you give to it.

## 1:22    Falsus in Uno[22]

If you find that any witness has willfully testified falsely as to any important matter, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one important matter is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unbelievable. You may accept so much of the witness' testimony as you deem true and disregard what you deem is false.

---

[22] PJI 1:22.

**1:23    Burden of Proof[23]**

The burden rests on Mr. Schmdt and Mr. Pirozhnikov to prove: (1) that the Settlement Proceeds Division Agreement is a major transaction that was undertaken without the approval of RM Invest's participants; and (2) that the funds belonging to RM Invest should not be disbursed to RM Invest, but should instead be disbursed to RM Invest's participants as of October 2015 in proportion to their participation interests.

The burden rests on RM Invest, Varwood Holdings, and Mr. Katcaev to prove: (1) that the Settlement Proceeds Division Agreement was approved by a general meeting or RM Invest's participants; and (2) that Mr. Schmdt has been unjustly enriched by his receipt of 800,000 shares of Net Element stock, which he subsequently sold for $272,507.02.

That means that each party must establish by a fair preponderance of the credible evidence that the claims they are making are true. The credible evidence means the testimony and exhibits you find believable and reliable. The preponderance of the evidence means the greater part of the evidence. It does not mean the greater number of witnesses or the greater length of time taken by any party.

The phrase refers to the quality of the evidence, that is, its convincing quality, the weight and effect it has on your minds, not to the quantity. The law requires that for a party to prevail on its claim, the evidence that supports the claim must appeal to you as more nearly representing what took place than the evidence opposed to the claim. If it does not, or if it weighs so evenly that you are unable to say there is a preponderance on any side, then you must decide the question against the party with the burden of proof on that particular claim. It is only if the evidence favoring the claim outweighs the evidence opposed to it that you can find in favor of the party with the burden of proof on that particular claim.

**1:24    Return to Courtroom[24]**

If, during your deliberations, your recollection of any part of the testimony should fail, or if you have any question about my instructions to you on the law, then you have the right to return to the courtroom for the purpose of having the testimony read to you or your question addressed.

**1:25    Consider Only Testimony and Exhibits[25]**

In deciding this case, you may consider only the exhibits that were admitted in evidence and the testimony of the witnesses as you have heard it in this

---

23 PJI 1:23 as modified.
24 PJI 1:24.

25 PJI 1:25.

courtroom. However, arguments, remarks, and summations of the attorneys are not evidence, nor is anything I now say or may have said with regard to the facts, evidence. As I instructed you previously, it is important to remember that you may not use any internet services or social media, including for example, Google, Facebook, Twitter, LinkedIn, Instagram, or TikTok or other media platforms, to discuss or give or get information about the case or its participants or to research topics concerning the trial. Electronic devices including any cell phones, smartphones, or any other personal electronic devices must be turned off while you are deliberating. Allowing outside information which may be incomplete, inaccurate, or otherwise unreliable to affect your judgment is unfair and prejudicial to the parties and could require this case to be retried.

**1:25A  Juror's Use of Professional Expertise[26]**

Although as jurors you are encouraged to use all of your life experiences in analyzing testimony and other evidence and reaching a fair verdict, you may not communicate any professional expertise you might have or other facts not in evidence to the other jurors. You must base your discussions and decisions solely on the evidence admitted during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

**1:25B  Juror Note Taking[27]**

You will recall that I previously permitted you to take notes during the trial and that I gave you instructions about note-taking. Now that you are about to begin deliberations, I want to remind you about those instructions. Whether you have taken notes, or not, you should be aware that the court reporter has recorded everything that was stated in the courtroom. At your request, any portion of the transcript will be read back to you. If you took notes during the trial, you will be allowed to take those notes into the jury room with you. I want to stress, however, that those notes are only for your personal use and are simply an aid to your memory. Because the notes may be inaccurate or incomplete, they may not be given any greater weight then your independent recollection. Similarly, because the notes may be inaccurate or incomplete, they may not be given any greater weight or influence than the recollection of other jurors about the facts or the conclusions to be drawn from the facts in determining the outcome of the case. Those of you who have not taken notes should rely upon your independent recollection of the evidence and not be influenced by the fact that another juror has taken notes. Any difference between any juror's recollection and any juror's notes should always be settled by asking to have the court reporter's transcript on that point read back to you. The court transcript should govern your deliberations rather than a juror's notes. A juror's notes are not a substitute for the official record or the governing principles of law that I gave you during the trial and am now giving to you. Your notes are

---

26 PJI 1:25A.

27 PJI 1:25B.

confidential and will be collected and destroyed once you have rendered your verdict.

## 1:25C  General Instruction—Interested Witness—Generally[28]

Mr. Katcaev, Mr. Schmdt, and Mr. Pirozhnikov each testified before you. As parties to the action, each are interested witnesses, that is, they have an interest in the outcome of the case that may have affected their testimony.

An interested witness is not necessarily less believable than a disinterested witness. The fact that he is interested in the outcome of the case does not mean that he has not told the truth. It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his interest. You may reject the testimony if, after careful consideration of all the evidence in the case, including the cross-examination of the witness, you decide that you do not believe the testimony or you find it is not reliable. On the other hand, you are not required to reject the testimony of such a witness and may accept all or such part of his testimony as you find believable and reject such part as you find unworthy of acceptance. The testimony is entitled to such weight as you decide it is worth.

## 1:26  General Instruction—Special Verdicts[29]

This case will be decided on the basis of answers you give to written questions that will be submitted to you. Each of the questions call for a "Yes" or "No" answer, percentage, or dollar amount. While it is important that the views of all jurors be considered, five of the six of you must agree on the answer to any question, but the same five persons need not agree on all the answers. When five of you have agreed on any answer, the foreperson of the jury will write the answer in the space provided for each answer and each of you will sign in the appropriate place to indicate your agreement or disagreement. Each question will be followed by an instruction as to how you will proceed based upon your answer to that question.

If you disagree with an answer that five jurors have agreed upon, you should not stop deliberating and you should not stop voting on the rest of the questions that need to be answered. In other words, you should continue participating in the deliberations and voting on all questions that require answers. When you have answered all the questions that require answers, report to the court.

---

28 PJI 1:25C as modified.

29 PJI 1:26 as modified.

**1:27 Exclude Sympathy[30]**

In reaching your verdict you are not to be affected by sympathy for any of the parties, what the reaction of the parties or the public to your verdict may be, whether it will please or displease anyone, be popular or unpopular or, indeed, any consideration outside the case as it has been presented to you in this courtroom. Your verdict will be determined by the conclusions you reach, no matter whom the verdict helps or hurts.

**1:27A Fair Juror and Absence of Implicit or Conscious Bias[31]**

You may recall that at the beginning of the trial I instructed you on the concept of a fair juror. As a fair and impartial juror you must guard against the application of any stereotypes or attitudes about people or groups that might lead you to render a biased decision based on those stereotypes or attitudes. Keep in mind that bias, based upon stereotypes or attitudes, is not always obvious or conscious. In assessing the testimony and other evidence in the case, you must not be swayed by those stereotypes or attitudes.

**1:28 Jury Function[32]**

As jurors, your duty is to decide, from all the testimony that you have heard and the exhibits that have been admitted into evidence, what the facts are. You are the sole and exclusive judges of the facts. Neither I nor anyone else can take over your responsibility to decide the facts of this case, which you will do by the answers you provide on the verdict sheet. As sole judges of the facts, you must decide which of the witnesses you believe, what portion of their testimony you accept, and what weight you give to it.

**Validity of Settlement Proceeds Division Agreement**

Mr. Schmdt and Mr. Pirozhnikov take the position that the Settlement Proceeds Division Agreement is a "major transaction" under Russian law because it involves the alienation of more than twenty-five percent (25%) of RM Invest's assets at the time of the October 2015 settlement.

RM Invest, Varwood Holdings, and Mr. Katcaev argue that the agreement does not give away any of RM's assets and therefore does not involve an alienation, which is an essential condition of a "major transaction." RM Invest, Varwood Holdings, and Mr. Katcaev further argue that even if the Division Agreement were a "major transaction," it was approved by a general meeting of RM's participants in May 2021, and is thus valid.

---

30 PJI 1:27.
31 PJI 1:27A.

32 PJI 1:28.

In order to establish that the Division Agreement is a "major transaction" under Russian law, Mr. Schmdt and Mr. Pirozhnikov must prove that the agreement is associated with the alienation by RM Invest of assets whose value comprises more than 25 percent (25%) of the value of the company's property, estimated on the basis of accounting data.

If the preponderance of the evidence does not support Mr. Schmdt and Mr. Pirozhnikov's claim, then your verdict should be that the Division Agreement is not a "major transaction."

But if the preponderance of the evidence does support Mr. Schmdt and Mr. Pirozhnikov's claim that the Division Agreement is a "major transaction," you will need to decide whether that transaction was approved by a general meeting of RM Invest's participants.

If the preponderance of the evidence shows that the Division Agreement was approved by a general meeting of RM Invest's participants, then the agreement is valid and the funds in the Court Registry will be disbursed in accordance with that agreement.

But if the preponderance of the evidence shows that the Division Agreement is a "major transaction" that was never approved by a general meeting of RM Invest's participants, then that agreement is invalid and you, the jury, will need to decide what percentage of the registry funds belongs to RM Invest and what percentage of the registry funds belongs to Varwood Holdings.

It is RM Invest, Varwood Holdings, and Mr. Katcaev's position that those funds should be divided 50/50 between RM and Varwood; and it is Mr. Schmdt and Mr. Pirozhnikov's position that 100 percent of those funds belong to RM.

**Disbursement of RM's Share of Registry Funds**

Mr. Schmdt and Mr. Pirozhnikov claim that RM Invest's current management does not legitimately represent the interest of the company, and so whatever portion of the registry funds belongs to RM should not be paid to RM, and should instead be paid to RM's participants in proportion to their interests as of the October 2015 settlement, that is: fifty percent (50%) to Mr. Schmdt, twenty-five percent (25%) to Mr. Piroznikov, and twenty-five percent (25%) to Mr. Katcaev.

It is RM Invest's position that the company's money should be paid to the company, and that there is no legal or factual basis that the company should be disregarded and its money should be paid to its participants. It is also RM Invest's position that Mr. Schmdt is no longer a participant in RM, and that Mr. Pirozhnikov's interest in RM is only 0.3%, and so there is no reason whatsoever for them to be receiving a combined seventy-five percent (75%) of RM's money.

If the preponderance of the evidence shows that RM Invest's participants are entitled to divide RM's share of the registry funds in proportion to their interests in the company as of the October 2015 settlement, then your verdict should be that RM's share of the registry funds should be disbursed fifty percent (50%) to Mr. Schmdt, twenty-five percent (25%) to Mr. Piroznikov, and twenty-five percent (25%) to Mr. Katcaev.

If the preponderance of the evidence does not show that RM Invest's participants are entitled to RM's share of the registry funds, then your verdict should be that RM's share of those funds should be disbursed to RM.

**4:2    Contracts-Quasi Contract—Restitution—Unjust Enrichment[33]**

As you have heard, RM Invest, Varwood Holdings, and Mr. Katcaev claim that Mr. Schmdt was unjustly enriched at their expense in that Mr. Schmdt received 800,000 shares of Net Element stock from the October 2015 settlement—not because he was a party to that suit, or personally entitled to receive that stock—but instead as a matter of convenience, because he, as a U.S. citizen, was able to receive the stock, whereas the parties to the lawsuit (RM Invest, Varwood Holdings, and Mr. Katcaev) were told by their former counsel that, because none of them were U.S. citizens, they could not receive the stock directly. Mr. Schmdt gave nothing of value in exchange for that stock, which he then sold between March and April 2016 for $272,507.02.

Unjust enrichment occurs when one person has obtained money, property or a benefit from another person under such circumstances that, in fairness and good conscience, the money, property or benefit should not be retained. In those circumstances, the law requires that person to repay, return to or compensate the other person.

It is undisputed that Mr. Schmdt received 800,000 shares of Net Element stock from the October 2015 settlement, which he sold for $272,507.02 between March and April 2016.

RM Invest, Varwood Holdings, and Mr. Katcaev have the burden of proving that Mr. Schmdt gave nothing of value in exchange for the stock and that, in fairness and good conscience, he should not be allowed to keep the money he received from the sale of that stock.

Now, if you decide that fairness and good conscience allow Mr. Schmdt to keep the proceeds from the sale of the stock despite giving notthing in exchange, then you will find for Mr. Schmdt.

If you instead decide that fairness and good conscience require Mr. Schmdt to compensate RM Invest, Varwood Holdings, and Mr. Katcaev for the value of

---

33 PJI 4:2 as modified.

that stock, you will find that Mr. Schmdt is liable to RM Invest, Varwood Holdings, and Mr. Katcaev.

It is undisputed that the value that Mr. Schmdt derived from the sale of the stock is $272,507.02, so if you find in favor of RM Invest, Varwood Holdings, and Mr. Katcaev, it will be for that amount plus interest from April 13, 2016.

**1:30 Conclusion[34]**

I have now outlined for you the rules of law that apply to this case and the processes by which you weigh the evidence and decide the facts. The first thing you should do in the jury room is choose a foreperson. The foreperson has several duties. It is the foreperson who keeps order in the jury room and makes sure that you each have an opportunity to speak and, just as important, to listen to your fellow jurors. When you have a question or request, the foreperson will write a note, place the date and time on it, and sign it. Similarly, the foreperson will mark your answers on the foreperson's copy of the verdict sheet. However, despite all these duties, the foreperson's view of the evidence and his or her vote is entitled to no greater weight than that of any other juror.

Your function—to reach fair decisions from the law and the evidence—is an important one. When you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with the goal of reaching agreement on your verdict, if you can do so without violating your individual judgment and your conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence and while each of you must decide the case for yourself and not merely consent to the decisions of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper respect and regard for the opinions of each other.

Remember in your deliberations that the dispute between the parties is, for them, a very important matter. They and the court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you. By doing so, you carry out to the fullest your oaths as jurors to truly try the issues of this case and render a true verdict.

**1:25B Alternate/Additional Jurors[35]**

At this point, I am going to excuse our additional jurors. As I told you before, only six of you will be deliberating and additional jurors were required as a safeguard against the possibility that one or more of you might be unable to complete his or her service. Those of you who will not be deliberating must not communicate anything about the case in any fashion with the sitting jurors, other

---

34 PJI 1:25B.
35 PJI 1:31.

alternates or anyone else until after a verdict has been rendered or I may instruct you otherwise. I commend all of you for your faithful attendance and attention. On behalf of the Court and the parties, I thank you for your service.

Dated: May 26, 2023

Respectfully Submitted,

THE BEHAR LAW FIRM, P.A.
*Counsel for the Settling Parties*
1801 N.E. 123rd St., Suite 314
North Miami, Florida 33181
Tel. (786) 735-3300
Fax (786) 735-3307
sms@beharlegal.com
np@beharlegal.com

*s/ Samuel M. Sheldon*
**Howard R. Behar**
**Samuel M. Sheldon**

RJM Litigation Group
*Counsel for Sasha Schmdt and Sergey Pirozhnikov*
201 St. Charles Ave. #2500
New Orleans, LA 70170
(office) 415.874.3711
(cell) 415.307.3021
Richard.mooney@rjmlitigation.com

*s/ Richard J. Mooney*
**Richard J. Mooney**